ORIGINAL

GEORGE K. YOUNG, JR.
1083 Apono Place
Hilo, Hawaii 96720
Telephone:  Home:  (808) 959-5488
           Cell:  (808) 895-1735

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 12 2012

at 3 o'clock and 00 min, P
SUE BEITIA, CLERK

*Pro Se*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

GEORGE K. YOUNG, JR.

*Pro Se*     PLAINTIFF

vs.

STATE OF HAWAII and NEIL ABERCROMBIE
in his capacity as Governor of the State of
Hawaii; DAVID M. LOUIE in his capacity
as State Attorney General; COUNTY OF
HAWAII, as a sub-agency of the State of
Hawaii and WILLIAM P. KENOI  in his capacity as
Mayor of the County of Hawaii; and the Hilo
County Police Department, as a sub-agency of
the County of Hawaii and HARRY S. KUBOJIRI
in his capacity as Chief of Police; JOHN DOES
1-25; JANE DOES 1-25; CORPORATIONS 1-5,
and DOE ENTITIES 1-5.

         DEFENDANTS

CIVIL NO. CV12  00336 DAE BMK

**COMPLAINT FOR DEPRIVATION
OF CIVIL RIGHTS**

42 U.S.C. 1983
42 U.S.C. 1985
42 U.S.C. 1986

No trial date set

1

## COMPLAINT

This is an action pursuant to:

(a)  Title 42 U.S.C. 1983, Civil action for Rights.

(b)  Title 42 U.S.C. 1985, Conspiracy to interfere with civil rights.

(c)  Title 42 U.S.C. 1986, Action for neglect to prevent.

## PARTIES

1)  **Plaintiff – Pro Se:**  George K. Young, Jr., a citizen of the United States of America and a citizen and legal resident of the State of Hawaii, who presently resides at 1083 Apono Place, Hilo, Hawaii 96720, Telephone: (808) 959-5488; Cellular: (808) 895-1735.  **Pro se Plaintiff** has no other civil or criminal actions pending in courts, nor is said **Plaintiff** a party to any legal or pending legal court action.

2)  **Defendant:**  State of Hawaii and NEIL ABERCROMBIE, who is employed as the Governor of the State of Hawaii and is the present Governor of the State of Hawaii.  **Defendant's** present address of employment is:  Executive Chambers, State Capitol, Honolulu, Hawaii 96813, telephone: (808) 586-0034.  **Defendant** is responsible for the oversight of all laws passed in the State of Hawaii, and to insure

that the laws are in compliance with and not contrary with the Constitution of the

United States of America.


3) **Defendant:**  Office of the State Attorney General and DAVID M. LOUIE, who

is employed as the State Attorney General and is the present State Attorney

General, who business address is: 425 Queen Street, Honolulu, Hawaii 96813,

Telephone: (808) 586-1239, and who is responsible for advising the legislative

branches of government, that the Hawaii State laws, as ratified, as within

constitutional conformance with and are not in contravention of the Constitution.

The State Attorney General, being the top law enforcement officer within the State

of Hawaii is obligated to provide legal guidance for the enforcement of state law to

the various counties.

4) **Defendant:**  County of Hawaii, which is a political subdivision of the Hawaii

State Government and WILLIAM P. KENOI, who is employed as the Mayor of the

City of Hilo and County of Hawaii, and is directly responsible for the actions and

behavior of the Hawaii County Police Department and the Chief of Police.  Mr.

KENOI's present place of business is 25 Aupuni Street, Hilo, Hawaii 96720, Tel:

(808) 961-2349.

5) **Defendant:**  Hawaii County Police Department, which is a sub-agency of the

City of Hilo and County of Hawaii, and Harry S. Kubojiri who is employed by the

County of Hawaii as Chief of Police, and is responsible for the enforcement of

county ordinances and state statutory laws.  **Defendant** Kubojiri's place of

employment is located at 349 Kapiolani Street, Hilo, Hawaii 96720, Tel (808) 935-

2244.

6)  **DEFENDANTS:**  John Does 1-25, Jane Does 1-25, Doe Business Entities 1-5,

and Doe Non-Profit Entities 1-5 (hereinafter "Doe Defendants") are sued herein

under fictitious names for the reason that their true names and capacities presently

are unknown to **Plaintiff** except that they are connected in some manner with the

named **Defendants** as agents, servants, employees, representatives, assignors,

assignees, licensees, contractors, and sub-contractors and/or in some manner

presently unknown to **Plaintiff** were engaged in the activities alleged herein.

**Plaintiff** will amend his complaint or identify the **Doe Defendants** at such time as

their true names and capacities become known.  The Doe Defendants are sued

herein in their official capacities.

## JURISDICTION

1)  This court has jurisdiction pursuant to **U.S. Constitution, Article III, Section 2.**

2)  This court has jurisdiction pursuant to **42 U.S.C. 1983, 1985 and 1986.**

3)  This court has jurisdiction pursuant to **28 U.S.C. 1331, Federal Question: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"**

4)  This court has jurisdiction pursuant to **28 U.S.C. 1343, Civil rights and elective franchise:  "The district courts shall have original jurisdiction of any**

civil action authorized by law to be commenced by any person: (1), (2), (3), (4)."

## VENUE

Venue is proper in this court for the District of Hawaii under **28 U.S.C. 1391:  Venue generally.**  All of the events and/or omissions described herein occurred in the State of Hawaii.

## STANDING

**Plaintiff** has standing as a citizen of the United States of America, with legal citizenship and residency within the State of Hawaii and is seeking refuge and relief within the Constitution of the United States.  Combined, the State of Hawaii, County of Hawaii and the Hawaii County Police Department and its Chief of Police are in violations of the following United States Constitutional law:

a) Quoted in part… **U.S. Constitution, Article I, Section 10:** "No state shall …pass any …law **impairing the Obligation of Contracts…".**  As in this instance, the burden of proof is on the State to demonstrate through documentary, historical, legislative facts that the United States Constitution is, in fact, a product of the combined state legislative acts, and not a product of the people themselves.

b) **U.S. Constitution, Amendment II:** "A well regulated militia being necessary to the security of a free State, **the right of the people to keep and bear arms shall not be infringed."** **"c. Meaning of the Operative Clause. Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation." (Washington, D.C. v. Heller, 554 U.S. 570 (2008).**

c) **U.S. Constitution, Amendment IX:** The enumeration in the Constitution, of certain rights, shall not be construed **to deny or disparage others** retained by the **people.**

d) Quoted in part... **U.S. Constitution, Amendment XIV, Section I:** "...**No state** shall make or enforce **any law** which **shall abridge the privileges or immunities of citizens of the United States;..."**

e) Quoted in part... **U.S. Constitution, Amendment XIV, Section I:** "...nor shall **any state deprive any person** of **life, liberty,** or **property,** without **due process of law**...".

"The Court also held that Bill of Rights protections must "all ...be enforced against the States under the fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment." **(Malloy v. Hogan, 378 U.S. 1, 10).** "Under this approach, the Court overruled earlier decisions holding that particular Bill of Rights guarantees or remedies did not apply to the States." **(Gideon, supra,** which overruled **Betts v. Brady, 316 U.S. 455).** "The Fourteenth Amendment makes the Second Amendment right to keep and bear arms fully applicable to the States.**(McDonald , et al v. City of Chicago, Illinois, et al (June 2010)).**

"The Constitution is a written instrument. As such, its meaning does not alter. That which it meant when it was adopted, it means now. **(South Carolina v. United States, 199 U.S. 437, 4488 (1905).**

"To disregard such deliberate choice of words and their natural meaning, would be a departure from the first principle of constitutional interpretation. "In expounding the Constitution of the United States," said Chief Justice Taney in **Holmes v. Jennison, 14 U.S. 540, 570-1,** "every word must have its due force and appropriate meaning; for it is evident from the whole instrument, that no word was unnecessarily used, or needlessly added. The many discussions which have taken place upon the construction of the Constitution have proved the correctness of this proposition; and shown the high talent, the caution and the foresight of the illustrious men who framed it. Every word appears to have been weighed with the utmost deliberation and its force and effect to have been fully understood." **(Wright v. United States, 302 U.S. 583 (1938).**

"The Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary (meaning), as distinguished from technical meaning; where the intention is clear, there is no room for construction, and no excuse for interpolation or addition. **(Martin v. Hunter's Lessee, 1 Wheat. 304; Gibbons v. Ogden, 9 Wheat. 419; Brown v. Maryland, 12 Wheat. 419; Craig v. Missouri, 4 Pet. 10; Tennessee v. Whitworth, 117 U.S. 139; Lake County v. Rollins, 130 U.S. 662; Hodges v. United States, 203 U.S. 1; Edwards v. Cuba R. Co., 268 U.S. 628; The Pocket Veto Case, 279 U.S. 655; (Justice) Story on the Constitution, 5th Ed., Sec 451; Cooley's Constitutional Limitations, 2nd Ed., pg. 61, 70).**

"The words **"people of the United States" and "citizens"** are synonymous terms, and mean the same thing. They both describe the political body who, according to our **republican** institutions, form the sovereignty, and who hold the power and conduct the Government through their representatives. They are what we familiarly call the **"sovereign people"**, and **every citizen is one of this people**, and a **constituent member** of this sovereignty." **(Dred Scott v. Sanford, 60 U.S. 393 (1856).**

**"Congress finds the following:**

(1) The Second Amendment to the United States Constitution provides that the right of the people to keep and bear arms shall not be infringed.

(2) The Second Amendment to the United States Constitution protects the rights of individuals, including those who are not members of a militia or engaged in military service or training, to keep and bear arms.

**PURPOSE:**

(3) To guarantee a **citizen's** rights, privileges, and immunities, **as applied to the States,** under the **Fourteenth Amendment** to the United States Constitution, **pursuant to section 5** of that Amendment."
**(Protection of Lawful Commerce in Arms Act, S.397, October 2005)**

Hence forth, in pursuance of United States Constitution, Article VI, Clause 2:

"This Constitution, and the **Laws of the United States**, which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the Supreme Law of the Land;** and the **Judges in every State shall be bound thereby**, any **Thing** in the **Constitution or Laws of any State** to the **Contrary notwithstanding."**

United States Constitution **Article III jurisdiction** exists and therefore, **"legal standing"** exists.

