IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| GEORGE K. YOUNG, JR. | CIVIL NO. CV12-00336 DAE/BMK |
| *Pro Se* PLAINTIFF | |
| | MEMORANDUM IN SUPPORT |
| vs. | OF MOTION |
| | |
| STATE OF HAWAI‘I and NEIL ABERCROMBIE in his capacity as Governor of the State of Hawai‘i; DAVID M. LOUIE in his capacity as State Attorney General; COUNTY OF HAWAI‘I, as a sub-agency of the State of Hawai‘i and WILLIAM P. KENOI in his capacity as Mayor of the County of Hawai‘i; and the Hilo County Police Department, as a sub-agency of the County of Hawai‘i and HARRY S. KUBOJIRI in his capacity as Chief of Police; JOHN DOES 1-25; JANE DOES 1-25; CORPORATIONS 1-5, AND DOE ENTITIES 1-5. | |
| DEFENDANTS | |

## MEMORANDUM IN SUPPORT OF MOTION

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    DISCUSSION ............................................................................................ 1-7

III.   PLAINTIFF LACKS STANDING ............................................................ 7-9

IV.   REMEDIES ............................................................................................ 10-11

V.    STANDARD OF REVIEW FOR ALLEGED SECOND AMENDMENT
VIOLATIONS STANDING ................................................................. 11-15

VI.   PLAINTIFF'S DUE PROCESS CLAIMS UNDER THE FOURTEENTH
AMENDMENT ................................................................................... 15-18

VII.  CONCLUSION ......................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) .................................... 2, 3

*Baer v. Wauwatosa,*
    716 F.2d 1117 (1983) ................................................................................................. 17

*Board of Regents of State Colleges v. Roth,*
    408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ................................... 18

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...................................... 2, 3

*Chaplaincy of Full Gospel Churches v. England,*
    454 F.3d 290, (D.C.Cir.2006) ...................................................................................... 10

*CityFed Financial Corp. v. Office of Thrift Supervision,*
    58 F.3d 738, 747(D.C.Cir.1995) ................................................................................. 11

*City of Los Angeles v. Lyons,*
    461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ......................................... 9

*Common Cause of Pennsylvania v. Pennsylvania,*
    558 F.3d 249, 257 (3d Cir.2009) .................................................................................... 9

*District of Columbia v. Heller,*
    554 U.S. 570, 592, 595, 128 S.Ct. 2783, 2797, 2799, 171 L.Ed.2d 637 (2008) ....... *passim*

*Erdelyi v. O'Brien,*
    680 F.2d 61 (1982) ................................................................................................. 16, 17

*Erickson v. Pardus,*
    551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) ........................ 2

*Ezell v. City of Chicago,*
    651 F.3d 684, 702–03 (2011) ...................................................................................... 14

*Guam Indus. Services, Inc. v. Rumsfeld,*
    383 F.Supp.2d 112, 116 (D.D.C.2005) ......................................................................... 10

*Idaho Conservation League v. Mumma,*
    956 F.2d 1508, 1513 (9th Cir.1992) ............................................................................... 8

*Jacobson v. Hannifin,*
    627 F.2d 177, 180 (9th Cir. 1980) ................................................................. 17

*Killingsworth v. HSBC Bank Nev.,*
    507 F.3d 614, 618 (7th Cir.2007) ..................................................................... 3

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351) (1992) ................................... 9

*Marbury v. Madison,*
    5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) ........................................................ 8

*McDonald v. City of Chicago, Ill.,*
    561 U.S. —, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) ..................... 1, 4, 6, 11, 12, 14, 15

*Medina v. Rudman,*
    545 F.2d 244, 250-51 (1st Cir.1976) ............................................................... 17

*Michigan v. U.S. Army Corps of Engineers,*
    667 F.3d 765 (7th Cir.2011) .......................................................................... 3

*Nordyke v. King,*
    644 F.3d 776,779 (9th Cir.2011) ................................................................. 11, 12

*Sampson v. Murray,*
    415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ...................................... 11

*Schenck v. Pro–Choice Network,*
    519 U.S. 357, 376, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) ................................... 13

*Scheuer v. Rhodes,*
    416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ........................................ 2

