COME NOW Plaintiff GEORGE K. YOUNG, JR., Pro Se, does hereby submit his

Memorandum of Points and Authorities in Opposition to Defendants' William P.

Kenoi, Harry S. Kubojiri, Neil Abercrombie and David M. Louie's Motion to

Dismiss.

## INTRODUCTION

Plaintiff, GEORGE K. YOUNG, JR., alleges he was denied a permit to carry either

a **concealed or unconcealed** firearm because Defendant KUBOJIRI found that

pursuant to H.R.S. 134-9 Plaintiff did not have an "exceptional case" situation nor

provide "sufficient urgency" or "the need to carry a firearm has been sufficiently

indicated," beyond the constitutionally defined protective meaning of "self-

defense" **in case of conflict with another person.** It is understood that to prohibit

the carry of a concealed weapon is a prerogative of the State to exercise;

however, the State must allow the alternative of unconcealed carry, which is a

constitutionally protected right.  To deny both methods of carry would be an

impairment of **the right to bear arms, which shall not be infringed.** Denial carries

sufficient weight to prove the existence of a state created regulatory scheme to

**unconstitutionally** invoke the doctrine of **"PRIOR RESTRAINT"** upon a fundamental, individual, enumerated, substantive constitutionally guaranteed civil right. **Irreparable harm** caused by the use of coercion through the threat of criminal persecutions for exercising a constitutional right without a permit or license that is withheld pending justification for the need of a right.

To address the correctness of the present instance of dispute, a "permit" or "license" to anything **allowed** can only be given and administered by the possessor of that right to which the stated privilege is permitted. Through the recent cases of **Washington, D.C. v. Heller** and **McDonald v. City of Chicago,** the Second Amendment to the United States Constitution is acknowledged to be an individual right that is fundamental and "...implicit in the concept of ordered liberty."

Hawaii Revised Statute 134-9 LICENSES TO CARRY, is facially challenged on the grounds that **"exceptional case"** and **"sufficient urgency"** requirement, on its face and or the application thereof, impairs the Second Amendment **right to bear arms.** The statute essentially converts an **"individual right"** into an assumed **"state possessed and administered privilege...".** Within the state of Hawaii, only persons who obtain the license to carry a firearm in public, concealed or unconcealed, may lawfully possess a loaded firearm for the lawful purpose of

being armed and ready in case of conflict with another person.  Hawaii Revised Statute 134-9 grants county police Chiefs discretionary authority to issue permits to bear concealed or unconcealed firearms.  That authority provides county police with  unbridle discretionary authority to decide whether an applicant possesses an **"exceptional case"** or **"sufficient urgency"** to qualify for a permit to carry a concealed or unconcealed firearm, without further identifying the parameters of the additional requirement to the point where Plaintiff knows whether or not he is within the boundaries of the law.  Defendant KUBOJIRI has taken that authority and arbitrarily denied Plaintiff a permit to carry a concealed or unconcealed operable firearm, without an avenue of redress.  The statute places an unconstitutional burden of justifying the need for a firearm beyond "self-defense" and "self-preservation".  By arbitrarily denying Plaintiff a permit to carry a concealed or unconcealed firearm, without past or present evidence of criminal behavior, specifically identified mental, physical, character defects, and described evidence in support of a **"clear and present danger..."** or **"imminent impairment of the administration of justice..."**  and insisting upon **pre-qualifying requirements,** Defendant KUBOJIRI violated Plaintiff's Second Amendment right to bear arms.  The Supreme Court of the United States provides guidance in matching evaluation of personal, enumerated rights through comparison with the

standards of treatment of First Amendment rights. Addressing the Second Amendment issue we note the following: **"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes IRREPARABLE INJURY.' (ELROD, SHERIFF, ET AL v. BURNS, ET AL, 427 U.S. 347(1976); New York Times Co. v. United States, 403 U.S. 713 (1971); Bantam Books, Inc. v. Sullivan, 372 U.S. 58,67 (1963).)**

Given the existing facts and the ACTIONS of Defendant KUBOJIRI, under authority of H.R.S. 134-9, he invokes an unconstitutional **"Prior Restraint"** upon an enumerated, fundamental, individual RIGHT that is constitutionally protected through the Fourteenth Amendment's Due Process clause, that right is further identified to be a **"...substantive guarantee"** and **"...implicit in the concept of ordered liberty."** The type of **"prior restraint"** control involves legislative restraints which makes unlawful the bearing of arms, concealed or unconcealed, unless there has been previous prior compliance with specific conditions imposed by the state's legislative act. Enforcement of the control is normally by criminal prosecution or other legal proceeding for failure to meet the **artificial** qualifying conditions. The Second Amendment, conceptualized, proposed and ratified **pursuant to Article I and Article V of the U.S. constitution and the Laws of the United States**, is beyond the reach of the Hawaii state legislature to **expand,**

**contract, alter or modify,** either directly or indirectly. The implicit language of the Second Amendment, to alter and ignore its core purpose of **"self-defense"** and **"self-preservation"** and the described violation is in direct contravention of **U.S. Const., Art. VI, Cls 2 (Supremacy Clause).** Americans understood the **"right of self-preservation"** as permitting a citizen to "repel force by force" when "the intervention of society in his behalf, may be too late to prevent an injury." (1 Blackstone's Commentaries 145-146, n. 42(1803). (Heller, Slip Opinion pg. 21).**

In order for the state of Hawaii to justify and legislate a **"prior restraint"** upon a constitutionally protected right, an extremely heavy burden of proof is required. A substantial amount of documented, provable evidence in support of the **anticipated imminence of future violence,** and the existence of law that is narrowly tailored with an extremely compelling state interest beyond the general "…public safety and welfare". Such a Prior Restraint, legislated from the state level, which has been identified as responding to a state of national emergency or national security risk, is required. **(Schenck v. United States 249 U.S. 47 (1919); Brandenburg v. Ohio, 395 U.S. 444 (1969)**

**"…What emerges from these cases is the "working principle that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished." (Bridges v. California, supra at 263), and that a "solidity of evidence," (Pennekamp v. Florida, supra at 347), is necessary to make the requisite showing of imminence. "The danger must not be remote or even probable; it must immediately imperil." (Craig v. Hamey, supra at 376)**

"The very enumeration of the right <u>takes out of the hands of government - even the Third Branch of Government-the power to decide on a case-by-case basis whether the right is rally worth insisting upon.</u>  A constitutional guarantee subject to future <u>judges assessments of its usefulness is no constitutional guarantee at all.</u>  Constitutional rights are enshrined with the scope they were understood to have been when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." (Washington, D.C. v. Heller, Slip Opinion pg 62, 63.)

