IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GEORGE K. YOUNG, JR.,     ) | |
|     ) | |
|     Plaintiff,     ) | |
|     ) | |
|     vs.     ) | Civ. No. 12-00336 HG BMK |

GEORGE K. YOUNG, JR.,

    Plaintiff,

    vs.

    Civ. No. 12-00336 HG BMK

STATE OF HAWAII and NEIL
ABERCROMBIE in his capacity
as Governor of the State of
Hawaii; DAVID M. LOUIE in his
capacity as State Attorney
General; COUNTY OF HAWAII, as
a sub-agency of the State of
Hawaii and WILLIAM P. KENOI
in his capacity as Mayor of
the County of Hawaii; and the
HILO COUNTY POLICE
DEPARTMENT, as a sub-agency
of the County of Hawaii and
HARRY S. KUBOJIRI in his
capacity as Chief of Police;
JOHN DOES 1-25; JANE DOES 1-
25; CORPORATIONS 1-5, and DOE
ENTITIES 1-5,

    Defendants.

**ORDER GRANTING COUNTY OF HAWAII OFFICIAL DEFENDANTS' MOTION TO DISMISS (DOC. 23) AND STATE OF HAWAII DEFENDANTS' MOTION TO DISMISS (DOC. 25)**

Plaintiff George K. Young, Jr. sues County and State

Officials alleging violations of 42 U.S.C. §§ 1983, 1985 and 1986

in the denial of his application for a license to carry a weapon

in public, pursuant to Hawaii Revised Statute § 134-9. Plaintiff

asserts that the enforcement of Hawaii Revised Statutes §§ 134-6

and 134-9 violate the rights guaranteed him by Article I of the

United States Constitution, and by the Second, Ninth, and

1

Fourteenth Amendments.  To remedy the alleged violations, Plaintiff seeks damages, an order enjoining the enforcement of Chapter 134 of Hawaii Revised Statutes, and a three-year permit for carrying a weapon in public.

Defendants move to dismiss the Complaint.

Plaintiff's claims against the State and State Officials are barred by the doctrine of sovereign immunity.  Plaintiff's claims against the County and County Officials fail because Plaintiff has not alleged a Constitutional violation.

The Court **GRANTS** Defendants' Motions to Dismiss Plaintiff's Complaint.

## PROCEDURAL HISTORY

On June 12, 2012, Plaintiff filed a Complaint. (Doc. 1.)

On August 10, 2012, the County Official Defendants filed a Motion to Dismiss Plaintiff's Complaint. (Doc. 23.) The County of Hawaii and Hilo County Police Department were never served.

On August 16, 2012, the State of Hawaii Defendants filed a Motion to Dismiss Plaintiff's Complaint. (Doc. 25.)

On September 6, 2012, Plaintiff filed an Opposition to the Motions to Dismiss. (Doc. 29.)

On October 1, 2012, the County of Hawaii Officials Defendants filed a Reply. (Doc. 33.)

On October 1, 2012, the State of Hawaii Defendants filed a Reply.  (Doc. 34.)

The Court elected to decide the matter without a hearing pursuant to Local Rule 7.2(d).

## BACKGROUND

**A.    Factual Allegations Set Forth In The Complaint**

The Complaint alleges that Defendants violated Plaintiff George K. Young, Jr.'s rights under the United States Constitution by denying his applications for a license to carry a firearm, pursuant to Hawaii Revised Statute ("HRS") § 134-9. Plaintiff also alleges that HRS § 134-6, which was repealed in 2006, is unconstitutional.

**B.    Legal Allegations Set Forth In The Complaint**

The Complaint sets out claims asserting that HRS §§ 134-6 and 134-9 ("Hawaii's Firearm Carrying Laws") violate Plaintiff's rights guaranteed by Article I of the United States Constitution, and by the Second, Ninth, and Fourteenth Amendments.

Plaintiff's primary contention involves HRS § 134-9, Hawaii's License to Carry Law. The law conditions the ability to carry a pistol or revolver and ammunition in public. Haw. Rev. Stat. § 134-9.

The other challenged provision, HRS § 134-6, was repealed in 2006 and replaced by HRS §§ 134-21 through 134-27.  See Act 66, § 6, of the 2006 Haw. Sess. Laws; State v. Ancheta, 220 P.3d 1052 (Haw.Ct.App. 2009)(noting the similarity between HRS § 134-6 and the replacement statutes). The statutes at issue regulate the transportation of weapons outside of a person's private property.

3

People who hold a License to Carry, pursuant to HRS § 134-9, are exempt from the provisions.

Counts One through Five allege the following claims against all Defendants:

**COUNT ONE** - "(42 U.S.C. § 1983, 1985, 1986) Violation of U.S. Constitution, Article I, Section 10, Cls. 1: 'No State shall . . . pass . . . any Bill of Attainder. . .'"

**COUNT TWO** - "(42 U.S.C. 1983, 1985, 1986) Violation of U.S. Constitution, Article I, Section 10: 'No State shall . . . pass any . . . law impairing the Obligations of Contract . . .'"

**COUNT THREE** - "Violation of U.S. Constitution, Amendment II"

**COUNT FOUR** - "Violation of U.S. Constitution, Amendment IX"

**COUNT FIVE** - "Violation of U.S. Constitution, Amendment XIV '. . .No State shall make or enforce any law which shall abridge the privileges and immunities of <u>citizens of the United States</u> . . . '"

 The Complaint also alleges a cause of action under the Due Process Clause of the Fourteenth Amendment. (Complaint at pg. 6.) Plaintiff requests a permanent injunction preventing the enforcement of HRS Chapter 134, damages, and punitive damages. He also requests that he be immediately issued a permit to carry an unconcealed or concealed weapon for three years.

**C.  Plaintiff's Previous Cases**

Plaintiff has previously filed two similar Complaints in the Federal District of Hawaii. In the first case, <u>Young v. Hawaii</u>, 548 F.Supp.2d 1151 (D. Haw. 2008)("<u>Young I</u>"), Plaintiff sued State and County Officials based on the denial of his application to carry a weapon in public. The factual and legal basis are

nearly identical to the case before the Court. On March 12, 2008, the District Court dismissed the Complaint with prejudice. The Court held that sovereign immunity barred suit against the State and State officials. As to the County, the Court held that Plaintiff lacked standing to sue for a Second Amendment violation, reflecting the state of the law at the time of the decision.

