Case 1:12-cv-00336-HG-BMK   Document 46-14   Filed 12/26/12   Page 19 of 24   PageID #:
Case 1:12-cv-00336-HG-L   K   Document 42   Filed 11/29/12   P  ge 19 of 40   PageID #: 239
293

includes constitutional and jurisprudential considerations. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

Plaintiff has the burden to establish standing to sue. <u>Id.</u>, 504 U.S. at 560-61.  To establish standing, Plaintiff first must show that he suffers from an "injury in fact" that is "concrete and particularized" and either "actual or imminent."  Plaintiff must then show that the injury can be traced to some wrongful or illegal conduct by the Defendants that is likely to be redressed by a favorable decision by the court.  <u>Id.</u> Plaintiff must demonstrate standing for each form of relief he seeks. <u>Clark v. City of Lakewood</u>, 259 F.3d 996, 1006 (9th Cir. 2001)(citing <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.</u>, 528 U.S. 167, 191-92 (2000).

A plaintiff's claims that his rights have been violated are assumed to be valid for the purpose of his standing inquiry. <u>See Lujan</u>, 504 U.S. at 561; <u>Kachalsky v. Cacace</u>, 817 F.Supp.2d 235, 249 n.12 (S.D.N.Y. 2011). A plaintiff seeking injunctive relief must show that he is suffering from ongoing injury or faces threat of immediate injury. <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 105 (1983).

Plaintiff claims that Hawaii's Firearm Carrying laws in HRS Chapter 134 violate his rights protected by the Second Amendment to the United States Constitution.

The Second Amendment provides:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

It is possible that a license or permit denial pursuant to a state administrative scheme regulating firearms may constitute an actual and ongoing injury for infringing upon an alleged Second Amendment violation. See Kachalsky, 817 F.Supp.2d at 248-49; Dearth v. Holder, 641 F.3d 499, 501-02 (D.C.Cir. 2011). In Parker v. District of Columbia, 478 F.3d 370 (D.C. Cir. 2007), the District of Columbia Circuit Court of Appeals held that the denial of a gun license constituted an injury independent of the prospective enforcement of criminal laws related to gun possession. The denial of the license conferred standing on the plaintiff to challenge the statute regulating the issuance of permits and the statutes criminalizing possession without a license. Id. at 375-76 (D.C. Cir. 2007), aff'd sub nom. District of Columbia v. Heller, 554 U.S. 570 (2008); see also Ezell v. City of Chicago, 651 F.3d 684, 695 (7th Cir. 2011)(plaintiff had standing to bring a pre-enforcement constitutional challenge to city ordinance governing prerequisites for gun ownership because forcing him to keep his firearm outside the city was an ongoing injury to his claimed right to possess firearms for self defense).

Plaintiff alleges that the enforcement of Hawaii's Firearm Carrying Laws deprive him of his Second Amendment right to carry a firearm in public. If we assume that Hawaii's Firearm Carrying Laws violate Plaintiff's federal constitutional rights, Plaintiff sufficiently alleges an injury and causation to establish standing for injunctive relief. A decision enjoining the enforcement of the

20

Case 1:12-cv-00336-HG-BMK   Document 45-4   Filed 12/26/12   Page 21 of 240   PageID #:
Case 1:12-cv-00336-HG-B K   Document 42   Filed 11/29/12   P ge 21 of 40   PageID #: 241
295

Hawaii statutes would redress Plaintiff's injury. <u>See</u> <u>Moore v.
Madigan</u>, 842 F.Supp.2d 1092, 1098 (C.D. Ill. 2012)(plaintiffs have
standing to seek relief enjoining the enforcement of statutes that
allegedly infringe upon their claimed right to carry firearms in
public).

The Complaint does not set forth a basis for Plaintiff's
claims for monetary relief, including compensatory damages of at
least one-million dollars. Plaintiff does not have standing to
support his claims for damages.