## Cases on Point (Precedence on Standing):

1) "Our analysis must begin with the recognition that where threatened action by government is concerned, **we do not require Plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat** – for example, the constitutionality of a law threatened to be enforced. The **Plaintiff's** own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate **Article III** jurisdiction." **(Medimmune, Inc. v. Genentech, Inc., 549 U.S.      (2007), Decided 9 January 2007)**

2) "…the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity," **I.D., at 480.** In each of these cases, the **Plaintiff** had eliminated threat of harm by simply not doing what he claimed the right to do. **That did not preclude subject-matter jurisdiction because the threat-eliminating behavior was effectively coerced." (Terrance v. Thompson, 263 U.S. 197 (1923) supra, at 215-216; Steffel v. Thompson, 415 U.S. 452 (1974), supra, at 459)**

3) "The dilemma posed by that coercion-putting the challenger to the choice between abandoning his Rights or risking prosecution is "a dilemma that it was the very purpose of the *Declaratory Judgment Act* to ameliorate." **(Abbott Laboratories v. Gardner, 387 U.S. 136, 152 (1967)**

**Plaintiff**, is an honest, law abiding, tax paying citizen of the United States and, an **individual sovereign** without a criminal record or any pending legal action either civil or criminal, is being **wrongfully coerced** into being denied the **"free exercise of conscious choice" and liberty to decide** whether or not to exercise his constitutionally protected **individual right,** to **"… bear arms…" for personal self-defense,** that is, in the present instance, a hand held firearm in useable condition, loaded with live ammunition, and carried on oneself, either concealed or unconcealed, via the **U.S. Constitution, Amendment II,** through the unconstitutional and unlawful enforcement of H.R.S. 134, which is a disguised in the form of a legislative regulatory scheme **"under color of law".**

## SUBSTANCE OF ACTION

**"The propriety of state law to authorize constitutional invasion by a state sub-agency (County of Hawaii) and by a county employee, who is not a member of the State executive branch, legislative body or judicial branch of government. Nor is said individual a recognized "constitutional" official, with judicial adjudicative authority to initiate "…due process" via the Fourteenth Amendment.**

### H.R.S. 134:  FIREARMS, AMMUNITION AND DANGEROUS WEAPONS

#### 1.  Hawaii Revised Statute 134-9.  Licenses to Carry:

In part:  (a)  In an **exceptional case**, when an applicant **shows reason to fear injury** to the applicant's self or property, the chief of police of the appropriate county **may grant a license** to an applicant… to carry a pistol or revolver and ammunition therefore **concealed** on the person **within the county** where the license is **granted.**

…Where the urgency or **the need has been sufficiently indicated,** the respective chief of police **may grant** to an applicant of good moral character who is a citizen of the United States of the age of twenty-one years or more, **is engaged in the protection of life and property** …**a license** to carry a pistol or revolver and ammunition therefore **unconcealed** on the person **within the county** where the license is granted.

In part: (b)(1):  Be **qualified** to use the firearm in a safe manner;…

In part (c):  **No person shall carry concealed or unconcealed** on the person a pistol or revolver without being licensed to do so under this section or in compliance with **Hawaii Revised Statute 134-6. Carrying …place to keep firearms; loaded firearms; penalty.**

**2.  Hawaii Revised Statute 134-6.  Carrying or use of firearm in the commission of a separate felony; place to keep firearms; loaded firearms; penalty.**

In part: (a):  It shall be **unlawful** for a person to knowingly **carry on the person or have within the person's immediate control…**

In part:  (c):  …provided that **it shall be lawful** to carry unloaded firearms or ammunition or both in an **enclosed container** from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places and the following:  a place of repair; a target range; a licensed dealer's place of business; an organized, scheduled firearms show or exhibit; a place of formal hunter or firearms use training or instruction; or police station.  **"Enclosed container"** means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that **completely encloses the firearm.**

In part: (e):  Any person violating subsection (a) or (b) **shall be guilty of a class A felony.**  Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol or revolver **without a license** issued **as provided in section 134-9 shall be guilty of a class B felony.**  Any person violating this section by carrying or possessing an unloaded firearm other than a pistol or revolver, **shall be guilty of a class C felony.**

**Hawaii Revised Statutes 134-6 (in part) and 134-9 (in part)** offends **Plaintiff's**

constitutional sensibilities and openly denies **Plaintiff's** free exercise to carry a

firearm for the lawful purpose of  personal self-defense and such impediments are

found to be **repugnant and offensive** to the United States Constitution, contrary to

the legislative intent of the national congress **(December 15, 1791)** and denies the

rightful **will of the individual Sovereign.** In **District of Columbia v. Heller,**

**554 U.S. 570 (2008)** the majority (Justices) reaffirmed and agreed to the correct

reading of **Nunn v. State, 1 Ga (1 Kel.) 243 (1846):**

**"A law which merely inhibits the wearing of certain weapons in a *concealed manner* is valid. But so far as it cuts off the exercise of the right of the citizen altogether to bear arms, or, under the color of prescribing the *mode,* renders the right itself useless – it is in conflict with the Constitution and void."**

**"*...But to be in conflict with the Constitution, it is not essential that the act should contain a prohibition against bearing arms, in every possible form. It is the right to bear arms, that is secured by the Constitution, and what ever restrains the full and complete exercise of that right, though not an entire destruction of it, is forbidden by the explicit language of the Constitution."***

Prior to this instance of legal action PLAINTIFF had previously filed two actions

with this Court.

First Action:  **CV-07-00450 HG KSC (24 Aug 2007),** Plaintiff claiming the 2d

Amendment as an individual, fundamental and constitutionally protected right.

Case was dismissed by Judge Helen Gillmor,(former) Chief Judge of this court, for

lack of standing as the 2d Amendment was a state "collective right" and not an

individual right. This action was prior to the **District of Columbia v. Heller**

**(2008)** case. Consequently all other claims were dismissed.

Judge Gillmor's judgment erroneously relied upon **United States v. Cruikshank,**

**92 U.S. 542, 553 (1876),** and **Presser v. Illinois, 116 U.S. 252, 264-65 (1886),**

which both held that the Second Amendment limits only Congressional action.

Judge Gillmor also noted that the Ninth Circuit followed, erroneously, **United States v. Miller, 307 U.S. 174 (1939),** in **Hickman v. Block, 81 F.3d 98, 101-02 (9th Cir. 1996),** which rejected the argument that the Second Amendment establishes an individual right.

**Supreme Court Washington, D.C. v. Heller Footnote #24:** "As for the "hundreds of Judges" ...who have relied on the view of the Second Amendment JUSTICE STEVENS claims we endorsed in *Miller*. If so, they over read *Miller*. And their erroneous reliance upon an uncontested and virtually unreasoned case cannot nullify the reliance of millions of Americans (as our historical analysis has shown) upon the true meaning of the right to keep and bear arms."

Second Action:  Plaintiff resubmitted his claim of Second Amendment violation based upon the **Heller** decision and **CV-08-00540 DAE-KSC** was decided by Judge David Ezra.  Once again, this court made an erroneous  judicial ruling based upon what was, once again, **not** said and what was **not** written.

"**This Court distinguished Heller** on the grounds that it involved a federal law applying only to the District of Columbia, **a federal enclave, and not to the states.**  This Court held that **Heller** did not over rule the longstanding precedent relied on in the Previous Action that states are not bound by the Second Amendment.

Although **Heller** may have conferred standing to Plaintiff, it did so only for claims against the federal government, not a state or local government. **(CV-08-00540 DAE-KSC (2 Dec 2008).**

Judge Ezra's fault can be found in the facts (a)  the Washington, D.C. council passes ordinances which take on the character and weight of "statute law", the U.S. Congress did not pass the law in question, therefore it was not "federal law".  And (b) a federal enclave often refers to a military post, fort, port facilities where due to the "voluntary servitude" environment, the Uniform Code of Military Justice

(UCMJ) prevails, though still subordinate to the U.S. Constitution. The UCMJ has weight and merit in reference to federal law. Much as Maritime Law does on the sea.

**Plaintiff,** recently, on two occasions, 29 August 2011 and 16 September 2011, applied for a personal permit, in accordance with Hawaii Revised Statute (H.R.S.) 134-9(a)(c), to be authorized to carry a firearm, outside the home, either concealed or unconcealed, stating the purpose being for personal security, self-preservation and defense, and protection of personal family members and property.

On both occasions, **Plaintiff** was denied a permit, by the **Defendant Kubojiri,** pursuant to H.R.S. 134-9, citing that **"...only in exceptional cases or a demonstrated urgency...",** which is yet to be defined, the Chief of Police **"...may grant..."** a permit, subject to his **personal opinion.** It is yet to be defined as to why the Right to **personal** self-preservation, self-defense including the bearing of arms and all actions, within reason, taken in the preservation of that Right **must qualify to be an exceptional case or demonstrated urgency.** H.R.S. 134-9 is a vexatious and invidious law that is overly broad and lacks definition and specificity. H.R.S. 134-9 provides wrongful legislative delegation of the unconstitutional, unlawful, uncontrolled and unlimited **discretionary authority**

over an **individual, fundamental and federally protected constitutional Right,**

to which the Hawaii state legislature, itself, has no authority to demean, take away

from, denigrate, render meaningless, or impotent, …to the local Chief of Police.

Constitutionally, what a state cannot do directly, it is forbidden to do indirectly.