*Serono Laboratories, Inc. v. Shalala,*
    158 F.3d 1313 (D.C.Cir.1998) ..................................................................... 10

*Sprint Communications Co., L.P. v. APCC Services, Inc.,*
    554 U.S.269, 273, 128 S.Ct. 2531, 2535, 171 L.Ed.2d 424 (2008) ..................... 9

*Tamayo v. Blagojevich,*
    526 F.3d 1074, 1081(7th Cir.2008) ............................................................... 3

*U. S. v. Engstrum,*
    609 F.Supp.2d 1227, 1231–1232 (2009) ...................................................... 12

*U. S. v. Salerno,*
    481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ............................ 14

iii

*U. S. v. Skoien,*
  614 F.3d 638 (7th Cir.2010) ......................................................... 13, 15

*United States v. Masciandaro,*
  638 F.3d 458, 463(4th Cir.2011) .............................................. 11, 13

*United States v. Miller,*
  604 F.Supp.2d 1162, 1169, 1171–1172 (W.D.Tenn.2009) ............................................. 11

*Younger v. Harris,*
  401 U.S. 37, 51, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971) ........................................ 7, 8

  <u>CONSTITUTIONAL PROVISIONS</u>

United States Constitution
  First Amendment ................................................................ 12, 15
  Second Amendment ............................................................ *passim*
  Ninth Amendment ................................................................. 6, 7
  Fourteenth Amendment ............................................. 1, 7, 11, 15, 17, 18
  Article I Section 10 .................................................................. 6
  Article III ........................................................................ 8, 9
  Article III Section 2 ................................................................. 9

  <u>STATUTES</u>

United States Code
  18 U.S.C. § 922(g) ................................................................ 13

California Penal Code
  Section 12000-12094 ............................................................. 17
  Section 12050 .................................................................... 17

Hawaiʻi Revised Statutes
  Chapter 134 ................................................................ 8, 10, 11
  Section 134-5(c) ................................................................. 16
  Section 134-6 (Repealed 2006) ............................................... 5, 6, 7
  Section 134-7 ................................................................. 7, 16
  Section 134-9 ......................................................... 5, 6, 8, 15, 16
  Section 134-25 ................................................................... 16

  <u>RULES</u>

Hawaiʻi Rules of Civil Procedure
  Rule 8(a) ...................................................................... 2, 5
  Rule 8(a)(2) ...................................................................... 2
  Rule 12(b)(6) ................................................................. 2, 18

## I.   INTRODUCTION

Defendants WILLIAM P. KENOI AND HARRY S. KUBOJIRI (hereinafter collectively referred to as "Defendants") seek dismissal of Plaintiff GEORGE K. YOUNG, JR.'s (hereinafter "Plaintiff") Complaint for Deprivation of Civil Rights filed on June 12, 2012 (hereinafter "Complaint") on the following grounds:  That the challenged Hawai'i statutes do not infringe on Plaintiff's rights to bear arms under the provisions of the Second Amendment of the United States Constitution because the Second Amendment does not include a right to carry concealed weapons and the scope of the Second Amendment does not extend to carrying weapons outside of the home.

## II.   DISCUSSION

The Second Amendment of the United States Constitution states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II. The Second Amendment protects an individual right to possess and carry weapons in case of confrontation.  *District of Columbia v. Heller,* 554 U.S. 570, 592, 595, 128 S.Ct. 2783, 2797, 2799, 171 L.Ed.2d 637 (2008).  The Second Amendment is fully applicable to the states by the Due Process Clause of the Fourteenth Amendment.  *McDonald v. City of Chicago, Ill.* 561 U.S. —, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010).

Rule 12(b)(6) of the Federal Rule of Civil Procedure (hereinafter "Fed.R.Civ.P.") provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of the asserted claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P., Rule 8(a). The statement required by Rule 8(a)(2) must give the defendant "fair notice of the ... claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). But, merely conclusory statements, alone, are not sufficient. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). A complaint must provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). Upon review, the Court will construe the complaint "in the

light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in plaintiff's favor." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081(7th Cir.2008) (citing *Killingsworth v. HSBC Bank Nev.,* 507 F.3d 614, 618 (7th Cir.2007)).  Dismissal is appropriate if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. at 1950.