"Putting all of these textual elements together, <u>we find that they guarantee the individual right to possess and carry weapons in case of confrontation.</u>" (Washington, D.C. v. Heller, Slip Opinion pg 19).  (Note, that with specificity, in writing and language, there are no written expressions of limitations, prohibitions or restrictions **applicable to "only within the home",** placed with or included in the **MEANING OF THE OPERATIVE CLAUSE.)**

## ARGUMENT

### I.

### THE SECOND AMENDMENT IS A CONSTITUTIONAL RIGHT TO KEEP AND BEAR ARMS.

### A.

### THE "EXCEPTIONAL CASE" AND "SUFFICIENT URGENCY" REQUIREMENTS OF HAWAII H.R.S. 134-9 VIOLATES THE SECOND AMENDMENT

Plaintiff's first cause of action alleges, H.R.S. 134-9 in part, that the statutory

"exceptional case" and "sufficient urgency" pre-qualifying requirements violates

Plaintiff's right to keep and bear arms under the Second Amendment of the

United States Constitution as the terms are **vague, undefined and overly broad in both meaning and scope.** The U.S. Constitution's Second Amendment protects two defined rights: (1) The **right to keep arms** shall not be infringed; and (2) The **right to bear arms** shall not be infringed. "It cannot be doubted that the right to bear arms was regarded as a **substantive guarantee,** not a prohibition that could be ignored so long as the States legislated in an even handed manner." **(McDonald v. City of Chicago, 561 U.S. Slip Opinion, pg 33).** In the clear and unambiguous, implicit language of the Second Amendment, there are no words stating "self-defense" or "self-preservation". What is obvious, are the guaranteed, codified, pre-existing rights that **there is a right to keep arms** and **there is a right to bear arms** and the Second Amendment declares that it shall not be infringed. Hawaii's H.R.S. 134-9 significantly and unconstitutionally, alters the Second Amendment by expanding the language **outside the limits** of the amendment through state's **"prior restraint"** statutory law to **"exceptional case"** and **"sufficient urgency",** which are undefined, vague and overly broad, to be a recognized priority of law superior over the inherent right of "self-defense" and "self-preservation", which are understood to be the law of nature and the "core" purposes of the right itself.

"This Constitution, and the <u>Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United</u>

States, shall be the Supreme Law of the Land; and the JUDGES in every states shall be bound thereby, any Thing in the Constitution or **laws of any State to the Contrary notwithstanding." (United States Constitution, Article VI, Clause 2)**

The two most known cases of **"discretionary prior restraint laws"** violating the

U.S. Constitution's Supremacy Clause are *Yick Wo v. Hopkins, 118 U.S. 356 (1886)*

and *Murdock v. Pennsylvania, 319 U.S. 105 (1943).*

In simple language, the Supremacy clause of United States Constitution forbids

individual state legislative bodies from **expanding, contracting, altering or**

**modifying** the words and/or the original meaning of the words of the Second

Amendment, **"...which in either Case, shall be valid to all Intents and Purposes,**

**as Part of this Constitution..."(U.S. Const., Article V, (1789),** by indirect means of

regulatory schemes that renders impotent an enumerated, fundamental,

individual right.  In other words, the state is forbidden from converting a right into

a licensed privilege by means of state statutory requirement, of "exceptional

case" and "sufficient urgency" invading and ignoring the core purpose of "self-

defense".  If it is able to accomplish this act on the Second Amendment then

there are no guarantees that the State will not also invoke such authority upon all

other enumerated rights, such as a license to free speech, regulating freedom of

expression; freedom of the press, being able to control and censor subject

matter;  licensing and taxing freedom of religion, to be restricted only to

Christianity; to peaceably assemble but no more than three people at a time; to

petition Government for a redress of grievances, limited to offenses committed

only by the people and not the government.  It would acknowledge the state as

the supreme power and law of the land, and may claim sovereign immunity at

will.  A totalitarian democracy and not one of Republican principles.

**"…We assume that this is not municipal respondents view, so what they must mean is that the Second Amendment should be singled out for special – and specially unfavorable – treatment.  WE REJECT THAT SUGGESTION." (McDonald v. City of Chicago, 130 S.Ct. 3020 (2010), Slip Opinion pg 31)**

**"Municipal respondents cite no case in which we have refrained from holding that a provision of the Bill of Rights is binding on the States on the ground that the right at issue has disputed public safety implications."(McDonald v. City of Chicago, Slip Opinion pg 36)**

**"Municipal respondents therefore urge us to allow state and local governments to enact any gun control law that they deem to be reasonable, including a complete ban on the possession of handguns in the home for self-defense.  …Time and again, however, those pleas failed.  Unless we turn back the clock or adopt a special incorporation test applicable only to the Second Amendment, MUNICIPAL RESPONDENTS' ARGUMENT MUST BE REJECTED. (McDonald v. City of Chicago, Slip Opinion pg 37)**

**U.S. Constitution, Article VI, Cls.2 (Supremacy clause):  "…and the JUDGES in every State shall be bound thereby, any Thing in the Constitution and Laws of any State TO THE CONTRARY NOTWITHSTANDING."**

It is incandescently clear that H.R.S. 134 and H.R.S. 134-9 is in direct conflict with

**"…shall not be infringed.. ."**  In **Heller**, the court acknowledged and affirmed

Justice Ginsburg's definition of the meaning of "bear arms."  Justice Ginsburg

defined "bear arms" to mean "wear, bear, or carry…upon the person or in the

clothing or in a pocket, for the purpose…/of being armed and ready for offensive

or defensive action in case of conflict with another person. **(Heller, at 2794; 171 L.Ed.2d at 652 – 653.)** The description of "bear arms," according to Justice Ginsburg, does not cite **"...in the home..."** or **"...an exceptional case" or "...urgency or need has been sufficiently indicated."** Such fictionalized legalistic terminology is proof of an act by the State, supported by a politically influenced court, to expand the language of "...shall not be infringed..." of the U.S. Constitution to convert an "individual right..." into a "collective state right", advocating a **"prior restraint"** through the application of threatening coercive criminal persecutions for attempting to exercise said right. The legal standard for all other rights is **"subsequent punishment"** if abuse of said right comes to past.

Judge Helen Gillmor, herself, has emphatically stated that the Second Amendment is the "collective right of the State..."**(Young v. State, 548 F.Supp. 2d 1151).** If such was the incorrect interpretation of the Second Amendment when H.R.S. 134 and H.R.S. 134-9 was conceptualized, written, ratified by the legislature, **prior to Heller**, then it becomes obvious that the court and the State is still attempting to enforce an **unconstitutional statute.** No public notice of correction was announced and as being published by the State acknowledging the corrected interpretation of the Second Amendment.

As commanded, the Second Amendment is to be viewed under the same

standards as the other **enumerated rights (first eight amendments to the Bill of**

**Rights (1791).**

"It is firmly established that a significant impairment of First Amendment rights must survive exacting scrutiny. (Buckley v. Valeo, 424 U.S. at 64,65; NAACP v. Alabama, 357 U.S. 449, 460-461 (1958). "This type of scrutiny is necessary even if any deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct. . ."(Buckley v. Valeo, supra at 65). "Thus encroachment "cannot be justified upon a mere showing of a legitimate state interest." (Kusper v. Pontikes, 414 U.S. at 58). "The interest advanced must be paramount, one of vital importance, and the burden is on the government to show the existence of such an interest. (Buckley v. Valeo, supra at 94; Williams v. Rhodes, 393 U.S. at 31-33; NAACP v. Button, 371 U.S. 415,438,444 (1963); Bates v. Little Rock, 361 U.S. 516, 524 (1960); (NAACP v. Alabama supra at 406; Thomas v. Collins, 323 U.S. 516, 530 (1945)  "A State may not choose means that unnecessarily restrict constitutionally protected liberty. " Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.  If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties." (Kusper v. Pontikes, supra, at 59(citations omitted.)