In the second case, <u>Young v Hawaii</u>, No. 08-00540, 73 Fed.R. Serv.3d 1635 (D. Haw. Jul. 2, 2009)("<u>Young II</u>"), Plaintiff alleged the same violations as in <u>Young I</u> after he was again denied a permit after reapplying. Three differences existed between <u>Young I</u> and <u>Young II</u>. First, in <u>Young II</u>, Plaintiff brought causes of action against County Officials in their individual capacities, as well as official capacities. Second, after <u>Young I</u>, the Supreme Court of the United States decided <u>Heller v. District of Columbia</u>, 540 U.S. 570 (2008), holding that the Second Amendment of the United States Constitution conferred a limited right to individuals to keep and bear arms. Third, at the time of the District Court's Order, the Ninth Circuit Court of Appeals held that the Second Amendment applied to the states, not just to the federal government. <u>Nordyke v. King</u>, 563 F.3d 439 (9th Cir. 2009), *vacated*, 611.F.3d 1015 (9th Cir. 2010)(remanding back to panel after <u>McDonald v. City of Chicago</u>), *rehearing en banc*, 681 F.3d 1041 (9th Cir. 2012). While <u>Heller</u> and <u>King</u> did confer standing on Plaintiff to challenge an alleged infringement

5

of his Second Amendment right, Plaintiff was estopped from bringing the claims a second time due to the preclusive effect of Young I.

## STANDARD OF REVIEW

Defendants move to dismiss the alleged causes of action in Counts I through V, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court may dismiss a complaint as a matter of law pursuant to Rule 12(b)(6) where it fails "to state a claim upon which relief can be granted." Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all allegations of material fact to be true and draw all reasonable inferences in favor of the non-moving party. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. Id. at 699. The Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In Bell Atl. Corp. v. Twombly, the United States Supreme Court addressed the pleading standards under the Federal Rules of Civil Procedure in the anti-trust context. 550 U.S. 544 (2007). The Supreme Court stated that Rule 8 of the Federal Rules of Civil

Procedure "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

Most recently, in Ashcroft v. Iqbal, the Supreme Court clarified that the principles announced in Twombly are applicable in all civil cases. 556 U.S. 662 (2009). The Court stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Id. at 678 (citing Twombly, 550 U.S. at 555). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. (quoting Twombly, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. (quoting Twombly, 550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

7

defend itself effectively" and must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." AE ex rel Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012)(internal quotations omitted).

A plaintiff should be given leave to amend the complaint, unless it could not be saved by any amendment. Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009)(internal quotations omitted). A court may deny leave to amend a complaint if a plaintiff could not possibly cure the deficiency by alleging "other facts consistent with the challenged pleading." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010), cert. denied, 132 S.Ct. 95 (Oct. 03 2011). A court may also deny leave to amend if it would be futile, such as when a claim will inevitably be defeated on summary judgment. Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th Cir. 1987).

## ANALYSIS

Plaintiff's allegations arise from being denied a permit to carry a firearm, pursuant to HRS § 134-9. County Officials and all State Defendants move to dismiss Plaintiff's causes of action. State Defendants claim that Plaintiff's suit against them is barred by the Eleventh Amendment to the United States Constitution. County Official Defendants claim that Plaintiff lacks standing and that the Complaint does not allege a United

States Constitutional violation. The County of Hawaii and Hilo County Police Department were not served and have not entered an appearance in the action.

**I.   PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS AGAINST THE STATE OF HAWAII DEFENDANTS ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY**

Plaintiff sues the State of Hawaii, Neil Abercrombie in his official capacity as the Governor of Hawaii, and David M. Louie in his official capacity as the Attorney General of Hawaii.

The doctrine of sovereign immunity applies when civil rights claims are brought against the State of Hawaii.  The State of Hawaii has not waived its Eleventh Amendment immunity, and Congress did not abrogate the States' sovereign immunity when enacting 42 U.S.C. § 1983.  Plaintiff's claims against the State of Hawaii and Defendants Abercrombie and Louie under 42 U.S.C. §§ 1983, 1985, and 1986 for violation of the prohibition on Bills of Attainders in the United States Constitution, the Contract Clause, and the Second, Ninth, and Fourteenth Amendments are barred by Eleventh Amendment Immunity.

**A.   The Doctrine of Sovereign Immunity**

The doctrine of sovereign immunity is set out in the Eleventh Amendment of the United States Constitution:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The United States Supreme Court has held that Eleventh Amendment immunity extends to suits against a State or its agencies by citizens of that same State. Hans v. Louisiana, 134 U.S. 1 (1890).

Sovereign immunity generally bars the federal courts from entertaining suits brought against a State or its agencies, unless a State waives immunity or Congress abrogates immunity pursuant to § 5 of the Fourteenth Amendment to the United States Constitution. L.A. Cnty. Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992); Wilbur v. Locke, 423 F.3d 1101, 1111 (9th Cir. 2005), cert. denied 546 U.S. 1173 (2006).

Sovereign immunity also bars federal statutory and constitutional claims for money damages against state officials sued in their official capacities, absent a waiver or abrogation of immunity. See Dittman v. State of California, 191 F.3d 1020, 1025-26 (9th Cir. 1999). State officials may be subject to suit for prospective injunctive relief under the doctrine established in Ex parte Young, 209 U.S. 123 (1908).

### B. Hawaii Has Not Waived Sovereign Immunity

In order to waive sovereign immunity, a State's consent must be expressed unequivocally. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). The State of Hawaii has not waived its sovereign immunity from suit in federal court for civil rights actions. See Linville v. State of Hawaii, 874 F.Supp. 1095,

1103 (D.Haw. 1994). Here, the State of Hawaii Defendants have invoked the doctrine of sovereign immunity.

### C.   42 U.S.C. §§ 1983, 1985, and 1986 Do Not Abrogate Sovereign Immunity

Congress has the power to abrogate the sovereign immunity of the States, pursuant to Section 5 of Amendment XIV of the United States Constitution: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." Congress must do so by enacting a statute which "explicitly and by clear language indicate[s] on its face an intent to sweep away the immunity of the States." Quern v. Jordon, 440 U.S. 332, 332 (1979); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000)(Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute).

Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983. Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Congress did not abrogate the States' Eleventh Amendment immunity when enacting 42 U.S.C. § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, at 65-66 (1989). States and State officials acting in their official capacities, except where

11

sued for prospective injunctive relief, are not considered "persons" for purposes of Section 1983 liability. Id. at 71; Sherez v. Hawaii Dep't of Educ., 396 F.Supp.2d 1138, 1142-43 (D. Haw. 2005) (dismissing claims against the Department of Education and against State official in their official capacity on Eleventh Amendment immunity grounds). The same rule applies to Plaintiff's other Eleventh Amendment claims, as Congress did not abrogate the States' Eleventh Amendment immunity when enacting 42 U.S.C. §§ 1985 and 1986.