### 2. Plaintiff Fails to State a Second Amendment Claim

After the Court dismissed Plaintiff's first constitutional
challenge to HRS chapter 134 in <u>Young v. Hawaii</u>, 548 F.Supp.2d 1151
(D. Haw. 2008)("<u>Young I</u>"), two significant developments occurred in
Second Amendment law. First, in <u>District of Columbia v. Heller</u>, the
United States Supreme Court explicitly recognized that the Second
Amendment confers an individual right to keep and bear arms. 554
U.S. 570 (2008)(overturning <u>Hickman v. Block</u>, 81 F.3d 98, 101-102
(9th Cir. 1996)). Second, in <u>McDonald v. City of Chicago</u>, the
Supreme Court determined that the Second Amendment applies to the
actions of the States through the Fourteenth Amendment to the
United States Constitution. 130 S.Ct. 3020 (2010). After <u>McDonald</u>,
it is clear that neither state nor federal governments may pass
laws that violate the Second Amendment right to bear arms. <u>Id.</u>

Both Supreme Court decisions, <u>Heller</u> and <u>McDonald</u>, focused on
the right to bear arms for self-defense within the home. In <u>Heller</u>,

the Supreme Court held that the Second Amendment confers the right for "law-abiding responsible citizens to use arms in defense of hearth and home." Heller, 554 U.S. at 635; see also McDonald, 130 S.Ct. at 3044 ("[O]ur central holding in Heller [is] that the Second Amendment protects the personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home.").

The Supreme Court Heller decision stated that the Second Amendment does not confer "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626. Heller did not, however, foreclose the possibility that the core right to possess and carry a weapon at home may extend outside the home.

The Supreme Court decisions in Heller and McDonald created uncertainty surrounding (1) the extent to which the Second Amendment rights apply outside the home and (2) the level of scrutiny necessary in evaluating Second Amendment restrictions. Heller, 554 U.S. at 634; United States v. Masciandaro, 638 F.3d 458, 466-67 (4th Cir.), cert. denied, 132 S.Ct. 756 (2011).

The Third, Fourth, Seventh, Tenth, and District of Columbia Circuits have adopted a two-step approach for evaluating Second Amendment challenges. First, a court must determine whether the challenged law regulates activity that falls within the Second Amendment's scope. If the challenged law does not regulate protected activity, the inquiry is complete. If the challenged law

22

does regulate activity within the scope of the Second Amendment, a court must then determine whether it imposes an unconstitutional burden by applying a level of scrutiny higher than rational review. See United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010), cert. denied, 131 S.Ct. 958 (2011); Heller v. District of Columbia, 670 F.3d 1244, 1256-58 (D.C.Cir. 2011); Ezell, 651 F.3d at 702-04; United States v. Chester, 628 F.3d 673, 680 (4th Cir. 2010); United States v. Reese, 627 F.3d 792, 800-01 (10th Cir. 2010).

### a. The Second Amendment Does Not Provide an Unlimited Right to Carry a Weapon in Public

The holding in Heller is that the "core" Second Amendment right is that of "law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635-36. At the same time, the Supreme Court recognized that the Second Amendment does not convey the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626.

The Supreme Court held that the Second Amendment does not protect a right to possess "weapons not typically possessed by law-abiding citizens for lawful purposes." The Supreme Court also identified a "non-exhaustive" list of regulations that do not infringe on Second Amendment rights:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing

> conditions and qualifications on the commercial sale of arms.

Id. at 625-27. The Supreme Court added a footnote, calling the enumerated measures "presumptively lawful." Id. at 626 n.26. Lower courts have struggled with how to interpret the text. It is unclear whether such conduct would fall outside the scope of the Second Amendment or if regulations on such conduct are presumptively lawful because they pass constitutional muster under the applicable standard of scrutiny. See Masciandaro, 638 F.3d at 473; Marzzarella, 614 F.3d at 91.

The weight of authority in the Ninth Circuit, other Circuits, and state courts favors the position that the Second Amendment right articulated by the Supreme Court in Heller and McDonald establishes only a narrow individual right to keep an operable handgun at home for self-defense. United States v. Skoien, 614 F.3d 638, 640 (7th Cir.2010) (en banc), cert. denied, 131 S.Ct. 1674, 179 L.Ed.2d 645 (2011). The right to carry a gun outside the home is not part of the core Second Amendment right. See id.; Masciandaro, 638 F.3d at 470-71.  In Masciandaro, the Fourth Circuit Court of Appeals held that the right to carry a firearm in public is more limited than at home because public safety interests outweigh the individual interest in self defense. Id. (noting Heller's examination of 19th-century decisions which upheld statutes prohibiting carrying concealed weapons).