"If a State has no such power of prohibition, she cannot empower her officers or agents to do what she cannot do herself, viz., prohibit internal commerce in foreign merchandise.  Suppose the legislature of Massachusetts, instead of conferring this power of prohibition upon county commissioners, to be exercised in their <u>uncontrolled</u> discretion, should retain it, to be exercised by herself; <u>it would be unlawful legislation, and in collision of a State law with a law of the United States."</u>  "…a law of prohibition, because they assume to provide for licenses to persons to sell, and <u>then empower the agents they create to refuse all such licenses without cause…</u> …and in fact, <u>no such license can be obtained.  BOTH THE INTENT AND THE OPERATION OF THESE LAWS ARE, THEREFORE, PROHIBITORY."</u>  "The point where regulation ceases and prohibition begins is the point of collision, and of <u>UNCONSTITUTIONAL OPERATION, of a State law… . "In this respect a State law becomes a law of prohibition when it punishes all who sell without a license</u> (or carry arms without a license) <u>and confers the whole power of licensing on agents, with express authority to withhold all licenses."</u>

"The natural import of the words is to be adopted; and if technical words are used, they are in general to have assigned to them their technical sense.  **(Ex Parte Hall, 1 Pick. 261; The State vs. Smith, 5 Humph. 392; Bank vs. Cook, 4 Pick. 405).**  Where a word has a clear and settled meaning at common law, it ought to have the same meaning in construing a statute in which it is used. **(Adams vs. Terrentine, 8 Iredell 147).**  Where a law is plain and unambiguous, whether expressed in general or limited terms, there is no room left for construction, and a resort to extrinsic facts is not permitted to ascertain its meaning.  **(Bartlett vs. Morris, 9 Porter 266)."**  The word **"may" is always held to mean "must" or "shall"** in cases where the public interest and rights are concerned, and where the public or third persons have a <u>claim de jure</u> that the power delegated should be exercised. **(Ex Parte Simonton, 9 Porter 390; Minor v. Bank, 1 Peters 64; Shuyler Co. v. Mercer Co., 4 Gilman 20; Turnpike v. Miller, 5 Johns. Ch. Rep. 101)**

"The words **"may grant"** were legally construed **"must or shall grant,"** according to the well-known general rule of so construing the word "may", when used in a public act or municipal charter to impart an authority to public officers, in the exercise of which **the public interest or PRIVATE RIGHTS** were concerned; and that the practice of the authorities of the towns …had always concurred with **this well-known rule of construction. ("The License Cases", Thurlow v. Commonwealth of Massachusetts, 46 U.S. 504 (48 How. 504); January Term 1847.**

The state of Hawaii, in construing the language of H.R.S. 134-9 "…may grant…"

to imply **discretionary authority**, is in direct conflict and contradiction with their

own statutory law of H.R.S. 480-3 **Interpretation:**

"This chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes, except that lawsuits by indirect purchasers may be brought as provided in this chapter. …Federal statutes and **decisions** are to be used as guides. **(63 H. 289, 627 P.2d. 260); cited: 332 F.3d. 600; 168 F. Supp. 2d 1180)**

"All political power of this State is inherent in the people and the responsibility for the exercise thereof rests with the people. All government is founded on this authority." **(Constitution of the State of Hawaii, Article I, Section 1)**

"The legislative power of the State shall be vested in a legislature, which **shall consist of two houses, a senate and a house of representatives.** Such power shall extend to all rightful subjects of legislation not inconsistent with this constitution or the Constitution of the United States." **(Constitution of the State of Hawaii, Article III, Section 1)**

The legislative power **does not** extend to the local county sub-agencies and their political appointees, who are further authorized to operate **unilaterally.**

"Delegated powers cannot be subdelegated. The U.S. constitution vests all legislative powers in Congress, and all judicial powers in the Supreme Court and inferior courts, except as specifically expressed. Executive branch officials may sub delegate but must remain responsible for the actions of their subordinates. There can be no authority exercised that is not accountable through constitutional officials. *Delegata potestas non potest delegari.* A delegated power cannot be delegated. 9 Inst. 597."

**Rights** may not be disabled or unduly burdened by legislative or executive process.

"Due process" **is judicial only**, involving the granting of a petition, upon

presentation of probable cause, **to disable a constitutional right** of a defendant,

with the burden of proof on the plaintiff or prosecutor, and with the defendant

having at least those minimum protections that prevailed during the Founding, with

similar disablements having similar **standards of proof and protection.**

15

Within the jurisdiction of Hilo County and according to its police administrator, it is a matter of routine procedure that a Concealed Carry Weapons (CCW) permit is not to be issued, but only upon demonstration of an actual menace and subjected to the discretion of the local county Chief of Police.  The Chief of Police is unconstitutionally delegated authority to refuse to grant the permit if he does not approve of the applicant based upon what may or may not happen in a future instance.  Or, require as a prerequisite, **"...is engaged in the protection of life and property..."**, through implication, since the word **"engaged"**, in past tense, as used, implies that a person must currently be a member of a law enforcement agency or employed by a licensed private security company, licensed to do business in the State of Hawaii and, engaged in the employment of protecting a **paying third party's** life and property, and that **personal action** of preparing for **individual, personal** self-preservation and self-defense is prohibited and denied. This contention is unconstitutional and offensive.  These **criteria** are without semblance of U.S. constitutional approval and legally recognized **definitive standards** or **other controlling guidelines** governing the action of the Chief of Police, **Defendant Kubojiri,** in granting or withholding a permit.  **It is thus plain that he acts, in this respect, by authority of the state, in his personal and**

**uncontrolled discretion by means of unconstitutional delegation of authority**

**by the Hawaii State legislature.**

**"A law which merely inhibits the wearing of certain weapons in a concealed manner is valid.  But so far as it cuts off the exercise of the right of the citizen altogether to *bear arms*, or, <u>under the color of prescribing the mode</u>, renders the right itself useless—it is in conflict with the Constitution, and void." *(Nunn v. State, 1 GA (1 Kel.) 243 (1846)*

**"In *Nunn v. State, 1 GA. 243, 251 (1846)*, the Georgia Supreme Court construed the Second Amendment as protecting the "natural right to self-defense" and therefore struck down a ban on carrying pistols openly.  Its opinion *perfectly captured the way in which the operative clause of the Second Amendment furthers the purpose announced in the prefatory clause, in continuity with the English right…." (Washington, D.C. v. Heller, 554 U.S.570 (2008).**

"It is settled by a long line of recent decisions of the United States Supreme Court that a statute which, like this one, makes the peaceful enjoyment of freedoms which the U.S. Constitution guarantees contingent upon the **uncontrolled will of an official** – as by requiring a permit or license which may be granted or withheld in the discretion of such official – **is an unconstitutional censorship or prior restraint** upon the enjoyment of those freedoms." **(Staub v. City of Baxley, 355 U.S. 313 (1958)).**

"It thus becomes apparent that the lack of standards in the license-issuing "practice" renders that "practice" a **prior restraint in contravention of the Fourteenth Amendment,** and **the completely arbitrary and discriminatory refusal to grant the permits was a denial of equal protection. P. 273 (Niemotko v. Maryland, 340 U.S. 268 (1951).**

"The most familiar of the substantive liberties protected by the Fourteenth Amendment are those recognized by the **Bill of Rights.**  We have held that the **Due Process Clause of the Fourteenth Amendment** incorporates most of the **Bill of Rights against the States.** See e.g. **Duncan v. Louisiana, 391 U.S. 145, 147, 148 (1968).**  It is tempting, as a means of curbing the discretion of federal judges, to suppose that liberty encompasses no more than those rights already guaranteed to the individual against federal interference by the **express provisions of the first eight amendments to the Constitution.**  But of course **this Court has never accepted that view**.
"…The full scope of the liberty guaranteed by the **Due process Clause** cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This "liberty" is not a series of isolated points pricked out in terms of the taking of property; the

freedom of speech, press, and religion; **the right to keep and bear arms;** the freedom from unreasonable searches and seizures; and so on.  It is a rational continuum which, broadly speaking, **includes a freedom from all substantial arbitrary impositions and purposeless restraints,** …and which also recognizes, what a reasonable and sensitive judgment must, **that certain interests require particularly CAREFUL SCRUITINY of the state needs asserted to justify their abridgement." (Planned  Parenthood of Southeastern PA. v. Casey, 505 U.S. 833 (1992).**

"…We have held that a liberty under the **Due Process Clause of the Fourteenth Amendment** will be deemed fundamental if it is **"implicit in the concept of ordered liberty. (Palko v. Connecticut, 302 U.S. 319, 325 (1937)**

It is undeniable that the statute is an unlawful delegation of "judicial" authority for

**Defendant Kubojiri,** to **refuse to grant** the required permit or license to qualified

applicants, who do not fall within the parameter of "prohibited persons" listed in

H.R.S. 134-7, at his **uncontrolled discretion.**  It thus makes enjoyment of the

benefit of **"…bearing arms…"** contingent upon **the will and "parental" consent**

of **a county employee.**  The **Second Amendment** is a fundamental individual right

that is unrestrained, within reason, from federal congressional abridgment and is

further protected by the **Fourteenth Amendment's "privileges and immunities"**

clause and enforced through its **Liberty** clause by way of its **"due process"**

against invasion by state action.

"Where a constitutional provision is complete in itself it needs no further legislation to put it in force.  When it lays down certain general principles as to enact laws upon a certain subject, or for the incorporation of cities of certain population, or for uniform laws upon the subject of taxation, it may need more specific legislation to make it operative.  In other words, it is self-executing only so far as it is susceptible of execution.  *But where a constitution asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provision.*  In short, it executes itself." **(Davis v. Burke, 179 U.S. 399, 403 (1900)).**

The **Second Amendment** is also protected through the **Ninth Amendment,** as one of the existing **peripheral rights, the right of free conscious thought and the right to decide,** associated with **life and liberty**, to which it is promised and guaranteed by the U.S. Constitution itself.  For these reasons, H.R.S. 134-9, on its face, **imposes an unconstitutional prior restraint** upon the enjoyment of **Second Amendment freedoms** and lays "**a forbidden burden upon the exercise of liberty protected by the Constitution.**"

It is a demonstrable fact, of the reduction, denigration, rendering meaningless, and impotent, the **second amendment "…the right of the people to keep and bear arms shall not be infringed.",** has been the result through the implementation and abuse of a licensing and/or permit scheme, to convert a **constitutional right** into a **local administrative privilege.  The Right in question is not a privilege nor benefit bestowed by the State nor is it a privilege or benefit subjected to the will of the majority of the body of  citizens residing within a state.   The Right in question exists apart from state authority.  It is guaranteed the people by the federal constitution.**  Such a contradictory exercise of political power is totalitarian in nature and is in complete disregard and contrary to the purpose and nature of the **Fourteenth Amendment (Ratified 28 July 1868),** for which its specific purpose was to deny state and local counties **"arbitrary and capricious"**

**discretionary authority** over the first eight amendments.  The ratifying legislative

language of the 39th national congress demands and mandates the prohibition of

invasion by the states legislative bodies.  Such field of discretion must be defined

by the legislature.  The legislature must set bounds to the field, and must formulate

the standards which shall govern the exercise of discretion within the field.  It is

well-established principle of administrative law that to prevent an unlawful

delegation of power, it is incumbent upon the legislative authority to set forth

standards to indicate to the agency the limits of its power.  The Constitution of a

State and the orderly processes of representative government require that the

legislature should make such important decisions itself.  Otherwise there is no

method by which the **Plaintiff** can locate responsibility for such fundamental

determinations of public policy.  The legislature cannot secure relief from its duties

and responsibilities by a general delegation of legislative power to some one else.