In order to withstand a motion to dismiss plaintiffs must show that they have a cognizable claim, and further, to succeed on a preliminary injunction, plaintiffs would have to establish that they have "a claim plausible enough that ... the entry of a preliminary injunction would be the appropriate step." *Michigan v. U.S. Army Corps of Engineers,* 667 F.3d 765 (7th Cir.2011).

While the Supreme Court found that Second Amendment rights are personal rights to protection within one's home and that those rights are applicable to the states under the provisions of the Doctrine of Selective Incorporation, the Supreme Court observed that the right (to bear arms) is not unlimited.  *Heller*, 554 U.S. at 595.  Stating that the "right is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*.  In a footnote, the Court

3

explains that its list of "presumptively lawful regulatory measures" is illustrative and not exhaustive.  *Id.* at 627 n. 26.  *McDonald* reiterates that "the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose' " and that neither *Heller* nor *McDonald* "cast[s] doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.' " *McDonald*, 561 U.S. at —, 130 S.Ct. at 3047 (quoting *Heller,* 554 U.S. at 626, 128 S.Ct. at 2816).

In *Heller*, the court recognized the principle of constitutional construction that if a right existed at the time of the adoption of the Constitution, that right exists today.  The Court then reviewed the historical context of the right to keep and bear arms and reasoned that since the majority of 19th–century courts which considered the question held that prohibitions on carrying concealed weapons were lawful restrictions hence the carrying of concealed weapons would be unlawful today.

The Supreme Court cautioned that its holding, i.e., that the Second Amendment conferred a personal right to the use of a firearm in a person's home for personal protection should not be taken to cast doubt on longstanding prohibitions including the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and

4

government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. *Heller*, 554 U.S. at 626-627. In so stating, the court indicated its list was not an exhaustive analysis, but merely examples of "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 627, fn. 26. Ultimately, the Second Amendment protects the right of law-abiding, responsible citizens to use arms in defense of hearth and home. *Heller*, 554 U.S. at 635. The Supreme Court made no suggestion that the right recognized for protection in the home extends beyond the four walls of a person's home.

Plaintiff alleges a variety of claims related to his request to obtain a license to carry a concealed weapon and suggests that Sections 134-6 (Repealed 2006) and 134-9, Hawaiʻi Revised Statutes (hereinafter "HRS"), are in violation of rights he has pursuant to the Second Amendment of the United States Constitution. Plaintiff reasons that his Second Amendment rights include the right to carry, in public on his person, a firearm for personal protection.

While Plaintiff's Complaint utterly fails to comply with the mandate of Rule 8a, Fed.R.Civ.P., in that it is largely unintelligible, Plaintiff cites at length a variety of opinions for propositions which are not made clear by Plaintiff as to their relevance to the issues or the requested relief. Defendants can only speculate as to the nature of the causes of action plead and the relief sought.

The gist of Plaintiff's Complaint revolves around the proposition that the Second Amendment to the United States Constitution should be read to permit an individual to carry a firearm on his person in public for purpose of personal protection.  Plaintiff cites the *Heller and McDonald* cases as support for his contentions.  Plaintiff further alleges that:

Count 1:  Sections 134-6 (Repealed 2006) and 134-9, HRS, constitutes a Bill of Attainder, this is unconstitutional under Article 1 Section 10 of the Constitution.  Defendants do not know or understand how the first 30 pages of Plaintiff's Complaint relate to this cause of action or what is being plead by Plaintiff.  Other than general principles related to a Bill of Attainder, Plaintiff pleads no facts to support his cause of action.

Count 2:  Alleges that the enactment of Sections 134-6 and 134-9, HRS, impair the obligation of contract. Section 134-6, HRS, was repealed in 2006.  Try as we may this cause of action is unintelligible.  Defendants do not understand the nature of this cause of action and how the provisions of Article 1 Section 10 asserted in Count 2 apply to the facts pled in the first 30 pages of Plaintiff's Complaint.  Plaintiff has failed to connect the facts to the rights Plaintiff asserts exist from the provisions of the Second Amendment to the United States Constitution.