## B.
## SECOND AMENDMENT IS NOT LIMITED
## TO WITHIN THE HOME AND ON PERSONAL PROPERTY

The continuous use of the statement that the Second Amendment is restricted to

only within the home or limited to within the home and not allowed outside of

the home or into the public is an illogical, uneducated assumption.  It is the next

big **LIE, UNTRUTH, legalistic  fiction or a superb gold medal performance in the**

**art of verbal gymnastics,** being advocated by the Brady Center to Prevent Gun

Violence, anti-gun zealots, bias courts and ill informed, inexperienced, improperly

educated judges who are unwilling or unable to understand or foresee the truth, following **United States v. Miller, 307 U.S. 174 (1939).**  In **Miller** the anti-gun zealots advocated that the United States Supreme Court ruled that the Second Amendment was a "collective right" and not an "individual right".  It was something that was **never said** and was **never written.**   The advocacy of an untruth for seventy (70) plus years.

**"As for the "hundreds of judges," who have relied on the view of the Second Amendment JUSTICE STEVENS claims we endorsed in *Miller*:  If so, they overread *Miller*.  And their erroneous reliance upon an uncontested and virtually unreasoned case cannot nullify the reliance of millions of Americans (as our historical analysis has shown) upon the true meaning of the right to keep and bear arms."  (Heller, Slip Opinion pg 52, Footnotes 24)**

Now comes, **Washington, D.C. v. Heller and McDonald v. City of Chicago.** The Second Amendment is most acute within the home because of the following: There are four basic elements, any one of which, ...by itself, is sufficient reason to invoke **"self-defense" or "self-preservation"** (1) defense of a person's self and physical well- being (2)defense of a person's personal family members, collectively or individually, (3) the protection of valuable property, e.g. jewelry, art, etc. and (4) as a recognized member of the **unorganized** and **unmanaged** militia in defense of the community, state and nation.  The **unorganized** militia,

which consists of the members of the militia who are not members of the National Guard or Naval Militia. **(Title 10, Subtitle A. Part I, Chapter 13, Subsection 311 (10 U.S.C. 311)** . As a member of the **unorganized militia**, Plaintiff has an obligation and responsibility to maintain a level of competency and proficiency in the maintenance, care and familiarity with various types of firearms, especially those of military application, short of fully automatic arms, to which one of the primary objectives of such a requirement is to standardize the caliber, civilian and military, of the long gun and the short hand pistol. This proficiency and competency in arms is not limited to within the home. The Second Amendment is most acute within the home because it reflects three (3) of the four basic elements, in combination thereof, or individually ...required to invoke **"self-defense".** A person does not lose the right to self-defense and self-preservation merely because there are less than the three qualifying elements to address the situation as "acute". Nor does Plaintiff forfeits his individual right to self-preservation beyond the entrance to his home. The right to self-defense and self-preservation is fundamental, individual and is in rightful possession wherever Plaintiff has a legal right to be; exceptions being where there is an expectant measure of public funded, armed and trained physical security present to effectively respond to any life threatening situation in a timely manner.

If it was the intention of the Supreme court to admit to restricting or limiting the Second Amendment to **only within a home**, why would the court reference:

**"...the concern of the remote settler to defend himself and his family against hostile Indian Tribes and outlaws, wolves and bears and grizzlies and things like that?" (JUSTICE KENNEDY, Washington, D.C. v. Heller, Oral Arguments, pg 8)**

What did the homesteaders possess for protection during the great land rush when the U.S. government opened new territories and gave out 1 square mile (640 acres) of land per settler in Indian territories? After the ratification of the Declaration of Independence in July 1776 and at the end of American Revolution in 1783, General George Washington gave out land to voluntary members of the unpaid Militia as compensation for their services. The land size given was 640 acres or 1 square mile, at the suggestion of Thomas Jefferson, to create farmers and emphasize agriculture. Did they not carry with them into the wilderness and new territories their militia weapons of rifle, pistol and dagger? At the time of the ratification of the U.S. Constitution in 1787, the Bill of Rights passed in 1791 it is unimaginable that the authors of the Bill or Rights limited or restricted the Second Amendment to within the home.

Once again, after careful reading of **all related documents,** we find in the **McDonald v. Chicago**'s oral arguments, the subject matter of restricting firearms

to within the home surfaced.  Subject matter was addressed and immediately

dismissed by Chief Justice John Roberts.


**"JUSTICE STEVENS:  If you look to Justice Harlan's DISSENT in GRISWOLD, where he says the Fourteenth Amendment stands on its own bottom and it can be either more or less than the provisions of the Bill of Rights, and there's no reason in the world why this Court could not adopt the same position here and say:  Insofar it's incorporated, it applies only within the home.  The Court had ample precedent for that."**

**"CHIEF JUSTICE ROBERTS:  I'm sorry.  Is it the position of the City of Chicago that we should rely on Justice Harlan's dissent in GRISWOLD?"**

**"MR. FELDMAN: (Attorney for City of Chicago):  No.**

**"CHIEF JUSTICE ROBERTS:  Well, then your answer to Justice Stevens is no, you're not going to follow that approach, right? (Oral Argument McDonald v. City of Chicago, pg 57,lines 3 thru 24.)**


The subject matter of the Second Amendment applies **"...only within the**

**home..."**, was addressed by Justice Stevens, as a suggestion and just as quickly as

it was presented, it was dismissed by Chief Justice Roberts.

It is not within the authority or enumerated power of the state legislative body

nor the Supreme Court of the United States to select what parts of the U.S.