The State of Hawaii has not waived sovereign immunity, and Congress, in passing 42 U.S.C. §§ 1983, 1985, and 1986, did not abrogate Eleventh Amendment immunity of state governments. The Court lacks jurisdiction over all of Plaintiff's federal constitutional claims against the State of Hawaii, and over Plaintiff's claims for money damages against the Governor of Hawaii and the Attorney General of Hawaii. The claims are **DISMISSED WITH PREJUDICE.**

### D. Plaintiff's Claims Against The Governor Of Hawaii and The Attorney General Of Hawaii In Their Official Capacities

Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986 for prospective injunctive relief against the Governor of Hawaii and the State Attorney General, in their official capacities, are not barred by sovereign immunity. Under the doctrine established in Ex parte Young, 209 U.S. 123 (1908), Eleventh Amendment immunity does not apply to a suit "for prospective declaratory and injunctive

12

relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." Wilbur, 423 F.3d at 1111 (quoting Aqua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1045 (9th Cir. 2000)). Such actions are not considered actions against the State. Will, 491 U.S. at 71 n.10.

The United States Supreme Court ruled in 1908, in Ex Parte Young that a claim against a state official is appropriate when the complaint (1) alleges an ongoing violation of federal law and (2) seeks relief properly characterized as prospective. Verizon Md., Inc. v. Public Serv. Comm'n, 535 U.S. 635, 645 (2002); ACS of Fairbanks, Inc. v. GCI Commc'n Corp., 321 F.3d 1215, 1216-17 (9th Cir. 2003). The holding by the United States Supreme Court in Ex Parte Young does not allow claims for retroactive relief. Eleventh Amendment immunity bars a federal court from awarding compensation for past injuries from state treasury funds. Edelman v. Jordan, 415 U.S. 651 (1974). The suit must be brought against a state officer with a sufficient connection to a law's enforcement. Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1342 (Fed. Cir. 2006). The named state official must actually violate federal law. Broad generalizations, such as a governor or state attorney general's obligation to enforce all state laws, do not have a sufficient nexus for an Ex Parte Young claim.

While Plaintiff requests an injunction against the enforcement of HRS Chapter 134, he is actually challenging the constitutional validity of Hawaii's Firearm Carrying Laws, HRS §§ 134-9 and 134-23

13

through 134-27. Plaintiff's primary contention involves the licensing scheme in HRS § 134-9. Plaintiff argues that because the Second Amendment guarantees the fundamental individual right to bear arms, HRS Chapter 134's restrictions are unconstitutional. The analysis of Hawaii's Firearm Carrying Laws *infra* finds them to be constitutional.

Additionally, Plaintiff's claims against Governor Abercrombie and Attorney General Louie are based on their general oversight of Hawaii laws. These allegations are insufficient to establish a nexus between the named State officials and the alleged violation of Plaintiff's civil rights. See Pennington, 457 F.3d at 1342-43; L.A. Cnty. Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992). Governor Abercrombie and Attorney General Louie do not have a sufficient nexus to the enforcement of Hawaii's Firearm Carrying Laws. See Young I, 548 F.Supp.2d at 1164.

Plaintiff does not sufficiently allege claims against the Governor of Hawaii and the State Attorney General of Hawaii in their official capacities. The claims against Defendants Abercrombie and Louie are **DISMISSED WITH PREJUDICE.**

## II. PLAINTIFF'S FEDERAL CONSTITUTIONAL CLAIMS AGAINST THE COUNTY OF HAWAII, THE HILO COUNTY POLICE DEPARTMENT, AND WILLIAM P. KENOI AND HARRY S. KUBOJIRI IN THEIR OFFICIAL CAPACITIES

The Complaint names the County of Hawaii, the Hilo County Police Department, Mayor William P. Kenoi, and Police Chief Harry S. Kibojiri as Defendants. Mayor Kenoi and Police Chief Kibojiri are sued only in their official capacities. Plaintiff has not

served the County of Hawaii or the Hilo County Police Department. Mayor Kenoi and Police Chief Kibojiri move to dismiss all claims.

**A. Plaintiff's Claims Against Defendants Mayor Kenoi and Police Chief Kubojiri Are Analyzed in the Same Manner as If They Were Directly Brought Against the County of Hawaii**

A Section 1983 claim against a county official in his or her official capacity is the same as bringing a direct action against the government. See Wong v. City & Cnty. of Honolulu, 333 F.Supp.2d 942, 947 (D. Haw. 2004)(citing Kentucky v. Graham, 473 U.S. 159, 166-67 n. 14 (1985)).

The claims asserted against Defendants Mayor Kenoi and Police Chief Kubojiri, in their official capacities, are analyzed as a municipal liability claim against the County of Hawaii.

**B. Municipal Liability Under § 1983**

Plaintiff's municipal liability claims against Defendants Mayor Kenoi and Police Chief Kibojiri ("County Official Defendants"), in their official capacities, are based on 42 U.S.C. § 1983. Section 1983 provides a mechanism for plaintiffs to challenge allegedly unconstitutional actions by governmental officials. Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004). The statute does not create any substantive rights. Id. To state a cause of action under § 1983, a "plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law." Kirtley v. Rianey, 326 F.3d 1088,

15

1092 (9th Cir. 2003); Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1988).

A municipality may be liable in a Section 1983 action under two theories. In the first instance, a municipality is liable in a Section 1983 action for injuries caused by a municipality's unconstitutional policy or custom. See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003), cert. denied, 540 U.S. 1141 (2004). The official policy or custom requirement limits municipal liability to actions in which the municipality is actually responsible for the unconstitutional act. Gausvik v. Perez, 239 F.Supp.2d 1047, 1053 (E.D. Wash. 2002) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986)). Even if the unconstitutional practice is not authorized by written law, the municipality may still be liable when the practices are "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691.

The second action for which a municipality may be held liable under Section 1983 is for failure to train, supervise, or discipline its employees. City of Canton v. Harris, 489 U.S. 378, 387 (1989).

### C.  Plaintiff Fails To State A Federal Constitutional Claim Against the County Official Defendants Under Section 1983

It is not disputed that County Official Defendants acted under color of State law. Plaintiff's claims against the County Official Defendants are that the County's policy of enforcing Hawaii's

16

Firearm Carrying Laws results in a deprivation of Plaintiff's civil rights under Article I of the United States Constitution, and the Second, Ninth, and Fourteenth Amendments to the United States Constitution. Plaintiff's claims primarily concern the licensing scheme for pistols and revolvers in HRS § 134-9.