Most federal district courts have upheld statutes similar to Hawaii's Firearm Carrying Laws, holding that such regulatory schemes do not infringe upon rights protected by the Second Amendment. See Piszczatoski v. Filko, 840 F.Supp.2d 813 (D.N.J. 2012); Kachalsky v. Cacace, 817 F.Supp.2d 235, 258 (S.D.N.Y. 2011); Moore v. Madigan, 842 F.Supp.2d 1092, 1101-06 (C.D. Ill. 2012).

A District Court in the District of New Jersey upheld a carrying law similar to Hawaii's in Piszczatoski, 840 F.Supp.2d 813. The District Court in Piszczatoski held that the carrying law did not burden protected conduct because the Second Amendment did not provide an absolute right to carry a gun for self-defense outside the home. 840 F.Supp.2d at 821-831; see also Moore, 842 F.Supp.2d at 1101-06 (focusing on language in the Supreme Court's opinions in Heller and McDonald limiting the scope of the Second Amendment).

A District Court in the Southern District of New York upheld a carrying law more restrictive than Hawaii's in Kachalsky v. Cacace, 817 F.Supp.2d 235, 258 (S.D.N.Y. 2011). The New York law required a permit to carry a concealed gun at home or in public. To receive a permit, an applicant had to show "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." Id. at 239-40 (internal citations omitted). The District Court held that the carrying law did not infringe upon a constitutional right because (1) the statute did not operate as a complete ban on carrying

Case 1:12-cv-00336-HG-BMK   Document 46-4   Filed 12/26/12   Page 26 of 40   PageID #:
Case 1:12-cv-00336-HG-L   Document 42   Filed 11/29/12   Page 26 of 40   PageID #: 246
309

concealed firearms and (2) the Second Amendment does not protect the right to carry a weapon concealed or openly outside the home. Id. at 263-65.

Hawaii Federal District Court decisions have held that Hawaii's carrying laws do not infringe upon protected rights. In Young II, the Hawaii District Court held that Hawaii's firearm licensing scheme in HRS § 134-9 did not implicate activity protected by the Second Amendment because Heller did not establish possession of an unconcealed firearm in public as a fundamental right. No. 08-00540, 2009 WL 1955749, at *8-9; see also Baker v. Kealoha, Civ. No. No. 11-00528 ACK-KSC, Order Granting Defendants State of Hawaii and Governor Abercrombie's Motion for Judgment on the Pleadings, Granting in Part and Denying in Part Defendants City and County of Honolulu, Honolulu Police Department and Louis Kealoha's Motion to Dismiss, and Denying Plaintiff's Motion for Preliminary Injunction (Doc. 51)(Hawaii's Firearm Carrying Laws do not implicate protected Second Amendment activity).

Plaintiff alleges that Defendants violated his civil rights by denying his applications, dated August 29, 2011 and September 16, 2011, for a license to carry a concealed and unconcealed firearm. He alleges that Hawaii's Firearm Carrying Laws are unconstitutional.

HRS § 134-9 empowers a county police chief to grant a permit to carry a concealed pistol or revolver and ammunition in "an exceptional case, when an applicant shows reason to fear injury to

the applicant's person or property." Haw. Rev. Stat. § 134-9(a).
The chief of police may grant a license to carry an unconcealed
firearm "[w]here the urgency or the need has been sufficiently
indicated." Id.

The Places to Keep Statutes require that firearms be confined
to "the possessor's place of business, residence or sojourn" but
allow lawful transport between those places and repair shops,
target ranges, licensed dealerships, firearms shows, firearms
training, and police stations. Haw. Rev. Stat. §§ 134-23, 134-24,
134-25, and 134-27. Section 134-26 prohibits carrying or possessing
a loaded firearm on a public highway. People with a license to
carry, pursuant to Section 134-9, are exempt from the provisions.

Hawaii's Firearm Carrying Laws do not violate Plaintiff's
Second Amendment rights. The Carrying Laws do not restrict the core
protection afforded by the Second Amendment. See Kachalsky, 817
F.Supp.2d at 264. They only apply to carrying a weapon in public.
They do not operate as a ban on all firearms. The challenged
licensing scheme in HRS § 134-9 only applies to pistols and
revolvers. See State v. Modica, 567 P.2d 420 (Haw. 1977).