**"Arbitrary and capricious" discretionary authority** in the hands of state and

local legislative bodies and to sub-agencies was a doctrine advocated by the states

of the South and brought about the Civil War, to which those particular defeated

states were not allowed back into the Union until they accepted and recognized the

Fourteenth Amendment.  Total and complete, undisciplined, uncontrolled,

indefinitive discretionary authority has been unconstitutionally delegated through a

state legislative act, to be administered by a non-elected, non-constitutional, non-

judicial person, who accepts no **duty in the affirmative,** or any responsibility or

liability for injuries or death or the continued care and support for the survivors

under **Plaintiff's** responsibility, should **Plaintiff** become an incapacitated victim;

and upon close observation, it is realized that, fundamentally, **Defendant Kubojiri**

is nothing more than a mere political appointee and an employee of the county,

hired as an administrator of law enforcement. The free pass of "no legal

constitutional obligation" by public servants and local law enforcement is settled

law and further decreed by the United States Supreme Court and other inferior

courts.

"Local law enforcement had no duty to protect individuals but only a general duty to enforce the Laws." **(South v. Maryland, 59 U.S. (How.) 396, 15 L.Ed. 433 (1856)**

"What makes the City's position (denying any obligation to protect the woman) particularly difficult to understand is that, in conformity to the dictates of the law (she) *did not carry a weapon for self-defense.* Thus, by rather bitter irony *she was required* to rely for protection on the **City of New York which now denies all responsibility to her." (Riss v. City of New York, 22 N.Y. 2d. 579 (1968))**

"…the fundamental principle that a government and its agents **are under no general duty to provide public services, such as police protection, to any particular individual citizen."** The duty to provide public services **is owed to the public at large,** and absent a special relationship **between police and an individual, NO SPECIFIC LEGAL DUTY EXISTS….". (Warren v. District of Columbia, 444 A.2d 1 (D.C.App. 1981)).**

"There is no constitutional right to be protected by the state against being murdered by criminals or madmen." **(Bowers v. Devot, 7th Circuit U.S. Court of Appeals, 686 F.2d. 616 (1982)**

"The *affirmative duty* to protect arises not from the State's knowledge of the individual's predicament or from its expression of intent to help him, *but from the limitations* which it has *imposed on his freedom to act on his own behalf."* "…We held that the so-called "substantive" component of the Due process clause *does not "require" the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id. At 195.* **(DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989).**

"Law enforcement agencies and personnel have no duty to protect individuals from the criminal acts of others; instead **their duty is to preserve the peace and arrest law breakers for the protection of the general public." (Lynch v. N.C. Dept, of Justice, 376 S.E. 2nd 247 (N.C. App. 1989)**

Neither the U.S. Constitution nor federal statutes mandates that law enforcement is obligated to provided protective services to an individual citizen.  What the U.S. Constitution guarantees is the pre-existent **"self-help"** Second Amendment, "…that the Right of the People to keep and bear arms shall not be infringed."  For the purpose, that an individual may **legally act and with the lawful tools necessary** in pursuit of personal security, self-preservation, self-defense, protection of life and property, without the prior approval of an **non-existent, artificial,** imaginary being, in response to a violent act of aggression caused by the **unannounced** behavior of human nature.

It is further recognized that **Defendants Abercrombie, Louie and Kenoi** are key individuals with an obligation and authority to prevent the legislative and individual abuse of authority; however, they allowed and supported this unconstitutional delegation of unlawful authority to an unqualified county employee, to create artificial **articles of law** to which is exercised unilaterally, as "arbitrary and capricious" discretionary authority, …unlimited, uncontrolled, without an avenue or recourse to appeal or challenge, with the exception of costly

affirmative legal action.  Ultimately, **the state legislature** and **the Hawaii State**

**Attorney General**, is responsible for empowering **Defendant Kubojiri** to be the

administrator and enforcer of an unconstitutional, coercive, state statute.

> **"The power to regulate did not include the power to prohibit or to impose criminal penalties for violating regulations, only civil penalties such as fines.  "…a bill of attainder may affect the life of an individual or may confiscate his property, or may do both." (Fletcher v. Peck, 10 U.S. 87, 6 Cranch 87, 3 L.Ed. 162 (1810)**

**Plaintiff** is placed in the arena of "presumption of guilt", based upon the

conceptualized theory that **Plaintiff may abuse** his constitutional right at some

later date **in the future** and in order to prevent such speculative abuse **Plaintiff** is

**denied** and **prohibited** from exercising his **individual second amendment right.**

This act qualifies to be scrutinized under the **"pains and penalties"** clause of a

**Bill of Attainder**.  This is clearly legislative coercion and punishments in the

mode of deprivation of a constitutional right and being threatened with criminal

Class A, B or C felony charges, fines and incarceration **(H.R.S. 134-6(e))** that will

be imposed should **Plaintiff, who is a law abiding citizen of the United States,**

exercise a constitutionally protected right without a **permit** or rather **permission**

from a county employee.  In the proper perspective, being denied a constitutional

right based upon the conceptualized theory that if **Plaintiff** should choose to

exercise his second amendment right, **Plaintiff** is perceived as a **threat** to society.

Thus converting a law abiding citizen, **Plaintiff,** into an identifiable **potential**

criminal for exercising a right that is rightfully **Plaintiff's** to begin with.  The

provision in the U.S. Constitution granting the right to all **"people"** to bear arms is

an announced and declared limitation upon the powers of the legislature, both

federal and state, through the Second amendment and **"the privileges and**

**immunities" clause** of the Fourteenth amendment, **"due process clause"** of the

Fourteenth amendment and the Ninth amendment, to enact any law to the contrary.

The exercise of a right guaranteed by the constitution stands on firmer grounds and

cannot be made subject to the **will of one county employee.**  It is an authority

exercised without accountability, via state law, through a non-constitutional

official.

"…**this action of non-action** may proceed from enmity or prejudice, from partisan zeal or animosity, from favoritism and other improper influences and motives easy of concealment, and difficult to be detected and exposed, it becomes unnecessary to suggest or comment upon the injustice capable of being wrought **under cover of such power,** for that becomes apparent to every one who gives to the subject a moment's consideration.  **In fact, an ordinance which clothes <u>a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it INOPERATIVE and VOID." (Yick Wo v. Hopkins, 118 U.S. 356 (1886).</u>**

In **defendant Kubojiri's** letter reply dated 29 August 2011, **defendant Kubojiri**

stated that the **Legislature of the State of Hawaii,** pursuant to HRS section 134-9,

empowered or subdelegated legislative authority to **defendant Kubojiri** with

**discretionary** power, to **<u>disable a constitutional right</u>**, without judicial process,

in direct contravention of the U.S. Constitution's Fifth Amendment and Fourteenth

Amendment's **<u>"Due process"</u>** clauses.

In the first instance of reasoning, it is a compelling fact that during the enactment of our constitution it was identified by persons, (i.e. Aristotle, Plato, Socrates, Niccolo' Machiavelli, John Locke, William Blackstone, Hugo Grotius, Charles de Montesquieu, St. George Tucker, Justice Joseph Story, John Stewart Mill, as well as the founding Fathers, George Washington, Benjamin Franklin, Thomas Jefferson, Alexander Hamilton, James Madison, Patrick Henry, John Jay, etc.) that in a compact of society there were only two "state of existence": **(1)  A state of War and (2) A state of Nature.**  It was decided in committee that our U.S. Constitution and Bill of Rights be based upon the state of nature, **"…in accordance with the laws of nature and nature's God." (Declaration of Independence, 4 July 1776).**  Therefore, it was founded that a **republican form of government** is the best suited as it would be **"a government of laws and not of men",** and as such, in the concept of ordered liberty that government itself is subordinate to constitutional law, **there is no tolerance** for a constitutional right to be treated as a state administrative privilege attended to by a local county employee, unless **Plaintiff,** who is a constituent of the Constitution and a citizen of the United States of America, is in the present instance, perceived as an **"enemy of the state",** should **Plaintiff** exercises his freedom and liberty to decide and choose to enforce his rights and privileges under the Second Amendment.

The nature of the threat and the extent of the threat and the "when" and "where" can only be determined by the perpetrator(s), and not the victim.  The choice to be a victim or not, is in the hands of the …**Plaintiff**, who is a constituent of the constitution and to which, it is acknowledged, the "State" is not.

Firstly, **Defendant Kubojiri** is not a qualified member of the judiciary and lacks judicial, legislative or constitutional authority to decide whether or not a matter of the intent of **the lawful exercise of an individual constitutional right** is a consequence that is to be subjected to prior evaluation to either the **"rational basis"** analysis or **"strict scrutiny"** evaluation and analysis.  In a criminal instance, **Defendant Kubojiri** is legislatively authorized to apply **""rational basis"** test to determine **"probable cause"** to act and apply the law, however, in this instance, there is no **"probable cause"**.  There is only the crime of **deprivation of an individual constitutional right,** without **"due process".** Within the concept of **"ordered liberty"** there are only three branches of government in the State of Hawaii and identified by the Hawaii State Constitution …the Executive, Legislative and Judicial, and it is the burden of the Judicial branch to decide the correctness and applicability of either the **"intermediate scrutiny"** analysis or **"strict scrutiny"** analysis according to what is being

challenged and the **circumstances** presented to the court.  Such analysis cannot

possibly be lawful or applicable to what may or may not occur in a future instance.