Count 3:  Plaintiff alleges that the provisions of the Second Amendment to the United States Constitution creates a liberty interest in the right to keep and bear arms which cannot be infringed by any State in the enactment of legislation restricting that right.  Plaintiff pleads no facts; instead he alludes to general principles of law related to the Second Amendment.  Plaintiff makes no connection with the facts plead in the first 30 pages of his Complaint with the cause of action plead in Count 3.  Plaintiff cites a number of sources for various propositions of general law but makes no connection with any of these general principles to the nature of the cause of action.

Count 4:  Alleges that the Ninth Amendment to the United States Constitution confirms rights retained by the citizens of the States.  Plaintiff offers no additional facts which would shed light on the nature of this cause

of action or what the purpose of citing the Ninth Amendment provides *vis a vis* the causes of action in his Complaint.  Plaintiff has pled insufficient facts to show that a violation of the Ninth Amendment to the United States Constitution exists.  Plaintiff makes no connection between the cause of action plead and the facts of this case.

Count 5:  Alleges that the Fourteenth Amendment provides that no state shall abridge the privileges and immunities of the citizens of the United States.  That since Plaintiff is not restricted from the possession of firearms under the auspices of Section 134-7, HRS, a permit to carry a firearm should not have been denied to him.  Once again, Plaintiff offers no facts which connect any of the allegations or the citations pled to what violation he is alleging, thus he has failed to plead a violation of the Fourteenth Amendment.

## III.  PLAINTIFF LACKS STANDING

Plaintiff's attack is upon the bare wording of Section 134-6, HRS, which was repealed in 2006, and not on any attempt or threat of enforcement of this statute which Plaintiff expresses an intention of violating.  The dispute in this case is with the words on statute books, which words the Plaintiff claims have violated the provisions of the Second Amendment.  This is not the kind of 'concrete' dispute needed for federal jurisdiction to declare a state statute unconstitutional and to enjoin its enforcement, within the meaning of *Younger v. Harris*, 401 U.S. 37, 51, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971).

Early in the history of the judicial branch of the Federal Government, Chief Justice Marshall declared: The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision; a statute apparently

7

governing a dispute cannot be applied by judges, consistently with their obligations

under the Supremacy Clause, when such an application of the statute would

conflict with the Constitution. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137,

2 L.Ed. 60 (1803). But this vital responsibility, broad as it is, does not amount to

an unlimited power to survey the statute books and pass judgment on laws before

the courts are called upon to enforce them. *Younger v. Harris*, 401 U.S. 37, 52,

91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971).

Plaintiff's Complaint is a classic example of a request for an advisory

opinion. Plaintiff has made no claim that he has been prosecuted under the

provisions of any of the offenses listed under chapter 134, HRS. Plaintiff is

requesting this Court to issue an injunction regarding the enforcement of chapter

134, HRS, in its entirety because chapter 134 is in violation of the prohibitions

found in the Second Amendment. In order to have standing, Plaintiff must allege

he is personally injured by the government's alleged constitutional violations.

*See Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1513 (9th Cir.1992).

Even in Plaintiff's Complaint regarding the refusal of Defendant Kubojiri to

issue a permit to carry a weapon under Section 134-9, HRS, Plaintiff has not

alleged that he sustained any personal injury; hence he lacks Article III standing to

challenge the constitutionality of the section of the HRS as well.

8

"Article III, § 2, of the Constitution restricts the federal 'judicial Power'
to the resolution of 'Cases' and 'Controversies.'  That case-or controversy
requirement is satisfied only where a plaintiff has standing."  *Sprint
Communications Co., L.P. v. APCC Services, Inc.,* 554 U.S. 269, 273, 128 S.Ct.
2531, 2535, 171 L.Ed.2d 424 (2008).  The Supreme Court has summarized the
requirements of Article III standing as follows: [I]n order to have Article III
standing, a plaintiff must adequately establish: (1) an injury in fact (i.e., a
"concrete and particularized" invasion of a "legally protected interest"); (2)
causation (i.e., a "fairly traceable" connection between the alleged injury in fact
and the alleged conduct of the defendant); and (3) redressability (i.e., it is "likely"
and not "merely speculative" that the plaintiff's injury will be remedied by the
relief plaintiff seeks in bringing suit).  *Id.* (quoting *Lujan v. Defenders of Wildlife,*
504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351) (1992).