Constitution's enumerated, fundamental, individual right (Second Amendment) to

acknowledge and accept, and what parts to reject and ignore.  The Supreme Court

found:

**"...that even when a State law is not in direct conflict with a Federal law, the State law could still be found UNCONSTITUTIONAL under the Supremacy Clause if the "state law is an obstacle to the accomplishment and execution of Congress's full purposes and objectives." Congress need not expressly assert any preemption over State laws either, because Congress may implicitly assume this preemption under the Constitution."(CROSBY v. NATIONAL FOREIGN TRADE COUNCIL, 530 U.S. 363. (Note*Reference Federalist No. 33, January 2, 1788, ALEXANDER HAMILTON; Federalist No. 44, January 25, 1788, JAMES MADISON)**

**"The Court's use of the word "presumptively" suggests that the articulation of sensitive places may not be a limitation on the scope of the Second Amendment, but rather on the analysis to be conducted with respect to the burden on that right." (United States v. Masciandaro (4th Cir. 2011) 638 F.3d 472)**

**"This Court shares that view. (Woollard v. Sheridan, United States District Court For The District of Maryland) "The Supreme court's choice of phrasing connotes that the restrictions it termed "presumptively lawful" pass muster under a heightened standard of review. It would likely not have used the modifier "presumptively" if those restrictions were subject, not to any form of elevated scrutiny, but only to the rational basis review that all laws are presumed to satisfy. If this is correct, and laws limiting the carrying of firearms in sensitive places are indeed implicated by the Second Amendment's protections, then those protections necessarily extend outside the home, at least to some degree. For all these reasons, the Court finds that the right to bear arms is not limited to the home. The sign posts left by recent Supreme Court and Fourth Circuit case law all point to the conclusion that Woollard's "claim to self-defense – asserted by him as a law-abiding citizen...- does implicate the Second Amendment, albeit subject to lawful limitations." (United States v. Masciandaro, 638 F.3d at 468 (Niemeyer, J., concurring)"**

County Defendants' counsel looks to **United States v. Masciandaro,(4th Circuit) 638 F.3d 458, 463** to justify the standard of review to be that of **"intermediate scrutiny" or "heightened scrutiny".** The ***Masciandaro*** court added that "there may or may not be a Second Amendment right in some places beyond the home, but we have no idea what those places are" – perhaps non-sensitive places?

While resolution of such issues would be helpful to the Supreme Court in deciding

cases, the Fourth Circuit decided "to await that guidance from the nation's highest court." The policy-driven reason: "We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights." **BUT THAT WAS THE VERY APPROACH REJECTED BY _HELLER._**

Guidance was provided by the Supreme Court of the United States: **"We know of no other enumerated constitutional right whose core protection has been subjected to a _freestanding "interest –balancing"_ approach. _The very enumeration of the right takes out of the hands of government – even the THIRD BRANCH OF GOVERNMENT – the power to decide on a case-by-case basis whether the right is really worth insisting upon."_ (District of Columbia v. Heller, 554 U.S. 570, 634(2008).**

The State courts were well aware of the meaning of the right to "bear arms" long before the Supreme Court decided **_Heller_** and **_McDonald._** Just to cite a decision rendered in a state within the Fourth Circuit, the North Carolina Supreme Court in 1921 **invalidated a ban on carrying handguns outside the home** because it is "the ordinary private citizen, whose right to carry arms cannot be infringed upon," and

further:  To him the rifle, the musket, the shotgun, and the pistol are about the

only arms which he could be expected to "bear," and his right to do this is that

which is guaranteed by the constitution.  To deprive him of bearing any of these

arms is to infringe upon the right guaranteed to him by the Constitution. **(State v.**

**Kerner, 181 N.C. 574, 576, 107 S.E. 222, 234 (1921)**


It is clear and beyond any doubt that the ***Masciandaro***  court were already in

possession of their directive from the United States Supreme Court and were

unwilling to acknowledge the truth and fact of the matter.  The Fourth Circuit

Court's judicial discretionary power over the Second Amendment is severely

limited.

**"...the enshrinement of constitutional rights necessarily takes certain policy choices off the**
**table." (Heller, Slip op. pg.64)**


Once again, before this court ventures down the long ridiculous, erroneous road

again, **"collective rights"** being the **first** MISTAKE by Judge Helen Gillmor;  **HELLER**

**and the Second Amendment Opinion** applied only to Washington, D.C., **a federal**

**enclave,** being the **second** MISTAKE by Judge David Ezra;  to advocate, again, an

imaginary objective of  **what was not said** and **what was not written**, would be a

**third** mistake;  ...believe the statement that: **"...only within the home..."**

**CANNOT BE SO**.  This court would be guilty of admitting to applying a dissenting

Supreme Court opinion **(Griswold)** as law, in the present instance, which is

absolutely contrary to *stare decisis*, prior precedents and to the constitution's

Supremacy Clause. **(U.S. Constitution, Article VI, Clause 2).**

"Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, and in <u>HELLER</u>, we held that <u>individual self-defense is the *central component*</u> of the Second Amendment right." <u>(Heller, 554 U.S. at     (slip op. at 26; see also id., at     (slip op. at 56)(stating that the "inherent right of self-defense has been central to the Second Amendment right.)</u>

"...Thus, we concluded, citizens <u>MUST</u> be permitted "to use (handguns) for the core lawful purpose of self-defense." <u>(Id., at      (slip op. at 58)</u>

II.

### TITLE 42 U.S.C. 1983 LAWSUIT

A.

### DETERMINING LEGAL GROUNDS FOR A
### 42 U.S.C. 1983 SUIT

The first inquiry in any **42 U.S.C. 1983** suit ... is whether the plaintiff has been

deprived of a right secured by the Constitution and laws of the United States. If a

United States constitutional Second Amendment right has been **invaded or**

**infringed** through the continuous enforcement of a state legislative statutory law,

**Hawaii Revised Statute 134-9.**  Matters of fact:  The Second Amendment of the

United States constitution is:

(1)  An **enumerated right**, ratified in 1791 as part of the **Bill of Rights'** first eight

amendments **pursuant to Article V** to the U.S. constitution.

(2)  The Second Amendment, like the First Amendment, contains **multiple rights.**

   (a)  The **Right to Keep Arms shall not be infringed.**

   (b)  The **Right to Bear Arms shall not be infringed.**

(3)  The Second Amendment is a **substantive guarantee.**

(4)  The Second Amendment is an **individual right.**

(5)  The Second Amendment is a **fundamental right.**

(6)  The Second Amendment is **"implicit in the concept of ordered liberty."**

(7)  **"...Moreover, this contention repackages one of the chief arguments that WE HAVE REJECTED in HELLER, i.e. that the scope of the Second Amendment right is defined by the immediate threat that led to the inclusion of that right into the Bill of Rights." (McDonald v. City of Chicago, 561 U.S. _____ (2010)**

The alleged offensive language of H.R.S. 134-9:

(a)  "...(a)  In an **EXCEPTIONAL CASE**, when an applicant shows reason..." for concealed carry.

(b)  "...Where the **URGENCY or the NEED has been sufficiently indicated**..." for unconcealed Carry.

Under the above listed statutory requirements to carry, either concealed or

unconcealed, a **PERMIT** is required to be issued by the local county Chiefs of

Police, **allowing** Plaintiff the **liberty to exercise and enjoy the benefits** of an enumerated, fundamental, individual constitutionally protected, **"...shall not be infringed, substantive guaranteed** right. The absence of a Hawaii county issued **PERMIT** to bear a firearm concealed or unconcealed, by the local County Chief of Police or his appointed representative, will be grounds for prosecution as a **Class B felony**. It is obvious that the foregoing exercise of particular law is to **COERCE**, **INDUCE** or **MOTIVATE** to exact and **restrain** a particular behavior, that is contrary to and is **preserved, protected and defended** by the U.S. Constitution's Second Amendment, WHICH IS A LAW MADE IN PURSUANCE THEREOF... .