The statute provides:

(a) In an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property, the chief of police of the appropriate county may grant a license to an applicant who is a citizen of the United States of the age of twenty-one years or more or to a duly accredited official representative of a foreign nation of the age of twenty-one years or more to carry a pistol or revolver and ammunition therefor concealed on the person within the county where the license is granted. Where the urgency or the need has been sufficiently indicated, the respective chief of police may grant to an applicant of good moral character who is a citizen of the United States of the age of twenty-one years or more, is engaged in the protection of life and property, and is not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry a pistol or revolver and ammunition therefor unconcealed on the person within the county where the license is granted. The chief of police of the appropriate county, or the chief's designated representative, shall perform an inquiry on an applicant by using the National Instant Criminal Background Check System, to include a check of the Immigration and Customs Enforcement databases where the applicant is not a citizen of the United States, before any determination to grant a license is made. Unless renewed, the license shall expire one year from the date of issue.

(b) The chief of police of each county shall adopt procedures to require that any person granted a license to carry a concealed weapon on the person shall:

(1) Be qualified to use the firearm in a safe manner;

(2) Appear to be a suitable person to be so licensed;

(3) Not be prohibited under section 134-7 from the

17

ownership or possession of a firearm; and

(4) Not have been adjudged insane or not appear to be mentally deranged.

(c) No person shall carry concealed or unconcealed on the person a pistol or revolver without being licensed to do so under this section or in compliance with sections 134-5(c) or 134-25.

(d) A fee of $10 shall be charged for each license and shall be deposited in the treasury of the county in which the license is granted.

Haw. Rev. Stat. § 134-9.

Hawaii's Places to Keep Statutes require firearms to "be confined to the possessor's place of business, residence or sojourn," but allowing lawful transport between those places and repair shops, target ranges, licensed dealerships, firearms shows, firearm training, and police stations. See Haw. Rev. Stat. §§ 134-23, 134-24; 134-25; 134-27. Section 134-26 prohibits carrying or possessing a loaded firearm on a public highway. Holders of a valid license to carry, pursuant to HRS § 134-9, are exempt from the provisions.

County Official Defendants seek dismissal of Plaintiff's Section 1983 claims on the grounds that Plaintiff has failed to allege a deprivation of a constitutional right and lacks standing.

### 1. Plaintiff Has Standing To Raise a Second Amendment Challenge to HRS Chapter 134

Article III of the United States Constitution limits the jurisdiction of the federal courts to adjudicating actual cases or controversies. Allen v. Wright, 468 U.S. 737, 750 (1984). Standing

18

includes constitutional and jurisprudential considerations. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

Plaintiff has the burden to establish standing to sue. <u>Id.</u>, 504 U.S. at 560-61. To establish standing, Plaintiff first must show that he suffers from an "injury in fact" that is "concrete and particularized" and either "actual or imminent." Plaintiff must then show that the injury can be traced to some wrongful or illegal conduct by the Defendants that is likely to be redressed by a favorable decision by the court. <u>Id.</u> Plaintiff must demonstrate standing for each form of relief he seeks. <u>Clark v. City of Lakewood</u>, 259 F.3d 996, 1006 (9th Cir. 2001)(citing <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.</u>, 528 U.S. 167, 191-92 (2000).

A plaintiff's claims that his rights have been violated are assumed to be valid for the purpose of his standing inquiry. <u>See Lujan</u>, 504 U.S. at 561; <u>Kachalsky v. Cacace</u>, 817 F.Supp.2d 235, 249 n.12 (S.D.N.Y. 2011). A plaintiff seeking injunctive relief must show that he is suffering from ongoing injury or faces threat of immediate injury. <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 105 (1983).

Plaintiff claims that Hawaii's Firearm Carrying laws in HRS Chapter 134 violate his rights protected by the Second Amendment to the United States Constitution.

The Second Amendment provides:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

19

It is possible that a license or permit denial pursuant to a state administrative scheme regulating firearms may constitute an actual and ongoing injury for infringing upon an alleged Second Amendment violation. See Kachalsky, 817 F.Supp.2d at 248-49; Dearth v. Holder, 641 F.3d 499, 501-02 (D.C.Cir. 2011). In Parker v. District of Columbia, 478 F.3d 370 (D.C. Cir. 2007), the District of Columbia Circuit Court of Appeals held that the denial of a gun license constituted an injury independent of the prospective enforcement of criminal laws related to gun possession. The denial of the license conferred standing on the plaintiff to challenge the statute regulating the issuance of permits and the statutes criminalizing possession without a license. Id. at 375-76 (D.C. Cir. 2007), aff'd sub nom. District of Columbia v. Heller, 554 U.S. 570 (2008); see also Ezell v. City of Chicago, 651 F.3d 684, 695 (7th Cir. 2011)(plaintiff had standing to bring a pre-enforcement constitutional challenge to city ordinance governing prerequisites for gun ownership because forcing him to keep his firearm outside the city was an ongoing injury to his claimed right to possess firearms for self defense).

Plaintiff alleges that the enforcement of Hawaii's Firearm Carrying Laws deprive him of his Second Amendment right to carry a firearm in public. If we assume that Hawaii's Firearm Carrying Laws violate Plaintiff's federal constitutional rights, Plaintiff sufficiently alleges an injury and causation to establish standing for injunctive relief. A decision enjoining the enforcement of the

Hawaii statutes would redress Plaintiff's injury. See Moore v. Madigan, 842 F.Supp.2d 1092, 1098 (C.D. Ill. 2012)(plaintiffs have standing to seek relief enjoining the enforcement of statutes that allegedly infringe upon their claimed right to carry firearms in public).

The Complaint does not set forth a basis for Plaintiff's claims for monetary relief, including compensatory damages of at least one-million dollars. Plaintiff does not have standing to support his claims for damages.

### 2. Plaintiff Fails to State a Second Amendment Claim

After the Court dismissed Plaintiff's first constitutional challenge to HRS chapter 134 in Young v. Hawaii, 548 F.Supp.2d 1151 (D. Haw. 2008)("Young I"), two significant developments occurred in Second Amendment law. First, in District of Columbia v. Heller, the United States Supreme Court explicitly recognized that the Second Amendment confers an individual right to keep and bear arms. 554 U.S. 570 (2008)(overturning Hickman v. Block, 81 F.3d 98, 101-102 (9th Cir. 1996)). Second, in McDonald v. City of Chicago, the Supreme Court determined that the Second Amendment applies to the actions of the States through the Fourteenth Amendment to the United States Constitution. 130 S.Ct. 3020 (2010). After McDonald, it is clear that neither state nor federal governments may pass laws that violate the Second Amendment right to bear arms. Id.