Unlike the law held unconstitutional in McDonald, 130 S.Ct.
3020, which operated as a complete ban, or Ezell, 651 F.3d 684,
which burdened gun ownership for self-defense in the home, Hawaii's
Firearm Carrying Laws allow firearms to be carried in public
between specified locations or with a showing of special need.
Plaintiff does not allege a constitutional violation because the

27

right to bear arms does not include the right "to carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Heller, 554 U.S. at 626. HRS Chapter 134's limitations on carrying weapons in public does not implicate activity protected by the Second Amendment.

### b. Hawaii's Carrying Restrictions Pass Constitutional Scrutiny

In the wake of Heller and McDonald, federal appellate courts have advised lower courts to await direction from the Supreme Court regarding the Second Amendment's scope outside the home environment. See e.g. Masciandaro, 638 F.3d at 475. Even if the Second Amendment extended a right to carry handguns outside the home, it would still be permissible to regulate the conduct, so long as it did not unconstitutionally burden it.

The Ninth Circuit Court of Appeals has not issued a binding decision as to the appropriate level of scrutiny. Many courts have applied intermediate scrutiny to laws burdening protected conduct that falls outside the core Second Amendment right of a law-abiding citizen to possess weapons for self defense in the home. See Masciandaro, 538 F.3d at 470-71; Piszczatoski, 840 F.Supp.2d at 834 (importing the intermediate scrutiny standard used in First Amendment speech cases).

Federal district courts in the Ninth Circuit have applied the intermediate scrutiny standard for the Second Amendment context crafted by the Third Circuit Court of Appeals. See Peruta v. Cnty. of San Diego, 758 F.Supp.2d 1106, 1117 (S.D.Cal.2010). Under the

standard set forth by the Third Circuit Court of Appeals, intermediate scrutiny requires that the governmental interest be significant, substantial, or important. Marzzarella, 614 F.3d at 98. The challenged regulation must reasonably fit the asserted objective. Id.

Hawaii's licensing scheme in HRS § 134-9 requires that a plaintiff provide a sufficient showing of urgency or need or fear of injury to receive a license to carry a concealed or unconcealed pistol or revolver in public. Haw. Rev. Stat. § 134-9. The other Firearm Carrying laws, HRS §§ 134-23 through 134-27, limit the situations in which a person may carry a weapon in public without a license. In enacting and enforcing the Firearm Carrying Laws, the government protects an important and substantial interest in safeguarding the public from the inherent dangers of firearms. See Masciandaro, 638 F.3d at 473 (substantial interest in regulating loaded firearms) (citing United States v. Salerno, 481 U.S. 739, 745 (1987)); Kachalsky, 817 F.Supp.2d at 270 (substantial interest in regulated concealed and open carry). The policy behind the statutory limitations reasonably relates to the government's interest by enabling officials to effectively differentiate between individuals who need to carry a gun for self-defense and those who do not. See Peruta, 758 F.Supp.2d at 1117. The Firearm Carrying Laws do not operate as an outright ban on firearms. Additionally, HRS § 134-9 regulates only pistols and revolvers.

Other federal district courts have held that comparable licensing schemes survive intermediate scrutiny, in the event that the Second Amendment right to carry a weapon for self-defense extends outside the home. <u>See</u> <u>Kachalsky</u>, 817 F.Supp.2d at 270-71 (upholding licensing law requiring a showing of "articulable need for self-defense" to openly carry and completely prohibiting concealed carry); <u>Peruta</u>, 758 F.Supp.2d at 1110, 1117 (upholding concealed carry licensing scheme requiring a showing of good cause based on personal circumstances and not generalized fear for one's safety); <u>Piszczatoski</u>, 840 F. Supp. 2d at 836-37 (upholding licensing scheme for open and concealed carry).

Hawaii's Firearm Carrying Laws do not unconstitutionally burden rights protected by the Second Amendment.

### c.  Plaintiff's Facial Challenge Fails

The prior restraint doctrine allows a plaintiff to raise a facial challenge to a licencing statute that "allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity." <u>City of Lakewood v. Plain Dealer Publ'g Co.</u>, 486 U.S. 750, 755-56 (1988); <u>World Wide Rush, LLC v. City of Los Angeles</u>, 606 F.3d 676, 687 (9th Cir. 2010).