The Hawaii State constitution, Article III, Section 1:  "The legislative power of the

State **shall be vested in two houses, a senate and a house of representatives…"**

The legislative power means, "law making powers" that were delegated by "…we

the people…".  Therefore, the Hawaii State Constitution does not allow any other

governmental agency, beyond the senate and the House of Representatives, power

to make law nor does the constitution grant authority to sub-delegate this law

making power.


The present enforcement of H.R.S. 134-9 and H.R.S. 134-6, besides presenting a

**"clear and present danger"** by subverting the supreme authority of the U.S.

Constitution, has cause irreparable emotional and physical distress to **Plaintiff** and

has compelled **Plaintiff** to engage in a fact finding historical excursion, consuming

hundreds of hours, in search of the truth, which is unwarranted, to find the meaning

of the words and language of the **U.S. Constitutional, Amendment II.**  No citizen

of the United States, a U.S. military combat veteran, acting within **his own sphere**

**of expressed sovereign autonomy,** of the United States of America, should be

forced to expend time and energy to define the correctness of the common

language of the **United States Constitution** that is both clear and unambiguous.

The Hawaii State legislature can no longer be entrusted to preserve, protect and defend the constitution of the United States, as it is evident that it is subjected to political persuasion.  This denigration of the Second Amendment and the "…right to keep and bear arms…", is an **usurpation** of sovereign authority.  It is "…we the people" who allow governments to use force and it is not government's position to allow "…we the people…" to employ individual protective force for it is and has always been a right that was never forfeited by "…we the people…" to either the federal or state governments.

Enforcement of H.R.S. 134-9 and H.R.S. 134-6 offends **Plaintiff's** constitutional sensibilities, as **Plaintiff** has sworn an oath **"…to preserve, protect and defend the Constitution of the United States and <u>a republican form of government, (U.S. Constitution, Article IV, Section 4)</u> against all enemies both <u>foreign and domestic.</u>"**  The existence of H.R.S. 134-9 and H.R.S. 134-6 calls into question if **Plaintiff's** loyalty, patriotism and love of country, with a willingness to sacrifice life and limb for freedom and liberty with a **republican form of government** has been fraudulently  displaced; and presently, **"under color of state law",** forced to support a democracy with a despotic and **democratic form of government** that now perceives armed, law abiding constituents as **"enemies of the state"**.  To

28

which it is assumed, that society has now become so complex as to be a burden

upon constitutional self-government and therefore justifies the instituting of law

from a handful of society's elite.

"When any court violates the clean and unambiguous language of the Constitution, **a fraud is perpetrated and no one is bound to obey it." (16 Ma. Jur. 2d 177, 178); State v. Sutton, 63 Minn. 147, 65 NW 262, 30 L.R.A. 630 Am. St. 459)**

"Constitutional provisions for the security of person and property should be liberally construed. It is the duty of the courts to be watchful of constitutional rights **against any stealthy encroachments thereon. (Boyd v. U.S., 116 U.S. 635)**

The government of the United States of America, if it can no longer defend the

**rights, privileges and immunities** of the individual citizen, it then defeats the

purpose for which it was conceptualized, proposed, ratified, announced, published,

and ordained.  The federal government can no longer require or mandate the

sacrifice of human lives to defend the speculative and conceptualized "theory" of

freedom, liberties and "rights" belonging to an artificial, inanimate, non-existent

being we call "State".   Under any form of government, under any national flag,

when an individual is forced to depend upon a third party, who assumes no

liabilities, or **duty in the affirmative,** to defend and protect individual life …it is

called **"slavery".**

"**For the very idea that one man may be compelled to** hold his life, or the means of living, or any material right **essential to the enjoyment of life, at the** mere will of another **seems to be intolerable in any country** where freedom prevails, **as being** the essence of slavery **itself."** (Yick Wo v. Hopkins, 118 U.S. 356 (1886).

**Luny v. Freeman, 92 U.S. 275; Ex parte Virginia, 100 U.S. 339; Neal v. Delaware, 103 U.S. 370;** "Though the law itself be fair on its face, and impartial in appearance, yet it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, **material to their rights,** the denial of equal justice is still within the prohibition of the constitution. **This principal of interpretation has been sanctioned by this court (U.S. Spreme Court) in Henderson v. Mayor of New York, 92 U.S. 259; Chy and Soon Hing v. Crowley, 113 U.S. 703; S.C. 5 Sup. Ct. Rep. 730. (YICK WO v. HOPKINS, 118 U.S. 356 (1886).**

The extent of "state police powers" are limited in scope to that of the state

legislative sphere of authority, to which the federal U.S. Constitution, Second

Amendment is beyond the state's ability to exercise "discretionary" authority.

## COUNT ONE

## (42 U.S.C. 1983, 1985, 1986)

Violation of U.S. Constitution, Article I, Section 10, Cls. 1:

### "No State shall …pass …any Bill of Attainder…"

"A Bill of Attainder, is a **legislative act** which **inflicts punishment** without judicial trial and includes **any legislative act** which takes away the **life, liberty or property** of a particular named or easily ascertainable person or group of persons because the legislature thinks them guilty of conduct which deserves punishment" *(Cummings v. Missouri, 71 U.S. 277, 323 (1987).*

"Legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a trial, are "Bills of Attainder" **prohibited under this clause.**" *(United States v. Lovett, 328 U.S. 303 (1946))*

"A **Bill of Attainder** is a law, or **legal device**, used to outlaw people, suspend their **civil rights, confiscate their property, put them to death, or otherwise punish them without a trial.**" Any punishment without a trial is a Bill of Attainder under the doctrine of inclusion of **"pains and penalties."** *(Thomas M. Saunders, Certified Linguist, started the Bill of Attainder Project after doing a study through the U.S. Commission On Civil Rights, (CC#93-1-1037), with cooperation from the Justice Department.* See: http://www.isc-durant.com/tom/bill of attainder/ .

30

"…a Bill of Attainder may affect the life of an individual, or may confiscate his property, or may do both." Id. **(Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 138 (1810)**

One of the primary purposes of prohibiting a Bill of Attainder, **U.S. Const. Article I, Section 9, Clause 2:** *"No Bill of Attainder or ex post facto Law Shall be passed."* and **U.S. Const. Article I, Section 10, Clause 1:** *"No state shall …pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts…"* was clearly created for the purpose of maintaining the "separation of powers", to insure that the legislative branch, does not assume the role of the judicial branch.

Clearly, in this instance, H.R.S. 134-9 and H.R.S. 134-6 is viewed as  vexatious laws, that are overly burdensome and is a **Bill of Attainder** and is justifiably perceived as state legislative coercion disguised **"under color of law"**. The application of which has been unconstitutionally and unlawfully subdelegated to a local county employee with the title of Chief of Police, who is neither an elected legislator nor a member of the adjudicating judiciary, nor a recognized constitutional official and neither accepts nor claim a **"duty in the affirmative"**. **Duty in the affirmative…**is an obligation that is not obtained on government's awareness of an individual predicament or what government will do or can do for a person, but rather the obligation is obtained through what is denied or withheld from an individual. **Defendant Kubojiri,** who, under the unconstitutional

authority of H.R.S. 134-9, personally created standards, to which it is expected to

be, wrongfully assumed, as legislative law, which it is not; and lacks definitiveness

and specificity, to be applied as the **"rational basis" test,** and use said standards as

**legal and lawful** foundation and purpose for denying, disabling, or suspending a

constitutional right, without an avenue for appeal or recourse. In other words,

substituting **a personal opinion for legislative law,** and to further define this

**personal** opinion as **"...due process of law..."** contrary to the definition as

defined by the U.S. Constitution. This methodology, in an administrative mode of

criminal application, can be justified to be grounds to apply the **"rational basis"**

test; however, this is not a criminal case that would mandate the **"rational basis"**

test; this is a **deprivation** case, and the language of the 2nd Amendment to the U.S.

Constitution, **"...shall not be infringed."** portends that, in this instance, the

circumstances mandates and burdens the court for an evaluation under the **"strict**

**scrutiny"** test.

"The full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This "liberty" is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press and religion; **the right to keep and bear arms;** the freedom from unreasonable searches and seizures; and so on. It is a rational continuum which, broadly speaking, **includes a freedom from all substantial arbitrary impositions and purposeless restraints**...and which also recognizes, what a reasonable and sensitive judgment must, that certain interests **require particularly CAREFUL SCRUITINY** of the **state needs asserted to justify their abridgement." (Poe v. Ullman, supra. 367 U.S. 543; Planned Parenthood Southeastern PA. v. Casey, 505 U.S. 833 (1992).**

"State statutory immunity provisions **do no apply** to federal civil rights actions. **(Morrison v. Jones, 607 F.3d 1269, 1273 (9th Cir. 1979), cert denied, 445 U.S. 962, 64 L. Ed. 2d 237, 100 S. Ct. 1648 (1980).** "To construe a federal statute to allow a **state immunity defense "to have**

controlling effect would transmute a basic guarantee into an illusory promise", which the supremacy clause <u>does not allow.</u>" **(Martines v. California, 444 U.S. 277, 284 n.8, 62 L. Ed. 481, 100 S. Ct. 553 (1980)**

"In addition, we note that at oral argument before this court, the county took the position **that it was not bound by the fourteenth amendment equal protection clause,** apparently on the theory that the **second amendment** somehow supercedes it whenever the state's regulation of firearms is at issue.  This **wholly unsubstantiated position** in itself seems to be evidence of the county's **official policy of indifference to the fourteenth amendment.**" **(Guillory v. County of Orange, 731 F.2d 1379 (9th Cir. 04/25/1984).**

To admit to or accept such a conceptualized and imaginary power is to wrongfully admit that the United States Constitution and its **"…supremacy clause…",** fifth Amendment, Ninth Amendment, and Fourteenth Amendment, are no longer valid to shield, defend and protect **individual rights** from "arbitrary and totalitarian" legislative authority of the state and therefore, would nullify any further consideration of fulfilling any legal obligations, any allegiance, to include the ultimate sacrifice of life, to defend an "impotent" federal government on the part of the citizen.  To do so would be the admittance of functioning under the existence of a fraudulent and unconscionable contract (U.S. Constitution):

"…One which no sensible man not under delusion, duress, or in distress would make, and such as no honest and fair man would accept." **( Franklin Fire Ins. Co. v. Noll, 115 Ind,App 289, 58 N.E.2d 947, 949, 950).**

"It lays down no (118 U.S. 356, 373) rules by which its impartial execution can be secured, or partiality and oppression prevented.  It is clear that giving and enforcing these notices may, and quite likely will, bring ruin to the business of those against whom they are directed, while others, from whom they are withheld, may be actually benefited by what is thus done to their neighbors; and when we remember that **this action of non-action** may proceed from enmity or prejudice, from partisan zeal or animosity, from favoritism and other improper influences and motives easy of concealment, and difficult to be detected and exposed, it becomes unnecessary to suggest or comment upon the injustice capable of being wrought **under cover of such power,** for that becomes apparent to every one who gives to the subject a moment's consideration.  **In fact, an**

ordinance which clothes <u>a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it INOPERATIVE  and VOID."  (Yick Wo v. Hopkins, 118 U.S. 356 (1886).</u>

A contract whose terms of which are excessively unreasonable, over reaching and one-sided, under such circumstances, renders such said contract **invalid, null and void.**  To expect a citizen to be obligated to sacrifice life in defense of the rights of an artificial, non-existent, imaginary being called state and not expect personal security, personal protection of life, liberty and freedom is slavery.