Absent Article III standing, a federal court does not have subject matter
jurisdiction to address a plaintiff's claims, and they must be dismissed.  *Common
Cause of Pennsylvania v. Pennsylvania,* 558 F.3d 249, 257 (3d Cir.2009).  In the
context of an action seeking declaratory or injunctive relief, a plaintiff has standing
to sue only if he is the party that will or is likely to be injured by the future action
that he seeks to enjoin.  *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103
S.Ct. 1660, 75 L.Ed.2d 675 (1983).

## IV.   REMEDIES

Plaintiff requests this Court provide the remedy of the issuance of an injunction to enjoin the enforcement of chapter 134, HRS.  While the issuance of an injunction is a remedy and not a separate cause of action, in order to prevail on a motion for a preliminary injunction, a moving party must demonstrate (1) a substantial likelihood of success on the merits, (2) that he would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.  *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, (D.C.Cir.2006) (citations omitted); *Serono Laboratories, Inc. v. Shalala,* 158 F.3d 1313, (D.C.Cir.1998).

These four factors need to be balanced, thus a "particularly strong" showing in one area can justify an injunction "even if the showings in other areas are rather weak." *Chaplaincy,* 454 F.3d at 297; *see also Guam Indus. Services, Inc. v. Rumsfeld,* 383 F.Supp.2d 112, 116 (D.D.C.2005) (noting that the four factors "should be balanced on a sliding scale," and that "a party can compensate for a lesser showing on one factor by making a very strong showing on another factor"). The movant must, however, "demonstrate at least some injury," *Chaplaincy,* 454 F.3d at 297 (internal quotations omitted), "since the basis for [granting] injunctive relief in the federal courts has always been [a showing of] irreparable

harm," *CityFed Financial Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747

(D.C.Cir.1995) (quoting *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 39

L.Ed.2d 166 (1974)).

Plaintiff has failed to plead any evidence to support his request for injunctive

relief as a remedy.  Although Plaintiff suggests that he has a personal right to bear

arms for personal protection, he has made no showing that this right announced in

*Heller* is applicable to individuals outside of home and hearth or that he would

suffer irreparable harm if he is not granted a permit to carry a firearm.  Plaintiff has

especially failed to provide any evidence that the public interest would be furthered

by the issuance of an injunction against the enforcement of the entire chapter 134,

HRS.

## V.   STANDARD OF REVIEW FOR ALLEGED SECOND AMENDMENT VIOLATIONS

Even if Plaintiff progresses this far in his causes of action, this Court must

decide the standard of review for questions related to alleged violations of the

Fourteenth Amendment.  Neither *Heller* nor *McDonald* discussed the applicable

standard of review.  While some cases have suggested that an "intermediate

scrutiny" (*see United States v. Miller* (W.D.Tenn.2009) 604 F.Supp.2d 1162, 1169,

1171–1172) or "heightened scrutiny" is applicable under the Second Amendment

(*see United States v. Masciandaro* (4th Cir.2011) 638 F.3d 458, 463;  *Nordyke v.*

*King* (9th Cir.2011) 644 F.3d 776,779), and at least one court would apply strict

11

scrutiny to all gun-control regulations. *U. S. v. Engstrum,* 609 F.Supp.2d 1227, 1231–1232 (2009).

The Ninth Circuit observed that the Supreme Court's reasoning in *Heller* and *McDonald* suggests that heightened scrutiny applies only if a regulation substantially burdens the right to keep and to bear arms for self-defense. *Nordyke,* 644 F.3d at 779. Thus, application of strict scrutiny to every gun-control regulation would be inconsistent with *Heller*'s reasoning because *Heller* "sorted such regulations based on the burden they imposed on the right to keep and to bear arms for self-defense" and referred to "presumptively lawful" gun regulations. *Nordyke*, 644 F.3d at 781; *see also, Heller,* 554 U.S. at 626–627, and fn. 26.