"Our analysis must begin with the recognition that where threatened action by government is concerned, we do not require Plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat – for example, the constitutionality of a law threatened to be enforced. The Plaintiff's own action (inaction) in failing to violate the law eliminates the imminent threat of prosecution, BUT NONETHELESS DOES NOT ELIMINATE ARTICLE III JURISDICTION." (Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118(2007) Decided 9 January 2007)

"...In each of these cases, the Plaintiff had eliminated threat of harm by simply not doing what he claimed the right to do. That did not preclude subject-matter jurisdiction because the threat-eliminating behavior was effectively coerced." (Terrance v. Thompson, 263 U.S. 197 (1923) supra at 215-216; Steffel v. Thompson, 415 U.S. 452(1974, supra at 459)

"The dilemma posed by that coercion-putting the challenger to the choice between abandoning his Rights or risking prosecution is "a dilemma that was the very purpose of the Declaratory Judgment Act to ameliorate." (Abbott Laboratories v. Gardner, 387 U.S. 136, 152(1967).

Such regulatory schemes have been recognized since 1501 with Pope Alexander VI and in 1662 under the **Licensing Acts of 1662** in England.  It is the **Doctrine of Prior Restraints (Emerson, Thomas J., "The Doctrine of Prior Restraint", (1955), Yale Law School Legal Scholarship Repository.**  The Doctrine of Prior Restraint is one of the main purposes for the Founding Fathers to the Constitution insistence upon a **Bill of Rights.**  And in particular, the inclusions and protections of the rights found in the First and Second Amendments.  Freedom of speech, freedom of the press, freedom of religion, the right to keep and bear arms, shall not be subjected to **prior restraint laws,** except in extremely exceptional circumstances.

Therefore, it is the precedent and *stare decisis*  of the Supreme Court that a **"PRIOR RESTRAINT"** law imposed upon a constitutionally protected, **enumerated** right, through the Fourteenth Amendment **"...due process" clause,  bears a heavy presumption against its  constitutional validity.  (Carroll v. Princess Anne, 393 U.S. 175, 181 (1968); Near v. Minnesota, 283 U.S. 697 (1931); (Schenck v. United States, 249 U.S. 47 (1919).**

H.R.S. 134-9 promulgates the **Doctrine of Prior Restraint**, to which enforcement of the statute to **coerce** and **intimidate** Plaintiff to inaction and is accomplished through threat of criminal prosecution or other legal proceeding **for failure to**

**meet a stated condition**, outside of the explicit language of the Second Amendment, making said statute applicable to the claimed **substantive** right that is protected against state invasion.  Therefore, **unconstitutionally,** circumnavigating the **"...shall not be infringed.."** barrier.  Thus, **Plaintiff** is effectively coerced to not actively engage the exercise of his enumerated, individual, constitutional right.  Such **"PRIOR RESTRAINT"** laws were absolutely rejected by the founding Fathers and compelled the colonies to revolution.  As far as **prior restraint** law is allowed **Near v. Minnesota, 283 U.S. 697 (1931)** left open the possibility of prior restraints for various exceptional purposes, such as national security, control of obscenity, and the like; and one exception is **Schenck v. United States, 249 U.S. 47 (1919)** upholding "censorship" in support of the Espionage Act of 1917.

Abuse of an enumerated right has always been addressed with "**subsequent punishment"** and **"prior restraint"** is addressed only in exceptional circumstances.  State has failed to identify with specificity exactly what is the exceptional, **factual, verifiable and substantial** circumstances that mandates such a open ended, undefined and without legal limitations or parameters, a policy of "exceptional case" and "case of urgency" as a requirement for a permit to carry a concealed or unconcealed firearm.

"The right to keep and bear arms, however, is not the only constitutional right that has controversial public safety implications.  All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category. (Hudson v. Michigan, 547 U.S. 586, 591 (2006); United States v. Leon, 468 U.S. 897, 907 (1984); Barker v. Wingo, 407 U.S. 514, 522 (1972); Miranda v. Arizona, 384 U.S. 436,517 (1966); Mapp, 367 U.S. at 659).

"…the U.S. Supreme Court and all federal circuits, including the Fourth Circuit have consistently made clear that constitutional violations constitute per se irreparable harm FOR PURPOSES OF PRELIMINARY INJUNCTIVE RELIEF."

"Most decisions invoking this doctrine cite the U.S. Supreme Court's 1976 decision in Elrod v. Burns, which observed that "(1) the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. "(2) Importing the "irreparable-if-only-for-a-minute" concept to cases involving other constitutional rights, federal circuits including the Fourth Circuit have made clear that a deprivation of constitutional rights is per se irreparable harm. (3) Furthermore, in the case of First Amendment violations, some federal courts including the Ninth Circuit have concluded – in words only a lawyer could love – that the harm is "particularly irreparable." (4) Put simply, once a Plaintiff has shown a likelihood of success on the merits of constitutional claims, no additional showing of irreparable harm is necessary.  As a matter of law, irreparable harm "automatically" exists.

"Bason, 303 F. 3d at 511 holding that when the harm alleged by the plaintiff is the deprivation of a constitutional right the likelihood of success on the merits is so "inseparably linked" to the proving of an actual harm that the court may proceed directly to consider the merits of the Plaintiff's action."

### B.
### FOURTEENTH AMENDMENT "DUE PROCESS"
### PROTECTION LEVEL OF REVIEW

It is a clear and indisputable fact that the Second Amendment is a **substantive right,** and it is acknowledged to be a **substantive guarantee (McDonald v. City of Chicago, 561 U.S.(2010), Slip Opinion pg 33).**  It is common knowledge that under the "due process" clause of the Fourteenth amendment there are two categories

of "due process", (a) **substantive due process** and (b) **procedural due process.**
The difference being:

(a) **Substantive Due Process (SDP):** If the governmental action infringes upon a **fundamental right,** the highest level of review – **strict scrutiny** – is used. **(Adarand Constructors v. Pena, 515 U.S. 200 (1995); Sugarman v. Dougall, 413 U.S. 634 (1973); Sherbert v. Verner, 374 U.S. 398 (1963).)** In order to pass strict scrutiny, the law or act must **be narrowly tailored** and **to further a compelling government interest**, beyond the general …"welfare and safety of the public."

SDP objective is to protect individuals against **majoritarian** policy enactments which exceed the limits of government authority – that is, courts find the majority's enactment is **not law,** and cannot be enforced as such, regardless of how fair the process of enforcement actually is.

(b) **Procedural Due Process (PDP):** Procedural due process (PDP) aims to protect individuals from the coercive power of government by ensuring that adjudication processes under valid laws are fair and impartial (e.g. the right to sufficient notice, the right to an impartial arbiter, the right to give testimony and admit relevant evidence at hearings, etc.).

The case at hand and the right claimed in the present instance is a **substantive right,** it is a **substantive guarantee,** it is **a fundamental right,** it is **an individual right** and under the **substantive due process rule** of the Fourteenth Amendment's **due process clause,** case is mandated to be judicially adjudicated under the rules of **"strict scrutiny",** as H.R.S. 134 and 134-9 invades the **"core purpose"** of the Second Amendment, which is stated to be **"self-defense"** and **"self-preservation",** and not whether or not you have an overabundance of cash on hand, or high value items are present, or employed as an armed security guard, or an appointed law enforcement officer.