Both Supreme Court decisions, Heller and McDonald, focused on the right to bear arms for self-defense within the home. In Heller,

the Supreme Court held that the Second Amendment confers the right for "law-abiding responsible citizens to use arms in defense of hearth and home." <u>Heller</u>, 554 U.S. at 635; <u>see also</u> <u>McDonald</u>, 130 S.Ct. at 3044 ("[O]ur central holding in <u>Heller</u> [is] that the Second Amendment protects the personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home.").

The Supreme Court <u>Heller</u> decision stated that the Second Amendment does not confer "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." <u>Id.</u> at 626. <u>Heller</u> did not, however, foreclose the possibility that the core right to possess and carry a weapon at home may extend outside the home.

The Supreme Court decisions in <u>Heller</u> and <u>McDonald</u> created uncertainty surrounding (1) the extent to which the Second Amendment rights apply outside the home and (2) the level of scrutiny necessary in evaluating Second Amendment restrictions. <u>Heller</u>, 554 U.S. at 634; <u>United States v. Masciandaro</u>, 638 F.3d 458, 466-67 (4th Cir.), *cert. denied*, 132 S.Ct. 756 (2011).

The Third, Fourth, Seventh, Tenth, and District of Columbia Circuits have adopted a two-step approach for evaluating Second Amendment challenges. First, a court must determine whether the challenged law regulates activity that falls within the Second Amendment's scope. If the challenged law does not regulate protected activity, the inquiry is complete. If the challenged law

does regulate activity within the scope of the Second Amendment, a court must then determine whether it imposes an unconstitutional burden by applying a level of scrutiny higher than rational review. See United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010), cert. denied, 131 S.Ct. 958 (2011); Heller v. District of Columbia, 670 F.3d 1244, 1256-58 (D.C.Cir. 2011); Ezell, 651 F.3d at 702-04; United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010); United States v. Reese, 627 F.3d 792, 800-01 (10th Cir. 2010).

### a. The Second Amendment Does Not Provide an Unlimited Right to Carry a Weapon in Public

The holding in Heller is that the "core" Second Amendment right is that of "law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635-36. At the same time, the Supreme Court recognized that the Second Amendment does not convey the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626.

The Supreme Court held that the Second Amendment does not protect a right to possess "weapons not typically possessed by law-abiding citizens for lawful purposes." The Supreme Court also identified a "non-exhaustive" list of regulations that do not infringe on Second Amendment rights:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing

23

conditions and qualifications on the commercial sale of arms.

Id. at 625-27. The Supreme Court added a footnote, calling the enumerated measures "presumptively lawful." Id. at 626 n.26. Lower courts have struggled with how to interpret the text. It is unclear whether such conduct would fall outside the scope of the Second Amendment or if regulations on such conduct are presumptively lawful because they pass constitutional muster under the applicable standard of scrutiny. See Masciandaro, 638 F.3d at 473; Marzzarella, 614 F.3d at 91.

The weight of authority in the Ninth Circuit, other Circuits, and state courts favors the position that the Second Amendment right articulated by the Supreme Court in Heller and McDonald establishes only a narrow individual right to keep an operable handgun at home for self-defense. United States v. Skoien, 614 F.3d 638, 640 (7th Cir.2010) (en banc), cert. denied, 131 S.Ct. 1674, 179 L.Ed.2d 645 (2011). The right to carry a gun outside the home is not part of the core Second Amendment right. See id.; Masciandaro, 638 F.3d at 470-71. In Masciandaro, the Fourth Circuit Court of Appeals held that the right to carry a firearm in public is more limited than at home because public safety interests outweigh the individual interest in self defense. Id. (noting Heller's examination of 19th-century decisions which upheld statutes prohibiting carrying concealed weapons).

24

Most federal district courts have upheld statutes similar to Hawaii's Firearm Carrying Laws, holding that such regulatory schemes do not infringe upon rights protected by the Second Amendment. See Piszczatoski v. Filko, 840 F.Supp.2d 813 (D.N.J. 2012); Kachalsky v. Cacace, 817 F.Supp.2d 235, 258 (S.D.N.Y. 2011); Moore v. Madigan, 842 F.Supp.2d 1092, 1101-06 (C.D. Ill. 2012).

A District Court in the District of New Jersey upheld a carrying law similar to Hawaii's in Piszczatoski, 840 F.Supp.2d 813. The District Court in Piszczatoski held that the carrying law did not burden protected conduct because the Second Amendment did not provide an absolute right to carry a gun for self-defense outside the home. 840 F.Supp.2d at 821-831; see also Moore, 842 F.Supp.2d at 1101-06 (focusing on language in the Supreme Court's opinions in Heller and McDonald limiting the scope of the Second Amendment).

A District Court in the Southern District of New York upheld a carrying law more restrictive than Hawaii's in Kachalsky v. Cacace, 817 F.Supp.2d 235, 258 (S.D.N.Y. 2011). The New York law required a permit to carry a concealed gun at home or in public. To receive a permit, an applicant had to show "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." Id. at 239-40 (internal citations omitted). The District Court held that the carrying law did not infringe upon a constitutional right because (1) the statute did not operate as a complete ban on carrying

concealed firearms and (2) the Second Amendment does not protect the right to carry a weapon concealed or openly outside the home. Id. at 263-65.

Hawaii Federal District Court decisions have held that Hawaii's carrying laws do not infringe upon protected rights. In Young II, the Hawaii District Court held that Hawaii's firearm licensing scheme in HRS § 134-9 did not implicate activity protected by the Second Amendment because Heller did not establish possession of an unconcealed firearm in public as a fundamental right. No. 08-00540, 2009 WL 1955749, at *8-9; see also Baker v. Kealoha, Civ. No. No. 11-00528 ACK-KSC, Order Granting Defendants State of Hawaii and Governor Abercrombie's Motion for Judgment on the Pleadings, Granting in Part and Denying in Part Defendants City and County of Honolulu, Honolulu Police Department and Louis Kealoha's Motion to Dismiss, and Denying Plaintiff's Motion for Preliminary Injunction (Doc. 51)(Hawaii's Firearm Carrying Laws do not implicate protected Second Amendment activity).

Plaintiff alleges that Defendants violated his civil rights by denying his applications, dated August 29, 2011 and September 16, 2011, for a license to carry a concealed and unconcealed firearm. He alleges that Hawaii's Firearm Carrying Laws are unconstitutional.