The prior restraint doctrine is applicable only in the First Amendment context. Its rationale is rooted in preventing risks specific to the First Amendment: self-censorship and the difficulty of detecting, reviewing, or correcting content-based censorship on an as-applied challenge. These rationales do not apply in the

Second Amendment context. See e.g. Hightower v. City of Boston, 693 F.3d 61, 80 (1st Cir. 2012)("The prior restraint doctrine is not a label that may be attached to allow any facial challenge, whatever the constitutional ground."); Pisczctoski, 840 F.Supp.2d at 831-32; Kachalsky, 817 F.Supp.2d at 267 n.32 (although some Second Amendment cases borrow an analytical framework from the First Amendment, they do not apply substantive First Amendment rules). Plaintiff's attempt to import the prior restraint doctrine from the First Amendment of the United States Constitution to Hawaii's Carrying Law fails. (Complaint at pgs. 17-20.)

Plaintiff's claims alleging a violation of the Second Amendment to the United States Constitution, in Count Three, fail to state a cause of action. The Second Amendment cause of action is **DISMISSED WITH PREJUDICE**.

> **3. Plaintiff Lacks Standing To Challenge HRS Chapter 134 On The Basis Of An Alleged Deprivation Of Ninth Amendment Rights**

The Ninth Amendment to the United States Constitution provides that:

> The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people.

U.S. Const. amend. IX.

The Ninth Amendment does not "independently secur[e] any constitutional rights for purposes of making out a constitutional violation." San Diego Cnty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1125 (9th Cir. 1996)(internal citations omitted). The Ninth

Amendment does not guarantee an individual right to bear arms. <u>See</u> <u>id.</u>; <u>Young I</u>, 548 F.Supp.2d at 1168; <u>Ross v. Fed. Bureau of</u> <u>Alcohol, Tobacco, & Firearms</u>, 807 F.Supp.2d 362, 372 (D. Md. 2011).

Plaintiff does not have standing to challenge HRS Chapter 134 on the basis of an alleged deprivation of Ninth Amendment rights. Plaintiff's claims alleging a violation of his Ninth Amendment rights, Count Four, are **DISMISSED WITH PREJUDICE.**

### 4.  HRS Chapter 134 Does Not Violate the Privileges or Immunities Clause of the Fourteenth Amendment

In Count Five of the Complaint Plaintiff asserts the claim that the enforcement of HRS Chapter 134 violates the Privileges and Immunities clause of the Fourteenth Amendment to the United States Constitution.

The Privileges and Immunities Clause of the Fourteenth Amendment provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The Privileges and Immunities Clause protects fundamental rights, but even that protection is extremely limited, extending only to the right to travel or right to privacy. <u>See</u> <u>Saenz v. Roe</u>, 526 U.S. 489 (1999). In <u>McDonald v. City of Chicago</u>, the plurality of Justices of the Supreme Court rejected using the Privileges and Immunities Clause to apply the Second Amendment to the States. 130 S. Ct. at 3031.

There is no basis for Plaintiff's assertion that the licensing scheme in HRS Chapter 134 interferes with his fundamental right to bear arms. The cause of action for a violation of the Privileges

32

and Immunities Clause of the Fourteenth Amendment to United States Constitution in Count V is **DISMISSED WITH PREJUDICE**.

>    **5.  The Complaint Fails To State A Claim For Violation of the Fourteenth Amendment Due Process Clause**

Plaintiff contends that the enforcement of Hawaii's licensing scheme in HRS Chapter 134 violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.[1]

The Fourteenth Amendment protects against the deprivation of property or liberty without due process. See <u>Carey v. Piphus</u>, 435 U.S. 247, 259 (1978); <u>Brady v. Gebbie</u>, 859 F.2d 1543, 1547 (9th Cir. 1988).  Courts employ a two-step test to determine whether due process rights have been violated by the actions of a government official.  First, a court must determine whether a liberty or property interest exists entitling a plaintiff to due process protections. If a constitutionally protected interest is established, courts employ a three-part balancing test to determine what process is due. <u>Hewitt v. Grabicki</u>, 794 F.2d 1373, 1380 (9th Cir. 1986). The three-part balancing test set forth in <u>Mathews v. Eldridge</u> examines (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

_____

[1]     Plaintiff also cites the Due Process Clause of the Fifth Amendment on one page of the Complaint. (Complaint at pg. 24). Plaintiff's due process challenge to a state law is properly brought pursuant to the Fourteenth Amendment Due Process Clause. See <u>Castillo v. McFadden</u>, 399 F.3d 933, 1002 n.5 (9th Cir. 2005).