This illegal and unconstitutional act of prior-restraint, censorship and prohibition of an individual constitutional right,  **"under color of law",** can only exist through the knowing cooperation  by and between **Defendants**, conspiring together to deny a U.S. citizen his constitutional right to **"...bear arms...",** either concealed or unconcealed.

## COUNT TWO

### (42 U.S.C. 1983, 1985, 1986)

Violation of U.S. Constitution, Article I, Section 10:

**"No state shall ...pass any ...law impairing the Obligations of Contract...".**

**"The contracting parties in the federal compact are the people** of the several states and the federal government.  **("Thoughts on the Subject of Amendments", No. 2, An American Citizen (Tench Coxe), Independent Gazetteer, Philadelphia, 10 December 1788)**

"…One which no sensible man not under delusion, duress, or in distress would make, and such as no honest and fair man would accept." **(Franklin Fire Inc. Co, v. Noll, 115 Ind. App. 289, 58 N.E.2d. 947, 949, 950)**

"It has, since 1810 **(Fletcher v. Peck, 6 Cr. 87)** established the doctrine that **contracts** to which a state is a party are within the protection of the constitutional prohibition.  …It has, therefore, been settled that the term **"contract"** includes not only contracts between individuals, private and corporate, but also contracts, executed and executory, between the state and individuals, private and corporate."

"…But the **American people** have said, in the constitution of the United States, that 'no state shall pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts.'  In the same instrument, they have also said, 'that the judicial power shall extend to all cases in law and equity arising under the constitution.'  On the judges of this court, then, is imposed the high and solemn duty of protecting, **from even legislative violation,** those contracts which the constitution of our country has placed **beyond legislative control; and however irksome the task may be, this is a duty from which we dare not shrink."**  "…That, anterior to the formation of the constitution, a course of legislation had prevailed in many if not in all, of the states, which weakened the confidence of man in man, and embarrassed all transactions between individuals, by dispensing with a faithful performance of engagements.  To correct this mischief, by restraining the power which produced it,  **the state legislatures were forbidden 'to pass any law impairing the obligation of contracts,' that is, of contracts respecting property, under which some individual could claim a right to something beneficial to himself; and that since the clause in the constitution must in construction receive some limitation, it may be confined, and ought to be confined, to cases of this description; to cases with the mischief it was intended to remedy." (Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518 (1819).**

"In discussing this question, the counsel for the State of Maryland have deemed it of some importance, in the construction of the constitution, to consider that instrument not as emanating from the *people*, but as the act of sovereign and independent States.  The powers of the general government, it has been said, as delegated by the States, who alone are truly sovereign; and must be exercised in subordination to the States, who alone possess supreme dominion.

It would be difficult to sustain this proposition.  The Convention which framed the constitution was indeed elected by the State legislatures.  But the instrument, when it came from their hands, *was a mere proposal, without obligations, or pretensions to it.*  It was reported to the then existing Congress of the United States, with a request that it might "be submitted to a *convention of delegates,* chosen in each State *by the people* thereof, under the recommendation of its legislature, for their assent and ratification."  This mode of proceeding was adopted; and by the convention, by Congress, and by the State legislatures, *the instrument was submitted to the*

*people.* They acted upon it in the only manner in which they can act safely, effectively, and wisely, on such a subject, by assembling in convention.  It is true, they assembled in their several States – and where else should they have assembled?  No political dreamer was ever wild enough to think of breaking down the lines which separate the States, and of compounding the American people into one common mass.  ***Of consequence, when they act, they act in their States.  But the measures they adopt do not, on that account, cease to be the measures of the people themselves, or become the measures of the State government.***

***From these conventions the constitution derives its whole authority.  The government proceeds directly from the people; is "ordained and established" in the name of the people; and is declared to be ordained "in order to form a more perfect union, establish justice, ensure domestic tranquility, and secure the blessings of liberty to themselves and to their posterity." The assent of the States, in their sovereign capacity, is implied in calling a convention, and thus submitting that instrument to the people.***  **But the people were at perfect liberty to accept or reject it; and their act was final.  *It required not the affirmance, and could not be negatived, by the State governments.  The constitution when thus adopted, was of complete obligation, and bound the State sovereignties...*** of this fact on the case, is emphatically, and truly, a government of the people.  In form and in substance it emanates from them.  Its powers granted by them, and are to be exercised directly on them, and for their benefit. (McCulloch v. Maryland, 17 U.S. 316 (1819)**

It can require no argument to prove, that the circumstances in this instance constitute a contract.  The United States Constitution is an **executory social contract,** created by the free people, acting in their **individual,** free, independent, sovereign and autonomous sphere of authority, who had conceptualized, created, established and ordained said constitution and it acts on behalf of said free people, through elected representatives, with **limited and delegated powers,** to acts beneficial on the behalf of the collective whole and not individually, and to whom said individual sovereign autonomy and the individual rights, such as those belonging to "Kings" and practiced in accordance with the **laws of nature** were not forfeited to any such an elective body.  And it is settled fact and a maxim of

law that the U.S. Constitution **was not a ratified product of state legislative bodies in a compact agreement among the state legislatures.**

"This is a case of uncommon magnitude.  One of the parties to it is a State; certainly respectable, claiming to be sovereign.  The question to be determined is, whether this State, so respectable, and whose claim soars so high, is amenable to the jurisdiction of the Supreme Court of the United States?  This question, important in itself, will depend on other, more important still; and, may, perhaps, be ultimately resolved into one, no less radical than this **"do the people of the United States form a Nation?"**  "…To the Constitution of the United States the term Sovereign, is totally unknown.  There is but one place where it could have been used with propriety.  But, even in that place it would not, perhaps, have comported with the delicacy of those, who ordained and established that Constitution.  They might have announced themselves **"Sovereign"** people of the United States:  But serenely conscious of the fact, they avoided the ostentatious declaration."  "…the Government of that State to be **republican**; and my short definition of such a Government is, one constructed on this principal, that the **Sovereign Power resides in the body of the people."**  "…the citizens of Georgia, when they acted upon the large scale of the Union, as a part of the **"People of the United States,"** did not surrender the **Supreme or Sovereign Power to that State; but, as to the purposes of the Union, retained it to themselves.**  As to the purpose of the Union, therefore, Georgia is **NOT** A SOVEREIGN STATE. **(Chisholm v. Georgia, 2 U.S. (Dall.) 419 (1793).**

"The government of the Union, then …is, emphatically, and truly, a government of the people.  In form and in substance it emanates from them.  Its powers are granted by them, and are to be exercised directly on them, and for their benefit."**(McCulloch v. Maryland, 17 U.S. 404-05).**

"The words **'people of the United States'** and **'citizens'** are synonymous terms, and mean the same thing.  They both describe the political body who, according to our **republican institutions,** form the sovereignty, and who hold the power and conduct the Government through their representatives.  They are what we familiarly call the 'sovereign people,' and every citizen is one of this people, and a constituent member of this sovereignty."**(Dred Scott v. Sanford, 60 U.S. 404 (1856)).**

"The Preamble declares that the Constitution is ordained and established by "the people of the United States."  *The Second Amendment protects "the right of the people to keep and bear arms,"* and the Ninth and Tenth Amendments provide that certain rights and powers are retained by and reserved to "the people".  "…While this textual exegesis is by no means conclusive it suggests that "the people" protected by the Fourth Amendment, and by the First and *Second Amendments*, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." **(United States v. Verdugo-Urquidez, 494 U.S. 259 (1990)).**

Therefore, within the correct sphere of logical rationalization, that upon the granting of the **unlimited power of the purse, unlimited power of the military, and the unlimited power "…to create all laws necessary and proper for carrying into execution the forgoing powers…",** that, "We the People…" have retained, in reserve, a portion of the ultimate power of **...violent force...** to maintain and assure security and sovereign authority over the representative government that the people have created and delegated these powerful and dangerous authority and powers.  There are only two avenues of revolution:  (a) through peaceful discussions and legislative acts and (b)  through force of arms to overthrow and dismiss a despotic government.  In recorded history, there has never been a revolution won by the side without the power to execute **controlled violence.**  To relinquish all power of **arms** to government, either federal or state, the people are no longer **voluntarily** subordinate to government but **involuntary subjects of a democratic government advocating "socialism"** and to depend upon such government to "arbitrarily and capriciously" decide whether or not to dispense individual protection, is the essence of slavery.