Thus, the intermediate scrutiny is a test better suited to determine the constitutionality of the statute which Plaintiff suggests is in violation of rights he claims under the Second Amendment. To pass intermediate scrutiny, the challenged laws must further an important government interest by means that are substantially related to that interest. As the name implies, intermediate scrutiny is less rigorous than strict scrutiny, but more rigorous than rational basis review. Intermediate scrutiny is used in when deciding equal protection challenges to gender classifications, as well as in some First Amendment cases.

The Second Amendment claim raised by Plaintiff to carry firearms in public for the purpose of general self-defense, intermediate scrutiny standard, requires the

12

State to establish that there is a reasonable fit between the statute and its restrictions and a substantial governmental interest.  When conducting this review, this Court is undoubtedly aware that federal statutes exist making it unlawful for a person who has a prior conviction to carry a firearm.  18 U.S.C. § 922(g).  The Seventh Circuit has upheld a similar statute's constitutionality under a *Heller* challenge. *See, e.g. U. S. v. Skoien,* 614 F.3d 638 (7th Cir.2010) (where the court upholding the federal statute challenged by a defendant in a criminal action who had been indicted for possessing a firearm, after a misdemeanor conviction pursuant to 18 U.S.C. § 922(g), recognized that the goal of the statute, to prevent "armed mayhem" was "an important governmental objective."  *U. S. v. Skoien*, 614 F.3d at 642.

Defendants assert that the State of Hawai'i has significant governmental interests in protecting the safety of the public by restricting the availability and use of handguns in public. The Supreme Court has previously recognized that under intermediate scrutiny cases, the government's interest need not be compelling. *Schenck v. Pro–Choice Network,* 519 U.S. 357, 376, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997). The Fourth Circuit noted in *United States v. Masciandaro,* 638 F.3d 458, 473 (4th Cir.2011), "[l]oaded firearms are surely more dangerous than unloaded firearms, as they could fire accidentally or be fired before a potential victim has the opportunity to flee."

In enacting statutes regulating the carrying of firearms in the public arena, the State of Hawai'i has determined that, for purposes of protection of its residents, a citizen's interest in carrying a firearm in public should be subject to the governmental interest in safeguarding the welfare of the public at large from the inherent dangers in a loaded firearm. Thus the state has established a substantial interest in the regulations at issue.

Under the Supreme Court's holding in *U. S. v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) when reviewing a constitutional challenge, a law is not facially unconstitutional unless plaintiffs can show that they have raised a cognizable Second Amendment claim. The issue, post- *Heller,* is whether the right of citizens to bear arms for "self-defense" should be construed to include concealed carry and should be considered to fall with "scope" determination.  If the Court determines that the activity is *not* within that scope, then the Court's inquiry is over.  *Ezell v. City of Chicago*, 651 F.3d 684, 702–03 (2011).

*Heller* and *McDonald* recognized that the " 'central component' of the Second Amendment is the right to keep and bear arms for defense of self, family and home." *Ezell*, 651 F.3d at 704.  As *Heller* noted, from Blackstone through the Nineteenth Century cases, courts which considered the issue noted that the right was not intended to cover "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626.  The

14

holding in *Heller* is narrow, and limited to the possession of firearms in one's

home for the purpose of self-defense. As the Seventh Circuit noted in *Skoien,*

"[c]ategorical limits on the possession of firearms would not be a constitutional

anomaly. Think of the First Amendment, which has long had categorical limits:

obscenity, defamation, incitement to crime, and others." *Skoien*, 614 F.3d at 641

(reviewing First Amendment cases).

The rights recognized in *Heller*-to possess a firearm for self-defense in the

home-are rights which plaintiffs currently enjoy.  The plaintiffs do not assert that

the statutes at issue limit their right to *have* a firearm, if they can meet permit

requirements, but rather, that the statutes limit their ability to carry that firearm,

loaded, outside the home for self-protection.  *Heller* specifically affirmed the

government's power to regulate the use of firearms outside the home.  *Heller*,

554 U.S. at 626–27.  Therefore, neither *Heller* nor *McDonald* requires the State of

Hawaiʻi to extend the right to possess and carry a firearm to the area outside the

home.  *Heller* clearly speaks of the need to defend "hearth and home" but does not

go beyond that area in recognizing Second Amendment protections.