"The Court also held that BILL of RIGHTS protections must "all … be enforced against the States under the Fourteenth Amendment according to THE SAME STANDARDS that protect those personal rights against federal encroachment" (McDonald v. City of Chicago, Syllabus, pg 3)(quoting Malloy v. Hogan, 378 U.S. 1, 10)

"If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws and would have no effect." (District of Columbia v. Heller,554 U.S.     (2008) Slip Opinion, Footnotes pgs 56-57.)

"This Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege". (Sugerman v. Dougall 413 U.S. 634, 644 (1973)(quoting Graham v. Richardson, 403 U.S. 365, 374 (1971).

Defendants legal counsel states, "…Plaintiff has especially failed to provide any evidence that the **public interest** would be furthered by the issuance of an injunction against the enforcement of the entire chapter 134, HRS.".  The truth of the matter is simplicity within itself. The United States Constitution was

conceptualized, proposed, ratified on the first Wednesday of March 1789, with

the accompanying **Bill of Rights** fully ratified in 1791.  The entire purpose for the

**United States Declaration of Independence; United States Constitution and the**

**enumerated Rights of the Bill of Rights,** operate on the premises of a single

purpose of the **"public interest…":** **"…OF THE PEOPLE, FOR THE PEOPLE AND BY**

**THE PEOPLE."**  Preserving, protecting and defending the free exercise of the

people's constitutionally protected **liberties and enumerated rights** …**IS IN THE**

**BEST FAVOR OF PUBLIC INTEREST.**  In **Heller**, the court went through great pains

to illuminate the path of understanding the interpretation of the Second

Amendment.  Justice Scalia, being known as an original constitutional textualist,

examined the **text** of the Second Amendment (words, purpose of the words,

meaning of the words and the spirit and intent of the words); **history** of the

Second Amendment from conceptualization, to debates, to ratification; and

**traditions** of the Second Amendment from its concept in 1791 and debates of the

39th Congress to present day.  The Supreme Court avoided the "intermediate

scrutiny" and "strict scrutiny" approach, as the majority Justices knew very well

that under both levels of scrutiny, studies and "modern" research and opinions

would be involved and they knew that such written studies could be

compromised, politically persuaded or prejudiced one way or the other to obtain

a desirable outcome. The text, history and tradition route of examination of the

Second Amendment insured absolute accuracy in interpretation and application.

A direct assault upon the **"core purpose"** of the Second amendment would invite

the level of **"strict scrutiny'.**

C.
**SOVEREIGN IMMUNITY**
**IS ABROGATED**

**FITZPATRICK v. BITZER, 427 U.S. 445, 96 S. CT. 2666, 49 L.ED. 2d 614, 1976 U.S.**

**Summary:** In 1972, Congress amended Title VII of the civil Rights Act of 1964 (the Act), authorizing private suits for monetary damages. In doing so, Congress cited its authority under Section 5 of the Fourteenth Amendment. **(Section 5 of the Fourteenth Amendment of the United States Constitution.)**

**Synopsis of Rule of Law:** Congress may authorize private suits against states under Section 5 of the Fourteenth Amendment that are impermissible in other contexts.

**Facts:** In 1972, congress amended the Act authorizing private suits for monetary damages, citing its authority under Section 5 of the fourteenth Amendment. Defendants argues that the Eleventh Amendment of the Constitution grant of sovereign immunity to the States prevents Congress from authorizing such suits.

**Issue and Federal Question:** Can congress abridge sovereign immunity by exercising its authority under Section 5 of the Fourteenth Amendment?

**Held: Yes. Affirmed.** The Supreme Court of the United States notes that Section 5 of the Fourteenth Amendment allows Congress to exercise authority that infringes on areas otherwise regulated to other entities under the Constitution.

Because of the Section 5 grant of this authority, the Supreme Court allows Congress to abrogate sovereign immunity under the section as well.

**U.S. CONSITUTION, AMENDMENT XIV, SECTION 5:  The Congress shall have the power to enforce by appropriate legislation, the provisions of this article.**

"Congress' power under Section 5, however, extends only to "enforcing" the provisions of the Fourteenth Amendment.  The Court has described this power as "remedial."  The design of the Amendment and the text of Section 5 are inconsistent with the suggestion that Congress has the power to decree the substance of the Fourteenth Amendment's restrictions on the States.  Legislation which alters the meaning of the Free Exercise Clause cannot be said to be enforcing the Clause.  **Congress does not enforce a constitutional right by changing what the right is.  It has been given the power "to enforce" not the power to determine what constitutes a constitutional violation.**  Were it not so, what Congress would be enforcing would no longer be in any meaningful sense, the "provisions of the Fourteenth Amendment." **(City of Boerne v. Flores, 521 U.S. 507 (1997).**

"However, Congress may abrogate sovereign immunity **when the suit is to enforce a statute protecting Fourteenth Amendment rights:** "We have held also that in adopting the Fourteenth Amendment, the people required the States to surrender a portion of the sovereignty that had been preserved.. . **Congress may authorize private suits against nonconsenting States pursuant to its Section 5**

**enforcement power…** When Congress enacts appropriate legislation to enforce this Amendment (see **City of Boerne v. Flores, 521 U.S. 307) federal interests are paramount.**"

**Congressional Withdrawal of Immunity:** The Constitution grants to Congress power to legislate in ways that affect the States. At least in some instances when Congress does so, it may subject the States themselves to suit at the initiation of individuals to implement the legislation. The clearest example arises from the **Reconstruction Amendments,** which are direct restrictions upon state powers and which expressly provide for congressional implementing legislation. Thus **the Eleventh Amendment** and **the principle of state sovereignty which it embodies…are necessarily limited, by the enforcement provisions of Section 5 of the Fourteenth Amendment.**

"We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "**interest-balancing**" approach. **The very enumeration of the right takes out of the hands of government – EVEN THE THIRD BRANCH OF GOVERNMENT-the power to decide on a case-by-case basis whether the right is *really worth* insisting upon. A Constitutional guarantee subject to future JUDGES assessments of its usefulness is no constitutional guarantee at all.** Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not **future legislatures** or **yes, even FUTURE JUDGES think the scope too broad.**" **(Washington, D.C. v. Heller, 554 U.S.       (2008) Slip Op. pg 62,63)**

"Finally, JUSTICE BRYER is **incorrect** that incorporation will require Judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise. As we have noted, while his opinion in *Heller* recommended a "**interest-balancing**" test, **THE COURT SPECIFICALLY REJECTED THAT SUGGESTION. (Heller supra 38-39)** "The very enumeration of the right takes out of the hands of government-even

the Third Branch of Government-the power to decide on a case-by-case basis whether the right is really worth insisting upon." **(Heller, supra, at       (Slip Op. at 62,63)**