HRS § 134-9 empowers a county police chief to grant a permit to carry a concealed pistol or revolver and ammunition in "an exceptional case, when an applicant shows reason to fear injury to

the applicant's person or property." Haw. Rev. Stat. § 134-9(a). The chief of police may grant a license to carry an unconcealed firearm "[w]here the urgency or the need has been sufficiently indicated." Id.

The Places to Keep Statutes require that firearms be confined to "the possessor's place of business, residence or sojourn" but allow lawful transport between those places and repair shops, target ranges, licensed dealerships, firearms shows, firearms training, and police stations. Haw. Rev. Stat. §§ 134-23, 134-24, 134-25, and 134-27. Section 134-26 prohibits carrying or possessing a loaded firearm on a public highway. People with a license to carry, pursuant to Section 134-9, are exempt from the provisions.

Hawaii's Firearm Carrying Laws do not violate Plaintiff's Second Amendment rights. The Carrying Laws do not restrict the core protection afforded by the Second Amendment. See Kachalsky, 817 F.Supp.2d at 264. They only apply to carrying a weapon in public. They do not operate as a ban on all firearms. The challenged licensing scheme in HRS § 134-9 only applies to pistols and revolvers. See State v. Modica, 567 P.2d 420 (Haw. 1977).

Unlike the law held unconstitutional in McDonald, 130 S.Ct. 3020, which operated as a complete ban, or Ezell, 651 F.3d 684, which burdened gun ownership for self-defense in the home, Hawaii's Firearm Carrying Laws allow firearms to be carried in public between specified locations or with a showing of special need. Plaintiff does not allege a constitutional violation because the

right to bear arms does not include the right "to carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Heller, 554 U.S. at 626. HRS Chapter 134's limitations on carrying weapons in public does not implicate activity protected by the Second Amendment.

> **b.    Hawaii's    Carrying    Restrictions    Pass Constitutional Scrutiny**

In the wake of Heller and McDonald, federal appellate courts have advised lower courts to await direction from the Supreme Court regarding the Second Amendment's scope outside the home environment. See e.g. Masciandaro, 638 F.3d at 475. Even if the Second Amendment extended a right to carry handguns outside the home, it would still be permissible to regulate the conduct, so long as it did not unconstitutionally burden it.

The Ninth Circuit Court of Appeals has not issued a binding decision as to the appropriate level of scrutiny. Many courts have applied intermediate scrutiny to laws burdening protected conduct that falls outside the core Second Amendment right of a law-abiding citizen to possess weapons for self defense in the home. See Masciandaro, 538 F.3d at 470-71; Piszczatoski, 840 F.Supp.2d at 834 (importing the intermediate scrutiny standard used in First Amendment speech cases).

Federal district courts in the Ninth Circuit have applied the intermediate scrutiny standard for the Second Amendment context crafted by the Third Circuit Court of Appeals. See Peruta v. Cnty. of San Diego, 758 F.Supp.2d 1106, 1117 (S.D.Cal.2010). Under the

28

standard set forth by the Third Circuit Court of Appeals, intermediate scrutiny requires that the governmental interest be significant, substantial, or important. <u>Marzzarella</u>, 614 F.3d at 98. The challenged regulation must reasonably fit the asserted objective. <u>Id.</u>

Hawaii's licensing scheme in HRS § 134-9 requires that a plaintiff provide a sufficient showing of urgency or need or fear of injury to receive a license to carry a concealed or unconcealed pistol or revolver in public. Haw. Rev. Stat. § 134-9. The other Firearm Carrying laws, HRS §§ 134-23 through 134-27, limit the situations in which a person may carry a weapon in public without a license. In enacting and enforcing the Firearm Carrying Laws, the government protects an important and substantial interest in safeguarding the public from the inherent dangers of firearms. <u>See</u> <u>Masciandaro</u>, 638 F.3d at 473 (substantial interest in regulating loaded firearms) (citing <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987)); <u>Kachalsky</u>, 817 F.Supp.2d at 270 (substantial interest in regulated concealed and open carry). The policy behind the statutory limitations reasonably relates to the government's interest by enabling officials to effectively differentiate between individuals who need to carry a gun for self-defense and those who do not. <u>See</u> <u>Peruta</u>, 758 F.Supp.2d at 1117. The Firearm Carrying Laws do not operate as an outright ban on firearms. Additionally, HRS § 134-9 regulates only pistols and revolvers.

29

Other federal district courts have held that comparable licensing schemes survive intermediate scrutiny, in the event that the Second Amendment right to carry a weapon for self-defense extends outside the home. <u>See</u> <u>Kachalsky</u>, 817 F.Supp.2d at 270-71 (upholding licensing law requiring a showing of "articulable need for self-defense" to openly carry and completely prohibiting concealed carry); <u>Peruta</u>, 758 F.Supp.2d at 1110, 1117 (upholding concealed carry licensing scheme requiring a showing of good cause based on personal circumstances and not generalized fear for one's safety); <u>Piszczatoski</u>, 840 F. Supp. 2d at 836-37 (upholding licensing scheme for open and concealed carry).

Hawaii's Firearm Carrying Laws do not unconstitutionally burden rights protected by the Second Amendment.

### c. **Plaintiff's Facial Challenge Fails**

The prior restraint doctrine allows a plaintiff to raise a facial challenge to a licencing statute that "allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity." <u>City of Lakewood v. Plain Dealer Publ'g Co.</u>, 486 U.S. 750, 755-56 (1988); <u>World Wide Rush, LLC v. City of Los Angeles</u>, 606 F.3d 676, 687 (9th Cir. 2010).

The prior restraint doctrine is applicable only in the First Amendment context. Its rationale is rooted in preventing risks specific to the First Amendment: self-censorship and the difficulty of detecting, reviewing, or correcting content-based censorship on an as-applied challenge. These rationales do not apply in the

Second Amendment context. <u>See e.g.</u> <u>Hightower v. City of Boston</u>, 693 F.3d 61, 80 (1st Cir. 2012)("The prior restraint doctrine is not a label that may be attached to allow any facial challenge, whatever the constitutional ground."); <u>Pisczctoski</u>, 840 F.Supp.2d at 831-32; <u>Kachalsky</u>, 817 F.Supp.2d at 267 n.32 (although some Second Amendment cases borrow an analytical framework from the First Amendment, they do not apply substantive First Amendment rules). Plaintiff's attempt to import the prior restraint doctrine from the First Amendment of the United States Constitution to Hawaii's Carrying Law fails. (Complaint at pgs. 17-20.)