(3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976).

If a liberty or property interest does not exist, no process is due. Plaintiff must prove that Hawaii's Firearm Carrying Laws adversely affect a protected interest to carry a weapon in public under the facts of the case. In <u>Erdelyi v. O'Brien</u>, 680 F.2d 61, 63 (9th Cir. 1982), the Ninth Circuit Court of Appeals held that California's comparable licensing scheme did not create a property interest or liberty interest in obtaining a concealed weapon. Post-<u>Heller</u> federal district court decisions confirm the holding that there is no unlimited right to carry a gun in public. See <u>Peruta</u>, 758 F.Supp.2d 1106, 1121 (S.D.Cal. 2010)(concealed carry); <u>cf</u>. <u>Fisher v. Kealoha</u>, No. 11-00589, 2012 WL 2526923, at *11 (D. Haw. June 29, 2012)(due process rights attach to requiring a license for carrying a firearm at home, as opposed to carrying a weapon in public).

The Complaint alleges Plaintiff was twice denied a license to carry a pistol or revolver. HRS Chapter 134 does not implicate Plaintiff's liberty or property interests because there is no right to carry weapons in public. Having no fundamental interest in carrying a weapon, Plaintiff is not entitled to due process.

The Complaint fails to state a claim on which relief may be granted for violation of Plaintiff's due process rights guaranteed

34

by the Fourteenth Amendment to the United States Constitution. The cause of action for violation of the Procedural Due Process Clause of the Fourteenth Amendment is **DISMISSED WITH PREJUDICE**.

> 6. **HRS Chapter 134 Does Not Constitute a Bill of Attainder in Violation of Article I, Section 10 Of the United States Constitution**

Plaintiff asserts that HRS Chapter 134 constitutes an unconstitutional bill of attainder under Article I, section 10, clause 1 of the United States Constitution: "No State shall ... pass any Bill of Attainder . . . ."

A statute is an unconstitutional bill of attainder when it "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 468 (1977). Burdensome consequences to legislation do not create a bill of attainder, so long as they do not rise to the level of inflicting punishment. See id. at 472 (quoting United States v. Lovett, 328 U.S. 303, 315 (1946)).

A legislative act is not a bill of attainder merely because it burdens some persons or groups, but not others. Id. at 471. If a statute sets forth a rule that is generally applicable to all persons with a certain characteristic and is reasonably calculated to achieve a non-punitive purpose, the law is not an unconstitutional bill of attainder. See United States v. Munsterman, 177 F.3d 1139, 1142 (9th Cir. 1999).

HRS Chapter 134 applies to all applicants for a permit to

carry a revolver or firearm. It furthers the non-punitive legislative purpose of controlling when and where certain types of weapons are carried in the community to ensure public safety.

HRS Chapter 134 is not an impermissible bill of attainder. Young I, 548 F.Supp.2d at 1172-73.

The claim that HRS Chapter 134 constitutes an unconstitutional bill of attainder is **DISMISSED WITH PREJUDICE**.

### 7. The Complaint Fails To State a Claim of Impairment of the Obligation Of Contracts

Count Two of the Complaint asserts that HRS Chapter 134 violates the Contract Clause of the United States Constitution

The Contract Clause of the United States Constitution prohibits any state from passing a law "impairing the Obligation of Contracts." U.S. Const. Art. I, § 10. To bring a claim for a violation of the Contract Clause, a plaintiff must allege facts demonstrating that he possesses contractual rights that have been substantially impaired by the challenged law. Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co., 470 U.S. 451 (1985). If the threshold inquiry is met, the court must determine if the state has a significant or legitimate purpose behind the regulation. RUI One Corp. v. City of Berkeley, 371 F.3d 1137, 1147 (9th Cir. 2004).