"Who are the militia?  Are they not ourselves?  It is feared, then, that we shall turn our arms each man against his own bosom.  Congress has no power to disarm the militia.  Their swords, and every other terrible implement of the soldier, <u>are the birthright of an American</u> …**The unlimited power of the sword is not in the hands of either <u>the federal or state governments,</u> but where I trust in God it will ever remain, <u>in the hands of the people." (Tench Coxe, The Pennsylvania Gazette, Feb. 20 1788).</u>**

"...That to secure these rights, Governments are instituted among Men, deriving their just Powers from the consent of the governed. *That whenever any form of Government becomes destructive to these ends, it is the RIGHT OF THE PEOPLE to ALTER or to ABOLISH it, and to institute new Government, laying its foundation on such Principles, and organizing its Powers in such form, as to them shall seem most likely to effect their SAFETY and HAPPINESS...* ...But when a long train of abuses and usurpations, pursuing invariably the same Object, evinces a design to reduce them under absolute Despotism, <u>IT IS THEIR RIGHT, IT IS THEIR DUTY,</u> to throw off such Government, and provide new Guards for their future and SECURITY. *(Declaration of Independence, Clause 2, 4 July 1776)*

Henceforth, the existence of the Second Amendment, in order for "We the People.." to retain the ability to, if necessary, enforce our sovereign authority, as free people, in possession of certain unalienable rights "...**in accordance with the laws of NATURE AND NATURE'S GOD." (Declaration of Independence, 4 July 1776).** The Second Amendment to the constitution, **"...shall not be infringed.",** commands attention to the facts that to "keep and bear arms" requires neither legislative permission nor a prior demonstration of urgency or eminent danger to pre-qualify in the exercise of this constitutional right. The Second Amendment to the Constitution is a Right retained by **Plaintiff,** who is entitled to life, with the tools necessary, to exercise his indisputable right of personal security and self-preservation **in accordance with the laws of nature,** and the right is not an entitlement belonging to an artificial, non-existent, imaginary being ...we call **State, which was created by the people in contemplation of law.**

The state of Hawaii and **Defendants**, by enforcing a prior-restraint, censorship, prohibition of a constitutional right, that was clearly created to contribute towards personal self-preservation, the protection of family members and property,  and then, to collectively contribute, if necessary, to the whole of the common defense, is a clear act of **impairing the obligation of contract,** as **Plaintiff** has a clear and unambiguous claim of right to property in the Second Amendment of the Constitution of the United States.

Hawaii Revised Statute 134-9 and Hawaii Revised Statute 134-6 is obviously the regulatory vehicle of the legislature, **"under color of law"**, to restrict, censor, prohibit and deny the free exercise of a constitutional right, be it either concealed carry or unconcealed carry.  State law may control the mode of the carry of a firearm **on a citizen**, be it either concealed or unconcealed, and the state may also control the prohibition of location, within reason, e.g. libraries, court house, schools and hospitals; however, to completely deny **"the right to bear arms"** on the pretense of further justification subject to the approval, based upon the personal opinion of a local county employee, induces one to question the validity of such laws, and to point out that such an act crosses the acceptable line of constitutionality and borders on the absurd.  It reduces a constitutional right into a local administrative privilege, to be administered by some one who possesses no

constitutional legal authority to disable such a right.  It becomes a situation of the

"tail wagging the dog" (George Washington, 1776).  Such authority and

enforcement is the **…impairing the obligation of contract. (Trustees of**

**Dartmouth College v. Woodward, 17 u.s. (4 Wheat.) 518, 4 L.Ed. 629).**


The Constitution confers upon the national legislature the following:  **Article I,**

**Section 8, Cls. 15, 16, 18:** "**The Congress** shall have Power …to provide for the

**common defense** …To provide for calling forth the **Militia** …To provide for

**arming** the **Militia** …To make **all laws** which **shall be necessary** and proper for

carrying into **Execution** the foregoing **Powers…**".  There exist three levels of

militia the **National militia** composed of the whole "we the people", the

unorganized whole of the Union; the **Federal militia** composed of those who have

been **called forward (compelled)** by congress, to report at a designated point of

rendezvous on a specified date and time and enrolled for federal pay; and the **State**

**Militia** composed of those who have **voluntarily** reported to a designated point of

rendezvous on a specific date and at a specified time and enrolled for state military

pay and agreed to be part of a part-time **select state militia** to be organized and

trained on occasions **in accordance with the disciplines prescribed by the**

**national congress.**  The **Second Amendment** does not make a distinction between

categories of militia, however, Militia is further identified into two specific classes:

**Title 10, Subtitle A, Part I, Chapter 13, Subsection 311 (10 U.S.C. 311):** (a)

The organized militia, which consists of the National Guard and the Naval militia.

(b) The **unorganized** militia, which consists **of the** members **of the militia who**

**are not members** of the National Guard or Naval Militia.  The distinction between

the **organized militia** and the **unorganized militia** is not addressed in specificity

within the language of the Second Amendment, and therefore it is mandated to be

read and interpreted in its broadest terms.  **Defendants** claim that the 2nd

Amendment only applies in the **"collective right"** mode **(Mendoza v. State of**

**Hawaii, 82 Hawaii 143 (1996)),** applicable only to the state national guard,

impedes and directly contradicts the constitutional obligation of the national

congress's, demanded by …We the people…, responsibility of arming the

**unorganized militia,** to which is the **declaratory** objective that the Second

Amendment embraces, …the keeping and bearing of personal arms.


## COUNT THREE

Violation of U.S. Constitution, Amendment II:

"A well-regulated militia being necessary to the security of a free state, the Right of the People to keep and bear arms shall not be infringed.

"The **conventions** of a number of the States having at the time of their adopting the Constitution, expressed a desire, in order to prevent misconstruction or abuse of its powers that further **declaratory** and **restrictive clauses** should be added." **(Preamble to the Bill of Rights).**

**DECLARATORY:** "A well regulated militia being necessary to the security of a free state,...

**RESTRICTIVE:** "...the Right of the People to keep and bear arms shall not be infringed.

Hence, the use of only **one** comma.  In the Congressional Statutes at Large, Vol. 1, Page 97, it reads:  "A well regulated militia being necessary to the security of a free state, the Right of the People to keep and bear arms shall not be infringed." State of Hawaii's Constitution, Article I, Bill of Rights, Section 17:  Right to Bear Arms, also contains **one** comma.

As noted in the preamble, "...the Constitution..." and "...its powers...", it becomes clear that the Bill of Rights acts as a limitation upon the powers of not only the national federal government and state governments, but also a limitation upon the Constitution itself.

**FIRST:**

On motion to amend article the fifth, by inserting the words, **'for the common defence,'** next to the words **'bear arms'.**

It passed in the negative. (Failed)

On motion to strike out this article, line the second, these words, **'the best,'** and insert in lieu thereof **'necessary to the,'.**

It passed in the affirmative. (Passed)

On motion, on article the fifth, to strike out the word 'fifth,' after 'article the,' and insert 'fourth,' and amend the article to read as follows:  **"A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."**

It passed in the affirmative.  (Passed)

**(Journal of the Senate of the United States of America, Page 77, 24 August 1789)**

Clearly, with specificity, with purpose and without ambiguity, the words **"for the common defence"** was left out of the second amendment.  It was meant that **"...the right of the people to keep and bear arms shall not be infringed."** was not limited to the "collective" states rights, but rather satisfied the main objective of the **"first law of nature..."** self-preservation and self-defense, and if and when required to organize and assemble **"for the common defence"** in support of the artificial being we call "State".  The "State" is dependant upon the sovereign and not the sovereign dependant upon the "State".

**SECOND:**

**Digest of the Constitution**

*Rights of the citizen declared to be:*

*Line Four:  To keep and bear arms,...*

*Line Sixteen:  That the enumeration of certain rights shall not operate constructively against the retained rights,....*

44

**(Elliot's Debates, Volume I, Page XV, United States Government website "The Library of Congress" + "American Memory" (link to actual page).)**

It is understood that line sixteen defines the nature of the **Ninth Amendment:**

"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." In context, the **state legislature** is forbidden and cannot claim and use the **declaratory clause** of the Second Amendment, "A well regulated militia being necessary to a free state...", as grounds and foundation for a claimed right and exert that false claim as authority to prohibit the **restrictive clause,** "...the Right of the People to keep and bear arms shall not be infringed."


## THIRD:

"The **Second Amendment** right to keep and bear arms therefore, **is a right of the individual citizen to privately possess and carry in peaceful manner firearms and similar arms. ...**If in fact this language creates a right protecting the states only, there might be a reason for it to be inserted in the federal Constitution but no reason for it to be inserted in state constitutions. State bills of rights necessarily protect only against action by the state, and by definition **a state cannot infringe its own rights; to attempt to protect a right belonging to the state by inserting it in a limitation of the state's own powers would create an absurdity.** The fact that the contemporaries of the framers did insert these words into several state constitutions would indicate clearly that they viewed the right belonging to the individual citizen, thereby making it a right which could be infringed either by the state or federal government and which **must be protect against infringement by both.**

"In conclusion is thus inescapable that the history, concept, and wording of the second amendment to the Constitution of the United States, as well as its interpretation by every major commentator and court in the first half century after its ratification, **indicates that what is protected is an individual right of a private citizen to own and carry firearms in a peaceful manner." (The Right to Keep and Bear Arms, Report of the Subcommittee on the**

**Constitution of the United States Senate, Ninety-Seventh Congress, Second Session, February 1982)**

## FOURTH:

"The Congress finds that the rights of citizens (A) **to keep and bear arms under the second amendment to the United States Constitution;** (B) to security against illegal and unreasonable searches and seizures under the fourth amendment; (C) against uncompensated taking of property, double jeopardy, and assurance of due process under the fifth amendment; and (D) against unconstitutional exercise of authority under the **ninth and tenth amendments." (The Firearms Owners' Protection Act (1986)).**

## FIFTH:

"The Congress finds the following:  (1) The **Second Amendment** to the United States Constitution provides that **the right of the people to keep and bear arms shall not be infringed.** (2)  The **Second Amendment** to the United States Constitution **protects the rights of individuals, including those who are not members of a militia or engaged in military service or training, TO KEEP AND BEAR ARMS.** ...(7)  The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law. The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by congress, or by the legislatures of the several States.  **Such an expansion of liability would constitute a deprivation of the rights, privileges and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution." (Protection of Lawful Commerce in Arms Act , October 2005)**

## SIXTH:

"**CONSTITUTION", 14. – 2:**  Secures **to the people** the **right to keep and bear arms. (Bouvier's Law Dictionary, "Adopted to the Constitution and Laws of the United States of America and of the several States of the American Union, John Bouvier, Revised 6ᵗʰ Ed. (1856).**

It is clear that the **Firearms Owners Protection Act** and the **Protection of Lawful**

**Commerce in Arms Act** are acts of the national congress in the exercise of their

lawful legislative powers.