## VI.   PLAINTIFF'S DUE PROCESS CLAIMS UNDER THE FOURTEENTH AMENDMENT

A license to carry a concealed weapon upon one's person in public is

governed by Section 134-9, HRS.  This section provides:

15

**§ 134-9. Licenses to carry.**  (a) In an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property, the chief of police of the appropriate county may grant a license to an applicant who is a citizen of the United States of the age of twenty-one years or more or to a duly accredited official representative of a foreign nation of the age of twenty-one years or more to carry a pistol or revolver and ammunition therefor concealed on the person within the county where the license is granted. Where the urgency or the need has been sufficiently indicated, the respective chief of police may grant to an applicant of good moral character who is a citizen of the United States of the age of twenty-one years or more, is engaged in the protection of life and property, and is not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry a pistol or revolver and ammunition therefor unconcealed on the person within the county where the license is granted. The chief of police of the appropriate county, or the chief's designated representative, shall perform an inquiry on an applicant by using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases where the applicant is not a citizen of the United States, before any determination to grant a license is made. Unless renewed, the license shall expire one year from the date of issue.

(b) The chief of police of each county shall adopt procedures to require that any person granted a license to carry a concealed weapon on the person shall:

(1) Be qualified to use the firearm in a safe manner;

(2) Appear to be a suitable person to be so licensed;

(3) Not be prohibited under section 134-7 from the ownership or possession of a firearm; and

(4) Not have been adjudged insane or not appear to be mentally deranged.

(c) No person shall carry concealed or unconcealed on the person a pistol or revolver without being licensed to do so under this section or in compliance with sections 134-5(c) or 134-25.

(d) A fee of $10 shall be charged for each license and shall be deposited in the treasury of the county in which the license is granted.

In the case of *Erdelyi v. O'Brien*, 680 F.2d 61 (1982), the Ninth Circuit

considered whether a property interest is created in the enactment of a concealed

weapons statute under the California Penal Code.  The court found that under

California Law, "Concealed weapons are closely regulated by the State of

16

California. *See* Dangerous Weapons Control Law, Cal.Penal Code §§ 12000-12094.  Whether the statute creates a property interest in concealed weapons licenses depends "largely upon the extent to which the statute contains mandatory language that restricts the discretion of the (issuing authority) to deny licenses to applicants who claim to meet the minimum eligibility requirements." *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980).  Cal.Penal Code § 12050 explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements. Where state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field, initial applicants do not have a property right in such licenses protected by the Fourteenth Amendment. *See Jacobson*, 627 F.2d at 180 (gaming license under Nevada law); *Medina v. Rudman*, 545 F.2d 244, 250-51 (1st Cir. 1976) (racing license under New Hampshire law).  Erdelyi therefore did not have a property interest in a concealed weapons license." *Erdelyi*, 880 F.2d 63.  In *Baer v. Wauwatosa,* 716 F.2d 1117 (1983), the Seventh Circuit Court of Appeals also held that aspirations to obtain a firearms license are not constitutionally protected as a property interest under the Due Process Clause of the Fourteenth Amendment.

Likewise, the Hawaiʻi statute gives broad discretion to the Chief of Police to determine who is granted a license to carry a firearm.  The Chief of Police may

issue or may not issue a firearm.  Where state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field, initial applicants, such as Plaintiff, do not have a property right in such a license which is protected by the Fourteenth Amendment.  Since no property interest is involved, no Fourteenth Amendment violation can be shown by Plaintiff.  As noted above, property interests protected by the Fourteenth Amendment do not arise whenever a person has only "an abstract need or desire for" or "unilateral expectation of" a benefit.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

## VII.   CONCLUSION

For the foregoing reasons, dismissal of all claims against the Defendants, pursuant to Rule 12(b)(6), Fed.R.Civ.P., is appropriate in this case.

Dated: Hilo, Hawaiʻi, August 10, 2012.

Respectfully submitted,

By     /s/ Michael J. Udovic     
     MICHAEL J. UDOVIC
     Deputy Corporation Counsel
     Attorney for Defendants
     WILLIAM P. KENOI AND
     HARRY S. KUBOJIRI