**"We therefore hold that the <u>DUE PROCESS CLAUSE</u> of the Fourteenth Amendment <u>incorporates the SECOND AMENDMENT RIGHT</u> recognized in _Heller._" (McDonald v. City of Chicago, 561 U.S.      (2010), Slip Op. pg. 44)**

The Court has now concluded that the Second Amendment is fully incorporated into the protection of the Fourteenth Amendment, and since it is "implicit in our concept of ordered liberty", it is further identified as fundamental to our system of government and was ratified as the "Bill of Rights" pursuant Article I and Article V of the U.S. Constitution, and therefore the Second Amendment is further protected by **U.S. Constitution, Article VI, Cls. 2,** the Supremacy Clause of the Constitution, where "...**the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any State to the Contrary notwithstanding."** Without a doubt, State Sovereign Immunity is abrogated. The Supremacy clause rejects sovereign immunity. As realized in **Masciandaro**, **U.S. Constitution, Article IV, Sec. 3, Cls.2** trumps Second Amendment rights, on federal land, in a national park, identified as a "sensitive place", hence **"intermediate scrutiny."** Constitution's reign is Supreme. **"State statutory immunity provisions <u>do not apply</u> to federal civil rights actions."(Morrison v. Jones, 607 F.3d 1269(9th Cir.**

1979. 445 U.S. 962, 64 L.Ed 2d 237, 100 S.Ct. 1648(1980).  "To construe a federal

statute to allow a state immunity defense "to have controlling effect would

transmute a basic guarantee into an illusory promise", which the supremacy

clause does not allow."  (Martines v. California, 444 U.S. 277, 284 n.8,62 L.Ed.

481, 100 S.Ct. 553(1980)

"In addition, we note that at oral argument before this court, the county took

the position that it was not bound by the fourteenth amendment equal

protection clause, apparently on the theory that the Second Amendment

somehow supersedes it whenever, the state's regulation of firearms is at issue.

This wholly unsubstantiated position, in itself seems to be evidence of the

county's official policy of indifference to the fourteenth amendment."  (Guillory

v. County of Orange, 731 F.2d 1379(9th Cir. 04/25/1984)

**D.**
**AREAS OF DISPUTE and**
**OF COMPLAINT**

1. **Irreparable Injury** by denying, without probable legal cause, Plaintiff's exercise

and enjoyment of his fundamental, individual, enumerated, constitutionally

protected Second  Amendment right to the United States constitution. Through

the **Doctrine of Prior Restraint** and under the unconstitutional authority of H.R.S.

134 and 134-9, by not issuing a permit to carry a firearm, and or an operable

firearm with live ammunition, concealed or unconcealed, "without sufficient

cause" or "an exceptional case…" is a blatant violation and denial of U.S.

Constitution Second Amendment, Fourteenth Amendment and Article VI, Cls. 2.

Since the Second Amendment is held to the same standards as First Amendment

rights, the following cites are applicable:

**"…More fundamentally, however, any contribution of patronage dismissals to the democratic process does not suffice to override their severe encroachment on First Amendment freedoms. We hold, therefore, that the practice of patronage dismissals is unconstitutional under the First and Fourteenth Amendments, and that respondents thus stated a valid claim for relief." (Elrod v. Burns, 427 U.S. 347 (1976)**

**"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. (New York Times, Co., v. United States 403 U.S. 713 (1971).**

**"It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." (Sherbert v. Vemer, 374 U.S. 398, 404 (1963).**

**"Since such injury was both threatened and occurring at the time of respondents' motion and since respondents sufficiently demonstrated a probability of success on the merits, the court of appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief. (Bantam Books, Inc. v. Sullivan, 372 U.S. 58,67 (1963)".**

Therefore, since Defendants collectively enforce H.R.S. 134 and 134-9 the

**irreparable injury** claimed was both **threatened** at time of Plaintiff's filing of

complaint **and continues to occur** in the present instance, preliminary injunction

relief is justified.

2. Violation of the Fourteenth Amendment's "Equal Protection" clause, by treating the Second Amendment to different standards than the First Amendment and applying those standards on a selective basis. The State legislature has pre-selected which portions of the Second Amendment to recognize and allow and which section to claim as their area of domain to control. **It is obvious that the untruth is hidden within Article 17, Hawaii State Constitution and contradicted by enforcement of H.R.S. 134 and 134-9.** As is evident with Defendants admission, that Plaintiff is **allowed** to retain a firearm within the home and is not restricted from carrying within the home. What if Plaintiff was indigent and homeless? Would his Second Amendment right be disallowed? How is it, that Plaintiff is **allowed** that right which pre-existed the U.S. Constitution and is already in Plaintiff's possession? The State, the Governor, the State Attorney General, the Mayor of the County of Hawaii and the Hawaii County Chief of Police would dare not openly and publicly proclaim such a ludicrous interpretation of the Second Amendment.

3. Violating the Fourteenth Amendment's "Due Process" clause, through the enforcement of H.R.S. 134 and 134-9 and mandating **"an exceptional case"** standard for concealed firearm carry or **"sufficient sense of urgency"** standard for unconcealed firearm carry. Naturally the statute exceeds the natural right of

nature for **"self-defense"** or **"self-preservation"**.  Plainly, self-defense and self-

preservation is an independent, individual decision.  The "exceptional case" and

"sense or need of urgency" relinquishes personal liberty to decide on an issue to

another person, who assumes no liability, to obtain permission to exercise a right

that Plaintiff already possess.

4.  Violating Plaintiff's Second Amendment right by attempting to limit the Second

Amendment right to within the home.

"In _**Nunn v. State, 1 Ga. 243 (1846)**_, the Georgia Supreme Court construed the Second
Amendment as protecting the "natural right of Self-defense" and therefore struck down a
ban on carrying pistols openly.  Its opinion perfectly captured the way in which the operative
clause of the Second Amendment furthers the purpose announced in the prefatory clause, in
continuity with the English right.  "...Our opinion is, that any law, State or Federal, is
repugnant to the Constitution, and void, which contravenes this right..." (District of Columbia
v. Heller, slip op. pg. 39, 40.

"Likewise, in State v. Chandler, 5 La. Ann. 489, 490 (1850), the Louisiana Supreme Court held
that citizens had a right to carry arms openly:  This is the right guaranteed by the constitution
of the United States, and which is calculated to incited men to manly and noble defence of
themselves, if necessary, and of their country, without any tendency to secret advantages
and unmanly assassinations."

"State v. Reid, 1 Ala. 612, 616-617 (1840) ("A statute which, under the pretence of regulating,
amounts to a destruction of the right, or which requires arms to be so borne as to render
them wholly useless for the purpose of defence, would be clearly unconstitutional")(Heller,
slip op., pg. 57)

First off in 1846, the newly developed revolver pistol that replaced the single

shot, black powder pistol, was the six shot "cap and ball" revolving cylinder pistol,

invented by Samuel Colt in 1836.  Since both types of pistols require time and

dexterity to reload, gentlemen often carried two.  One pistol on their person and one pistol on a saddle in a forward saddle holster.  This was to facilitate an armed response maintaining a continuity of fire, with a minimum of time spent in reloading in case of missed shots or upon confronting multiple opposition in an armed conflict, like band of outlaws or band of savages.  It challenges the imagination to envision **"within the home…"** involving "secret advantages"; unmanly assassinations, or a horse with a "horse pistol" or "saddle pistol".