Plaintiff's claims alleging a violation of the Second Amendment to the United States Constitution, in Count Three, fail to state a cause of action. The Second Amendment cause of action is **DISMISSED WITH PREJUDICE.**

> ### 3.    Plaintiff Lacks Standing To Challenge HRS Chapter 134 On The Basis Of An Alleged Deprivation Of Ninth Amendment Rights

The Ninth Amendment to the United States Constitution provides that:

> The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people.

U.S. Const. amend. IX.

The Ninth Amendment does not "independently secur[e] any constitutional rights for purposes of making out a constitutional violation." <u>San Diego Cnty. Gun Rights Comm. v. Reno</u>, 98 F.3d 1121, 1125 (9th Cir. 1996)(internal citations omitted). The Ninth

Amendment does not guarantee an individual right to bear arms. See id.; Young I, 548 F.Supp.2d at 1168; Ross v. Fed. Bureau of Alcohol, Tobacco, & Firearms, 807 F.Supp.2d 362, 372 (D. Md. 2011).

Plaintiff does not have standing to challenge HRS Chapter 134 on the basis of an alleged deprivation of Ninth Amendment rights. Plaintiff's claims alleging a violation of his Ninth Amendment rights, Count Four, are **DISMISSED WITH PREJUDICE**.

### 4. HRS Chapter 134 Does Not Violate the Privileges or Immunities Clause of the Fourteenth Amendment

In Count Five of the Complaint Plaintiff asserts the claim that the enforcement of HRS Chapter 134 violates the Privileges and Immunities clause of the Fourteenth Amendment to the United States Constitution.

The Privileges and Immunities Clause of the Fourteenth Amendment provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The Privileges and Immunities Clause protects fundamental rights, but even that protection is extremely limited, extending only to the right to travel or right to privacy. See Saenz v. Roe, 526 U.S. 489 (1999). In McDonald v. City of Chicago, the plurality of Justices of the Supreme Court rejected using the Privileges and Immunities Clause to apply the Second Amendment to the States. 130 S. Ct. at 3031.

There is no basis for Plaintiff's assertion that the licensing scheme in HRS Chapter 134 interferes with his fundamental right to bear arms. The cause of action for a violation of the Privileges

and Immunities Clause of the Fourteenth Amendment to United States Constitution in Count V is **DISMISSED WITH PREJUDICE.**

### 5.    The Complaint Fails To State A Claim For Violation of the Fourteenth Amendment Due Process Clause

Plaintiff contends that the enforcement of Hawaii's licensing scheme in HRS Chapter 134 violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[1]

The Fourteenth Amendment protects against the deprivation of property or liberty without due process. See Carey v. Piphus, 435 U.S. 247, 259 (1978); Brady v. Gebbie, 859 F.2d 1543, 1547 (9th Cir. 1988).   Courts employ a two-step test to determine whether due process rights have been violated by the actions of a government official.   First, a court must determine whether a liberty or property interest exists entitling a plaintiff to due process protections. If a constitutionally protected interest is established, courts employ a three-part balancing test to determine what process is due.  Hewitt v. Grabicki, 794 F.2d 1373, 1380 (9th Cir. 1986). The three-part balancing test set forth in Mathews v. Eldridge examines (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

---

[1]     Plaintiff also cites the Due Process Clause of the Fifth Amendment on one page of the Complaint. (Complaint at pg. 24). Plaintiff's due process challenge to a state law is properly brought pursuant to the Fourteenth Amendment Due Process Clause. See Castillo v. McFadden, 399 F.3d 933, 1002 n.5 (9th Cir. 2005).

(3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

If a liberty or property interest does not exist, no process is due. Plaintiff must prove that Hawaii's Firearm Carrying Laws adversely affect a protected interest to carry a weapon in public under the facts of the case. In Erdelyi v. O'Brien, 680 F.2d 61, 63 (9th Cir. 1982), the Ninth Circuit Court of Appeals held that California's comparable licensing scheme did not create a property interest or liberty interest in obtaining a concealed weapon. Post-Heller federal district court decisions confirm the holding that there is no unlimited right to carry a gun in public. See Peruta, 758 F.Supp.2d 1106, 1121 (S.D.Cal. 2010)(concealed carry); cf. Fisher v. Kealoha, No. 11-00589, 2012 WL 2526923, at *11 (D. Haw. June 29, 2012)(due process rights attach to requiring a license for carrying a firearm at home, as opposed to carrying a weapon in public).

The Complaint alleges Plaintiff was twice denied a license to carry a pistol or revolver. HRS Chapter 134 does not implicate Plaintiff's liberty or property interests because there is no right to carry weapons in public. Having no fundamental interest in carrying a weapon, Plaintiff is not entitled to due process.

The Complaint fails to state a claim on which relief may be granted for violation of Plaintiff's due process rights guaranteed

34

by the Fourteenth Amendment to the United States Constitution. The cause of action for violation of the Procedural Due Process Clause of the Fourteenth Amendment is **DISMISSED WITH PREJUDICE**.

>       **6.    HRS Chapter 134 Does Not Constitute a Bill of Attainder in Violation of Article I, Section 10 Of the United States Constitution**

Plaintiff asserts that HRS Chapter 134 constitutes an unconstitutional bill of attainder under Article I, section 10, clause 1 of the United States Constitution: "No State shall ... pass any Bill of Attainder . . . ."

A statute is an unconstitutional bill of attainder when it "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 468 (1977). Burdensome consequences to legislation do not create a bill of attainder, so long as they do not rise to the level of inflicting punishment. See id. at 472 (quoting United States v. Lovett, 328 U.S. 303, 315 (1946)).

A legislative act is not a bill of attainder merely because it burdens some persons or groups, but not others. Id. at 471. If a statute sets forth a rule that is generally applicable to all persons with a certain characteristic and is reasonably calculated to achieve a non-punitive purpose, the law is not an unconstitutional bill of attainder. See United States v. Munsterman, 177 F.3d 1139, 1142 (9th Cir. 1999).

HRS Chapter 134 applies to all applicants for a permit to

carry a revolver or firearm. It furthers the non-punitive legislative purpose of controlling when and where certain types of weapons are carried in the community to ensure public safety.

HRS Chapter 134 is not an impermissible bill of attainder. Young I, 548 F.Supp.2d at 1172-73.