It is not possible to determine what contract Plaintiff is referring to in his challenge to HRS Chapter 134. A statute itself may be treated as a contract when its "language and circumstances evince a legislative intent to create private rights of a

36

Case 1:12-cv-00336-HG-BMK Document 56-1 Filed 12/26/12 Page 37 of 40 PageID #:
Case 1:12-cv-00336-HG-B.. . Document 42 Filed 11/29/12 Page 37 of 40 PageID #: 257
339

contractual nature enforceable against the State." <u>U.S. Trust Co.</u> <u>of New York v. New Jersey</u>, 431 U.S. 1, 17 n.14 (1977). HRS Chapter 134 does not evince such an intent. It does not bestow any contractual rights upon Plaintiff. <u>See</u> <u>Young I</u>, 548 F.Supp.2d at 1174; <u>see also</u> <u>Martinkovich v. Or. Legis. Body</u>, CIV. 11-3065-CL, 2011 WL 7693036, at *5 (D. Or. Aug. 24, 2011) report and recommendation adopted, 2012 WL 1245663 (D. Or. Apr. 12, 2012)(rejecting a Contract Clause challenge to Oregon's concealed gun licensing law).

Plaintiff's claim for the violation of the Article I, Section 10 prohibition of the impairment of the obligation of contracts, in Count Two of the Complaint, is **DISMISSED WITH PREJUDICE**.

### D. Plaintiff's §§ 1985 and 1986 Claims Are Precluded By Plaintiff's Failure To Allege a § 1983 Violation

Plaintiff sues pursuant to 42 U.S.C. §§ 1985 and 1986, as well as § 1983.

Under § 1985, claims may be brought for conspiracy to violate a citizen's § 1983 civil rights. Section 1986 allows claims for neglecting to prevent conspiratorial acts set forth in § 1985.

If a plaintiff fails to establish a constitutional deprivation to support a § 1983 claim, the same allegations necessarily cannot establish claims brought pursuant to §§ 1985 and 1986. <u>Cassettari</u> <u>v. Nevada Cnty., Cal.</u>, 824 F.2d 735, 739 (9th Cir. 1987); <u>White v.</u> <u>Pac. Media Grp., Inc.</u>, 322 F.Supp.2d 1101, 1112 (D. Haw. 2004)(insufficiency of a § 1985 cause of action precludes an actionable § 1986 claim).

Plaintiff's § 1985 conspiracy claim is based solely upon allegations which fail to state a claim for deprivation of a federal right under § 1983.

Plaintiff's §§ 1985 and 1986 causes of action are **DISMISSED WITH PREJUDICE**.

### E.   Plaintiff's Claims Against Defendants County of Hawaii and Hilo County Police Department

Plaintiff still has not served Defendants County of Hawaii and Hilo County Police Department. Pursuant to Federal Rule of Civil Procedure 4(m), the 120-day time limit for service of the Complaint, which was filed on June 20, 2012, expired over one month ago.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may properly dismiss an action sua sponte, without giving a plaintiff notice of its intention to dismiss and an opportunity to respond if a plaintiff "cannot possibly win relief." See Sparling v. Hoffman Construction Co., 8654 F.2d 635, 638 (9th Cir. 1981); Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987). If a plaintiff cannot possibly win relief, the court may dismiss an action sua sponte without notice in favor of a party that has not been served, answered, or appeared. Columbia Steel Fabricators, Inc. V. Ahistrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995); Arreola v. Wells Fargo Home Mortg., No. 10-3272, 2011 WL 1205249 (E.D. Cal. Mar. 29, 2011). It is appropriate to do so when the party that has not appeared is in a position similar to the moving

defendants. <u>Abagnin v. AMVAC Chemical Corp.</u>, 545 F.3d 733, 742-43 (9th Cir. 2008).