"This Constitution, and **the Laws of the United States which shall be made in pursuance thereof;** and all Treaties made, or which shall be made, **under the Authority of the United States, shall be the Supreme Law of the Land; and the JUDGES in every State shall be**

**bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (United States Constitution, Article VI, Clause 2)**

Since the national Congress acts on behalf of the whole of we the people, the

rightful sovereigns, their laws become the **"Supreme Law of the Land"**, thus we

find that Congress found it necessary to invoke the language of the **rights,**

**privileges, and immunities** clause of the Fourteenth Amendment to protect

individual rights, into the **Protection of Lawful Commerce in Arms Act.**

Through the use of the **"rights, privileges, and immunities"** clause makes the

Fourteenth Amendment officially an amendment mandated for consideration in

any violation of Second Amendment rights.

"…No State shall make or enforce any law which shall abridge the **privileges or immunities** of citizens of the United States;…" **(U.S. Const., Amendment XIV, Ratified 28 July 1868)**

"This "liberty" is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, and religion; **the right to keep and bear arms;** the freedom from unreasonable searches and seizures; and so on.  It is a rational continuum which, broadly speaking, **includes a freedom from all substantial arbitrary impositions and purposeless restraints,** …and which also recognizes, what a reasonable and sensitive judgment must, **that certain interests require particularly CAREFUL SCRUITINY of the state needs asserted to justify their abridgement." (Planned Parenthood of Southeastern PA. v. Casey, 505 U.S. 833 (1992).**

"The Preamble declares that the Constitution is ordained and established by "the people of the United States." _**The Second Amendment protects "the right of the people to keep and bear arms,"**_ and the Ninth and Tenth Amendments provide that certain rights and powers are retained by and reserved to "the people".  "…While this textual exegesis is by no means conclusive it suggests that "the people" protected by the Fourth Amendment, and by the First and _**Second Amendments**_, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are a part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." **(United States v. Verdugo-Urquidez, 494 U.S. 259 (1990)**

"The words **'people of the United States'** and **'citizens'** are synonymous terms, and mean the same thing.  They both describe the political body who, according to our **republican institutions,** form the sovereignty, and who hold the power and conduct the Government through their

representatives.  They are what we familiarly call the **'sovereign people'** and **every citizen is one of this people, and a constituent member of this sovereignty." (Dred Scott v. Sanford, 60 U.S. 404 (1856).**

"Surely a most familiar meaning is, as the Constitution's **Second Amendment** "Keep and bear arms" and Black's Law Dictionary, at 214, indicate "wear, **bear** or carry …upon the person or in the clothing or in a pocket, for the purpose… of being armed and ready for offensive or defensive action in a case of conflict with another person (s)." **(United States v. Muscarello, 524 U.S. 125 (1998), Justice Ruth Bader Ginsberg).**

The United States Court of Appeals for the Ninth Circuit in **Silveira v. Lockyer, No. 01-150098, CV-00-00411-WBS Opinion,** was found to be flawed,

unsubstantiated, unpersuasive, and doctrinally unsound.  Several points of law

subverts the flawed "collective rights" doctrine:  (a)  The court failed to provide an

authentic quote from one of the Founding Fathers, their contemporaries, or a 19th

Century Supreme Court decision, indicating that the Second Amendment was

meant to apply solely to a well-regulated militia.  (b)  The court failed to provided

legislative history or documentation supporting the "collective" decision and (c)

The court's implied attempt at **judicial fraud** through the specific attempt at

reconstructing James Madison's Federalist Paper No.46, omitting a large and

pertinent part that specifically addresses the "right of the people" to keep and bear

arms; and (d) The court seriously considered as credible proof, **Michael A.**

**Bellesiles,** *Gun Control: A Historical Overview,* to which it has been proven that

to have been a fraud and fabricated facts by **Bellesiles**, to which he was essentially

denounced by the academic community, fired from his tenure at the University,

banned from the university, and his book retracted from the retail outlets and a

public apology issued by the publisher.  Based upon the aforementioned flawed

opinion of the Ninth Circuit Court of Appeals, it is subjected to challenge and until

such time cannot be construed as an obstruction to legal action and legal standing.

In finality, it is the indisputable fact that the **Second Amendment** is an individual right.

"Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons **in case of confrontation**.  This meaning is strongly confirmed by the historical background of the Seconde Amendment.  We look to this because it has always been widely understood that the second Amendment, **like the First and Fourth Amendments,** codified **a pre-existing right.**

## COUNT FOUR

### Violation of U.S. Constitution, Amendment IX

"The enumeration in the Constitution, of certain rights, shall not be construed to **deny or disparage** others retained by the people."

It is clear through national legislative interpretation that state legislative bodies as

well as the national legislative body cannot use the **"declaratory"** clause, "A well

regulated militia being necessary to the security of a free state…", as grounds and

foundation for denying the **"restrictive"** clause of an individual right, "…the Right

of the People to keep and bear arms shall not be infringed.", as the construction of

the Right belongs in the **Bill of Rights,** a document which operates exclusively to

the benefit of the individual citizen since its inception with the Magna Carta and

under William and Mary, in which, the first eight amendments, operates solely on

behalf of and for the benefit of the individual citizen.

**Interpretation:**

"The enumeration of certain rights **shall not operate constructively against the retained rights." (Digest of the Constitution, Elliot's Debates, Volume I, Right of the citizen declared to---)**

## COUNT FIVE

### Violation of U.S. Constitution, Amendment XIV

**"...No State shall make or enforce any law which shall abridge the privileges and immunities of <u>citizens of the United States</u>..."**

Beyond contestation and a maxim of law, an individual constitutional right is a part of the Constitution and is therefore **fundamental law** and an **"immunity"** against invasion by both the federal and state legislative powers and authority.  As such, this **"immunity"** is not subject to civil liability, federal or state obligation, or state license/permit regulatory schemes, other than, in a limited sense, to identify, screen out and deny prohibited persons, as described in H.R.S. 134-7.  Having qualified under H.R.S. 134-7, there is **probable cause** to deny a license/permit.

The state license/permit regulatory scheme is not to be construed, **"under color of law"**, as Constitutional authority to prohibit, deny, render meaningless or impotent, a Right retained by the people.  The said **"immunity"** of the Right to bear arms, is not a privilege or benefit originating under the legislative power of one state, nor is it a privilege or benefit bestowed by the state legislative body. The state may

50

plagiarize the Second Amendment; however, it may not claim original rights or

expand or restrict and imply alternative meanings to the original **language and**

**intent contrary** to U.S. constitutional law.  To do so would constitute a fraud and

an attempt at encroachment through deception upon the citizen of the United States,

nor does it make said right a property of the state.

"…When therefore a treaty is constitutionally made, ratified and published by us, it immediately becomes binding on the whole nation, and superadded to the laws of the land, **without the intervention of state legislatures. …**whereas laws and statutes derive their force from being the acts of a legislature competent to passing of them; …**for state legislatures are not competent to the making of such compacts or treaties, so neither are they competent in that capacity, authoritatively to decide on or ascertain the construction and sense of them.** …but, the case between **laws, and the compacts or treaties** is in this widely different; for when doubts arise respecting the sense and meaning of a treaty, they are so far from being cognizable by a state legislature, that the United States in congress assembled, have no authority to settle and determine them: **for as the legislature only, which constitutionally passed a law, has power to revise and amend it,** so **the sovereigns only**, who are parties to the treaty, have power to mutual consent and posterior articles, to correct and explain it.  …From these principles it follows of necessary consequence, **that no state has a right by legislative acts to decide and point out the sense in which their particular citizens and courts shall understand this or that article of a treaty.**  It is evident that a contrary doctrine would not only militate against the common and established maxims and ideas relative to this subject, but would prove no less inconvenient in practice than it is irrational in theory; **for in that case the same article of the same treaty might by law be made to mean one thing in New Hampshire, another thing in New York, and neither the one nor the other of them in Georgia.**

**"Resolved**, That the legislature of the several states cannot of right pass any act or acts for interpreting, explaining, or construing a national treaty, **or any part or clause of it;** not for restraining, limiting, **or in any manner impeding, retarding or counteracting** the operation and execution of the same; for that on being constitutionally made, ratified and published, they become in virtue of the confederation, part of the law of the land, and **are not only independent** of the will and power of such legislatures, but also binding and obligatory on them." **"By Order of Congress", Written by John Jay, Signed by Arthur St. Clair, President, Friday, April 1787 (A View of the Constitution, 2d Ed., William Rawle, L.L.D.)**

"The Fourteenth Amendment makes the Second Amendment right to keep and bear arms fully applicable to the States." **(McDonald et al v. City of Chicago, 130 S. CT. 3020 (2010).**

## RELIEF BEING SOUGHT

1. Permanent injunction of H.R.S 134.

2. Immediate issuance of a Concealed Carry Weapons Permit or an Unconcealed Carry Weapons Permit for a period of not less than three years.  *Note:  The word used is "Weapons" which includes but limited to a loaded firearm and allows for other instruments of lesser than deadly force.  The Second Amendment is not limited to firearms but includes all arms for individual personal offensive and defensive use, including those arms that did not exist at time of the amendment's ratification, e.g. stun gun, tasers, mace spray, switch blade etc..

2. Punitive damages  to be not less than US$1,000,000.00.

3. Compensatory damages for causing "irreparable harm" to be determined at trial but to be not less than US$1,000,000.00.

4. All costs of court, reasonable attorney fees to be paid by Defendants.

## CERTIFICATE

1. Bold face and underscored words are for emphasis.

2. Exception to local court rules, as number of pages, words, paragraphs and lines exceeded due to necessity and number of disputed factual issues committed by both the state and county applicable to a single issue, "bear arms…".

3. Content: 53 pages; 15,590 words; 264 paragraphs; and 1, 511 lines.

Respectfully Submitted,

GEORGE K. YOUNG, JR.
1083 Apono Place
Hilo, Hawaii 96720
Tel: (808) 959-5488
Cellphone:  (808) 895-1735
Email: Yorozuyo@aol.com