5.  Unanswered Federal Question, 42 U.S.C. 1893:  **"We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach.(Heller, slip op., pg 62)** Why is it asked of Plaintiff to identify benefits towards the furtherance of **"public interest?"** Is the "public interest" a pre-requisite among the other **enumerated rights** protected under the Fourteenth Amendment's Equal Protection clause and Due Process clause, subject to prior approval incident to being exercised?

6.  **"…The vey enumeration of the right takes out of the hands of government – even the Third Branch of Government – the power to decide on a case-by-case basis whether the right is *really worth insisting upon.*  A Constitutional guarantee subject to future judges' assessments of its usefulness is no**

**constitutional guarantee at all.** Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad."(Heller, slip op., pg. 62, 63).

The right's existence is all that is necessary.

(a) **Unanswered Federal Question, 42 U.S.C. 1983:** How is the Hawaii Federal District Court going to enforce H.R.S. 134 and H.R.S. 134-9's **"...exceptional case" standard** for concealed firearm carry and **"...the urgency or the need has been sufficiently indicated..." standard** for unconcealed carry, when the court and the Judge no longer possess the judicial discretionary authority to decide on a **"case-by-case" basis"**. Wouldn't the enforcement of **"prior restraint"** law, H.R.S. 134-9, be unenforceable, through the application of "due process..." of the Fourteenth Amendment, without a court or Judge in possession of judicial discretionary authority over said subject matter? The District Court retains original jurisdiction involving SUBSEQUENT PUNISHMENT; however, it has lost the discretion to review and adjudicate the Second Amendment's application and use on a **"case-by-case basis."** **"...The very enumeration of the right TAKES OUT OF THE HANDS**

**OF GOVERNMENT …the power to decide on a case-by-case basis whether the right is really worth insisting upon… ."**

(b) **Unanswered Federal Question, 42 U.S.C. 1983:** Can the Hawaii State legislature pass an unconstitutional and unenforceable law, H.R.S. 134-9, to invade a constitutionally protected enumerated right, and demand that the Hawaii Federal District Court Judges' assess on a **"case-by-case"** basis on whether or not Plaintiff has the right to insist upon exercising? Much less, deny Plaintiff Article III standing? Would this action, in this instance be contrary to Fourteenth Amendment "due process" clause and Section 5? Would this not also be in contravention of U.S. Constitution, Article VI, Clause 2?

(c) **Unanswered Federal Question, 42 U.S.C. 1983:** The Second Amendment is a part of the enumerated Bill of Rights and **"The very enumeration of the right takes out of the hands of government – even the Third Branch of Government…"(Heller, slip op. pg 62-63),** with specificity and exactness, how does the Hawaii Federal Court possess authority to supersede **U.S. Constitution, Article VI, Cls. 2's** Supremacy clause of **"…the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding."?**

(d) **Unanswered Federal Question, 42 U.S.C. 1983:** In 2008, the Hawaii Federal

District Court and the Hawaii State and County of Hawaii erroneously claimed the

Second Amendment to be the **"collective right of the State…",** at which time

Plaintiff was denied a permit for failing to provide an **"exceptional case"** or

**"sense of urgency"** to justify a firearm carry permit. Plaintiff was also denied

Article III legal standing. Now, after **Washington, D.C. v. Heller(2008)** and

**McDonald v. City of Chicago(2010)** the Second Amendment is an indisputable fact

an **"individual right",** why has the Hawaii Federal District court not compel the

State of Hawaii and the County of Hawaii to provide sufficient documentary

evidence in support of **"a clear and present danger"** or **"imminent impairment or**

**threat"**, to justify **"prior restraint"?** Before **"prior restraint can be imposed,**

there must be "an imminent, not merely a likely, threat to the administration of

Justice. The danger must not be remote or even probable; it must be real and

immediately "imperil."

III

CONCLUSION

"If this extreme position could be deemed to be well taken, it is manifest that the fiat of a
state Governor, and not the Constitution of the United States, would be the supreme law of
the land; that the restrictions of the Federal Constitution upon the exercise of state power
would be but impotent phrases, the futility of which the State may at any time disclose by the

simple process of transferring powers of legislation to the Governor to be exercised by him, beyond control, upon his assertion of necessity.  Under our system of government, such a conclusion …is obviously untenable.  There is not such avenue of escape from the paramount authority of the Federal Constitution.  When there is a substantial showing that the exertion of state power has overridden private rights secured by that Constitution, the subject is necessarily one for judicial inquiry in an appropriate proceeding directed against the individuals charged with the transgression."**(Sterling v. Constantin, 287 U.S. at 397-398 (1932)**

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." **(Conley v. Gibson, 355 U.S. 41, 45-46 (1957)**

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test.  Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorable to the pleader." **(Scheuer v. Rhodes, 416 U.S. 232(1974)**

"The very enumeration of the right takes out of the hands of government – even the Third Branch of Government – the power to decide on a case-by-case basis whether the right is really worth insisting upon.  A Constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.  Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." **(Heller, Slip Op. pg. 62-63)**

Challenges to overcome without a hearing:

(1)  If the Supreme Law of the Land and the majority opinion of the Supreme

Court acknowledges that the very enumeration of the right itself takes out of the

hands of government,  "**…the power to decide on a case-by-case basis whether**

**the right is really worth insisting upon.**"  Then in reality, H.R.S. 134-9's

"exceptional case" requirement and "sense of urgency" requirement becomes repugnant to the U.S. Constitution, the Second Amendment. For all intentional purposes declared null and void. The offending statute would require that Plaintiff provide the purpose, beyond "self-defense", to be evaluated if the right is worth insisting upon.

(2)  If the Supreme Law of the Land and the majority opinion of the Supreme Court acknowledges that **Courts' and Judges' assessments of the Second Amendment right's usefulness is no constitutional guarantee at all** and has removed "...**the power to decide on a case-by-case basis whether the right is really worth insisting upon. ..**".  Under authority of H.R.S. 134-9, since the government, the courts and the Judges do not have **"...the power to decide on a case-by-case basis whether the right is really worth insisting upon.**  How does the Hawaii County Chief of Police Harry Kubojiri apply and enforce H.R.S. 134-9?

The unknown consequences this case presents, as a threat to liberty demands that it be judicially reviewed and judicially resolved.

Under the circumstances, and understanding the eagerness of this court to please the Brady Campaign to Prevent Gun Violence, request Defendants, State of

Hawaii, Neil Abercrombie, David M. Louie, County of Hawaii, William P. Kenoi and

Harry S. Kubojiri and their MOTIONS TO DISMISS COMPLAINT ...BE DENIED.

Respectfully Submitted,

GEORGE K. YOUNG, JR.
Plaintiff, Pro Se
1083 Apono Place
Hilo, Hawaii 96720
Tel: (808) 895-1735