The claim that HRS Chapter 134 constitutes an unconstitutional bill of attainder is **DISMISSED WITH PREJUDICE.**

> ### 7. The Complaint Fails To State a Claim of Impairment of the Obligation Of Contracts

Count Two of the Complaint asserts that HRS Chapter 134 violates the Contract Clause of the United States Constitution

The Contract Clause of the United States Constitution prohibits any state from passing a law "impairing the Obligation of Contracts." U.S. Const. Art. I, § 10. To bring a claim for a violation of the Contract Clause, a plaintiff must allege facts demonstrating that he possesses contractual rights that have been substantially impaired by the challenged law. Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co., 470 U.S. 451 (1985). If the threshold inquiry is met, the court must determine if the state has a significant or legitimate purpose behind the regulation. RUI One Corp. v. City of Berkeley, 371 F.3d 1137, 1147 (9th Cir. 2004).

It is not possible to determine what contract Plaintiff is referring to in his challenge to HRS Chapter 134. A statute itself may be treated as a contract when its "language and circumstances evince a legislative intent to create private rights of a

36

contractual nature enforceable against the State." U.S. Trust Co. of New York v. New Jersey, 431 U.S. 1, 17 n.14 (1977). HRS Chapter 134 does not evince such an intent. It does not bestow any contractual rights upon Plaintiff. See Young I, 548 F.Supp.2d at 1174; see also Martinkovich v. Or. Legis. Body, CIV. 11-3065-CL, 2011 WL 7693036, at *5 (D. Or. Aug. 24, 2011) report and recommendation adopted, 2012 WL 1245663 (D. Or. Apr. 12, 2012)(rejecting a Contract Clause challenge to Oregon's concealed gun licensing law).

Plaintiff's claim for the violation of the Article I, Section 10 prohibition of the impairment of the obligation of contracts, in Count Two of the Complaint, is **DISMISSED WITH PREJUDICE**.

### D. Plaintiff's §§ 1985 and 1986 Claims Are Precluded By Plaintiff's Failure To Allege a § 1983 Violation

Plaintiff sues pursuant to 42 U.S.C. §§ 1985 and 1986, as well as § 1983.

Under § 1985, claims may be brought for conspiracy to violate a citizen's § 1983 civil rights. Section 1986 allows claims for neglecting to prevent conspiratorial acts set forth in § 1985.

If a plaintiff fails to establish a constitutional deprivation to support a § 1983 claim, the same allegations necessarily cannot establish claims brought pursuant to §§ 1985 and 1986. Cassettari v. Nevada Cnty., Cal., 824 F.2d 735, 739 (9th Cir. 1987); White v. Pac. Media Grp., Inc., 322 F.Supp.2d 1101, 1112 (D. Haw. 2004)(insufficiency of a § 1985 cause of action precludes an actionable § 1986 claim).

37

Plaintiff's § 1985 conspiracy claim is based solely upon allegations which fail to state a claim for deprivation of a federal right under § 1983.

Plaintiff's §§ 1985 and 1986 causes of action are **DISMISSED WITH PREJUDICE**.

### E. Plaintiff's Claims Against Defendants County of Hawaii and Hilo County Police Department

Plaintiff still has not served Defendants County of Hawaii and Hilo County Police Department. Pursuant to Federal Rule of Civil Procedure 4(m), the 120-day time limit for service of the Complaint, which was filed on June 20, 2012, expired over one month ago.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may properly dismiss an action sua sponte, without giving a plaintiff notice of its intention to dismiss and an opportunity to respond if a plaintiff "cannot possibly win relief." See Sparling v. Hoffman Construction Co., 8654 F.2d 635, 638 (9th Cir. 1981); Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987). If a plaintiff cannot possibly win relief, the court may dismiss an action sua sponte without notice in favor of a party that has not been served, answered, or appeared. Columbia Steel Fabricators, Inc. V. Ahistrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995); Arreola v. Wells Fargo Home Mortg., No. 10-3272, 2011 WL 1205249 (E.D. Cal. Mar. 29, 2011). It is appropriate to do so when the party that has not appeared is in a position similar to the moving

38

defendants. <u>Abagnin v. AMVAC Chemical Corp.</u>, 545 F.3d 733, 742-43 (9th Cir. 2008).

The Hilo County Police Department and County of Hawaii, which have not been served or appeared, are in positions similar to the County Officials who moved to dismiss. Hilo County Police Department is considered the same legal entity as the County of Hawaii. <u>See</u> <u>Pourny v. Maui Police Department</u>, 127 F.Supp.2d 1129, 1143 (D. Haw. 2000) (treating the Maui Police Department and the County of Maui as one party); <u>see also</u> <u>Headwaters Forest Defense v. County of Humboldt</u>, 276 F.3d 1125, 1127 (9th Cir. 2002) (treating police departments as part of their respective county or city). Plaintiff's claims against the County of Hawaii and the Hilo County Police Department are analyzed under the same standard used for the claims against the County Officials sued in their official capacities. <u>See</u> <u>Wong v. City & County of Honolulu</u>, 333 F.Supp.2d 942, 947 (D. Haw. 2004)(<u>citing</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166-67 n.14 (1985)).

For the reasons set forth for dismissal of the claims against the County Officials, Plaintiff "cannot possibly win relief" against the County of Hawaii or the Hilo County Police Department.

The causes of action against Defendants County of Hawaii and Hilo County Police Department are **DISMISSED WITH PREJUDICE.**

### CONCLUSION

The Complaint fails to state a claim for deprivation of a federal right, which is a necessary prerequisite for actions

brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Additionally, the State Defendants are protected by sovereign immunity.

State Defendants' Motion to Dismiss (Doc. 25) is **GRANTED**. All causes of action against State Defendants are **DISMISSED WITH PREJUDICE**.

County Officials Defendants' Motion to Dismiss (Doc. 23) is **GRANTED**. The Court dismisses the causes of action against the County and the County Police Department. All causes of action against the County Officials, the County, and the County Police Department are **DISMISSED WITH PREJUDICE**.

The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: November 28, 2012, Honolulu, Hawaii.



_/s/ Helen Gillmor_
Helen Gillmor
Senior United States District Judge

GEORGE K. YOUNG, JR. vs. STATE OF HAWAII and NEIL ABERCROMBIE in his capacity as Governor of the State of Hawaii; DAVID M. LOUIE in his capacity as State Attorney General; COUNTY OF HAWAII, as a sub-agency of the State of Hawaii and WILLIAM P. KENOI in his capacity as Mayor of the County of Hawaii; and the HILO COUNTY POLICE DEPARTMENT, as a sub-agency of the County of Hawaii and HARRY S. KUBOJIRI in his capacity as Chief of Police; JOHN DOES 1-25; JANE DOES 1-25; CORPORATIONS 1-5, and DOE ENTITIES 1-5, Civ. No. 12-00336 HG BMK; ORDER GRANTING COUNTY OF HAWAII OFFICIAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOC. 23) AND STATE OF HAWAII DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Doc. 25).