The Hilo County Police Department and County of Hawaii, which have not been served or appeared, are in positions similar to the County Officials who moved to dismiss. Hilo County Police Department is considered the same legal entity as the County of Hawaii. <u>See</u> <u>Pourny v. Maui Police Department</u>, 127 F.Supp.2d 1129, 1143 (D. Haw. 2000) (treating the Maui Police Department and the County of Maui as one party); <u>see also</u> <u>Headwaters Forest Defense v. County of Humboldt</u>, 276 F.3d 1125, 1127 (9th Cir. 2002) (treating police departments as part of their respective county or city). Plaintiff's claims against the County of Hawaii and the Hilo County Police Department are analyzed under the same standard used for the claims against the County Officials sued in their official capacities. <u>See</u> <u>Wong v. City & County of Honolulu</u>, 333 F.Supp.2d 942, 947 (D. Haw. 2004)(<u>citing</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166-67 n.14 (1985)).

For the reasons set forth for dismissal of the claims against the County Officials, Plaintiff "cannot possibly win relief" against the County of Hawaii or the Hilo County Police Department.

The causes of action against Defendants County of Hawaii and Hilo County Police Department are **DISMISSED WITH PREJUDICE.**

### CONCLUSION

The Complaint fails to state a claim for deprivation of a federal right, which is a necessary prerequisite for actions

39

brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Additionally, the State Defendants are protected by sovereign immunity.

State Defendants' Motion to Dismiss (Doc. 25) is **GRANTED**. All causes of action against State Defendants are **DISMISSED WITH PREJUDICE**.

County Officials Defendants' Motion to Dismiss (Doc. 23) is **GRANTED**. The Court dismisses the causes of action against the County and the County Police Department. All causes of action against the County Officials, the County, and the County Police Department are **DISMISSED WITH PREJUDICE**.

The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: November 28, 2012, Honolulu, Hawaii.



/s/ Helen Gillmor
Helen Gillmor
Senior United States District Judge

GEORGE K. YOUNG, JR. vs. STATE OF HAWAII and NEIL ABERCROMBIE in his capacity as Governor of the State of Hawaii; DAVID M. LOUIE in his capacity as State Attorney General; COUNTY OF HAWAII, as a sub-agency of the State of Hawaii and WILLIAM P. KENOI in his capacity as Mayor of the County of Hawaii; and the HILO COUNTY POLICE DEPARTMENT, as a sub-agency of the County of Hawaii and HARRY S. KUBOJIRI in his capacity as Chief of Police; JOHN DOES 1-25; JANE DOES 1-25; CORPORATIONS 1-5, and DOE ENTITIES 1-5, Civ. No. 12-00336 HG BMK; ORDER GRANTING COUNTY OF HAWAII OFFICIAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (DOC. 23) AND STATE OF HAWAII DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Doc. 25).

GEORGE K. YOUNG, JR
1083 Apono Place
Hilo, HI 96720
808-959-5488
CELL: 808-895-1735
PRO SE

# UNITED STATE COURT OF THE DISTRICT OF HAWAII

| | |
|---|---|
| GEORGE K. YOUNG, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF HAWAII and NEIL ABERCROMBIE in his capacity as Governor of the State of Hawaii; DAVID M. LOUIE in his capacity as State Attorney General; COUNTY OF HAWAII, as a sub-agency of the State of Hawaii and WILLIAM P. KENOI in his capacity as Mayor of the County of Hawaii; and the HILO COUNTY POLICE DEPARTMENT, as a sub-agency of the County of Hawaii and HARRY S. KUBOJIRI in his capacity as Chief of Police; JOHN DOES 1-25; JANE DOES 1-25; CORPORATIONS 1-5, and DOE ENTITIES 1-5,<br><br>Defendants. | Civ. No. 12-00336 HG BMK<br>CERTIFICATE OF SERVICE |

## <u>CERTIFICATE OF SERVICE</u>

On this, the 12th day of December, 2012, I hereby CERTIFY that I served a Notice of Filing by via prepaid postage mail to all parties at their last known address.


John M. Cregor , Jr.
Office of the Attorney General-Hawaii

Civil Rights Litigation
425 Queen St
Honolulu, HI 96813
586-1494

Michael J. Udovic
Office of the Corporation Counsel-Big Island
333 Kilauea Avenue, 2nd Floor
Hilo, HI 96720
808-961-8251


Kimberly K. Angay
Office of the Corporation Counsel-Big Island
333 Kilauea Avenue, 2nd Floor
Hilo, HI 96720
808-961-8251


     I declare under penalty of perjury that the foregoing is true and correct.


Executed this the 12th day of December, 2012.



                                    George K. Young